UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

ANTHONY J. THOMPSON Jr.,
JAY FUNG, and ERIC VAN NGUYEN,

        Defendants,

JOHN BABIKIAN and KENDALL THOMPSON,

        Relief Defendants.

14 Civ. 9126 (KBF)

**DEFENDANT ANTHONY J. THOMPSON JR.'S RESPONSES AND OBJECTIONS TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Defendant Anthony Thompson, Jr. ("Thompson") provides these supplemental responses to Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") Second Set of Requests for Production ("Requests") and Interrogatories ("Interrogatories") as follows:

**GENERAL OBJECTIONS**

1.    Thompson reiterates and hereby re-incorporates the objections contained in his initial and supplemental responses to Plaintiff's First Set of Requests for Production and Interrogatories.

**OBJECTIONS TO INSTRUCTIONS**

1.    Thompson reiterates the objections to definitions contained in his initial response to Plaintiff's First Set of Requests for Production and Interrogatories.

## DOCUMENT REQUESTS

1.      All documents supporting or providing a factual basis for the belief that Blast "is flying under the radar" and that "it has the ability to shock micro-cap investors with serious percentage gains," as set out in Paragraph 19(b) of the Complaint.

**RESPONSE:**    As set forth in Thompson's Supplemental Responses to Plaintiff's First Set of Requests for Production and Interrogatory ("Supplemental Responses"), documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

2.      All of the emails received by ExplicitPicks.com "from investors all over the world thanking it for its pick of Blast Applications," as set out in Paragraph 19(c) of the Complaint.

**RESPONSE:**    As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

3.      All documents supporting or providing a factual basis for the belief that Blast stock could "potentially explode [from $0.0529 per share] towards $.10 or higher," as set out in Paragraph 19(d) of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to

avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

4.      All documents supporting or providing a factual basis for the "confidence" that Blast share prices "will continue its move north," as set out in Paragraph 19(g) of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

5.      All documents, including, but not limited to, calendars, relating to the visits paid by business analysts to Blue Gem and its warehouse facilities, as set out in Paragraph 36 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

6.      All documents supporting or providing a factual basis for the prediction the Blue Gem Stock would appreciate to over $1.00 per share, as set out in Paragraph 37 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to

Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

7. All documents concerning or constituting the "research and due diligence" done by business analysts, as set out in Paragraph 58 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

8. All documents supporting or providing a factual basis for the statements relating to short positions in Lyric, as set out in Paragraph 59 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

9. All documents supporting or providing a factual basis for the statement that Smart Holdings was "newly traded" or relating to the "business model" of Smart Holdings, as set out in Paragraph 76 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to

Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

10. All documents supporting or providing a factual basis for the statement that Mass Hysteria's core management had a combined $1.36 billion in box office sales, as set out in Paragraph 90 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

1. Identify the "business analysts" referred to in Paragraph 36 of the Complaint.

**RESPONSE:** The "business analysts" referred to in Paragraph 36 of the Complaint are Thompson and others associated with OTC Solutions, who visited warehouses bottling and stocking Blue Gem products, participated in product demonstrations and reviewed documentary substantiation concerning the marketing, celebrity endorsements (including former National Football League stars, Lawrence Taylor and Terrell Owens), and operations of Blue Gem.

2. Identify the "business analysts" referred to in Paragraph 58 of the Complaint.

**RESPONSE:** The "business analysts" referred to in Paragraph 58 of the Complaint are Thompson and others associated with OTC Solutions, who interviewed Lyric Jeans' CEO, conducted diligence on product placement in national department stores and reviewed documentary substantiation concerning the company's licensing and other relationships with celebrity musicians permitting Lyric Jeans to use their intellectual property in the company's branding, marketing and as part of the design of the fashion merchandise.

3. Identify the persons constituting "our team" referred to in Paragraph 58 of the Complaint.

**RESPONSE:** The reference to "our team" in Paragraph 58 of the Complaint consists of Thompson and others associated with OTC Solutions, interviewed Lyric Jeans' CEO, conducted diligence on product placement in national department stores and reviewed documentary substantiation concerning the company's licensing and other relationships with celebrity musicians permitting Lyric Jeans to use their intellectual property in the company's branding, marketing and as part of the design of the fashion merchandise.

4. Identify the persons doing the "due diligence" referred to in Paragraph 58 of the Complaint.

**RESPONSE:** Thompson asserts that the persons doing the "due diligence" referred to in Paragraph 58 of the Complaint are Thompson and others associated with OTC Solutions, who conducted a phone interview with Lyric Jeans' CEO, conducted diligence on product placement in national department stores and reviewed documentary substantiation concerning the company's licensing and other relationships with celebrity musicians permitting Lyric Jeans to use their intellectual property in the company's branding, marketing and as part of the design of the fashion merchandise.

5. Identify the persons constituting "our team" referred to in Paragraph 76 of the Complaint.

**RESPONSE:** The reference to "our team" in Paragraph 76 of the Complaint consists of Thompson and others associated with OTC Solutions, who reviewed documentary substantiation concerning the company's financials and business model.

Dated: New York, New York         THOMPSON HINE LLP
       April 27, 2018

                                  By: ___/s/ Maranda Fritz_____

Maranda Fritz
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017
(212) 344-5680
Email: Maranda.Fritz@Thompsonhine.com