UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

    v.

ANTHONY J. THOMPSON Jr.,
JAY FUNG, and ERIC VAN NGUYEN,

                Defendants,

JOHN BABIKIAN and KENDALL THOMPSON,

                Relief Defendants.

14 Civ. 9126 (KBF)

---

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES TO DEFENDANT ANTHONY J. THOMPSON Jr.

Plaintiff Securities and Exchange Commission (the "Commission") — under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure (the "Rules") and Rules 26.2, 26.3, and 33.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Rules") — requests that Defendant Anthony J. Thompson Jr. ("Thompson"), in accordance with the definitions and instructions set forth below, (1) produce or begin producing the documents called for by the following document requests (the "Requests") within 30 days from the date of service of these Requests, at the Commission's offices, located at Brookfield Place, 200 Vesey Street, Room 400, New York, NY 10281-1022 (the "Commission's Address"), and (2) answer the following interrogatories (the "Interrogatories") under oath by serving his answers on the Commission's undersigned counsel at the Commission's Address, within 30 days of the date of service of these Interrogatories.

## DEFINITIONS

1. The definitions and constructions set forth in Local Rules 26.3(c) and 26.3(d) are fully incorporated here by reference.

2. "You" and "your" refers to Thompson and the Thompson Companies (defined below).

3. "Advice" means any and all advice you received from any lawyer or law firm concerning any written Newsletters (defined below) or any written materials that you or any Thompson Entities (defined below), directly or indirectly, disseminated concerning any securities, including without limitation the advice referred to in paragraph two of your Answer.

4. "Anything of Value" means anything with any value whatsoever to anyone—whether actual, nominal or notional value—including without limitation money, assets, securities, options contracts, futures contracts, real property, personal property, the use of real or personal property, credit extended, gambling credits, gambling chips, reimbursement of expenses, or the extinguishing of a debt or lien.

5. "Blast" means Blast Applications, Inc. ("Blast") and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

6. "Blue Gem" means Blue Gem Enterprise, Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

7. "Lyric" means Lyric Jeans, Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

8. "Mass Hysteria" means Mass Hysteria Entertainment Company and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

9. "Smart Holdings" means Smart Holdings, Inc. and its predecessors, successors, affiliates, and subsidiaries, as well as its or their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on its or their behalf.

10. The "Stocks" means one or more of Blast, Blue Gem, Lyric, Mass Hysteria, and Smart Holdings or the securities issued by any one or more of them.

11. "Criminal Proceeding" means the criminal proceeding in the New York State Supreme Court captioned *People v. Anthony Thompson et al.*, Indictment No. 03853/2014.

12. "Newsletters" refers to any one or more newsletters controlled by Thompson, the Thompson Companies (as defined below), or any entity under the control of Thompson or the Thompson Companies—including without limitation—ExplicitPicks.com, PremierPennyStocks.com, ExplicitPennyPicks.com, FreeInvestmentReport.com, FreePennyAlerts.com and OxofWallStreet—concerning any of the Stocks or any of the Stocks' issuers.

13. "Thompson Companies" means every entity owned and/or controlled by Thompson during any portion of the years 2009 and 2010, including, without limitation, OTC

Solutions, Microcapster, and Gardner Creek Capital, their predecessors, successors, affiliates, and subsidiaries, as well as their current and former officers, employees, managers, partners, directors, agents, and any person acting, directly or indirectly, on their behalf.

## INSTRUCTIONS

1. Produce all documents described below in the Requests section, insofar as the documents are in your possession, custody, or control, under Rule 34(a), including without limitation documents in the custody or control of your attorneys or agents. You do not need to re-produce documents that you have already produced to the Commission during its investigation leading to this litigation.

2. Under Rule 34(b)(2)(B), with respect to each numbered category of the Requests below, respond by either stating that you will produce such documents (by producing copies or producing originals for inspection and copying) or stating with specificity the grounds for objecting to the request, including the reasons.

3. Under Rule 34(b)(2)(C), any objection you make to producing documents responsive to a numbered category below must state whether any responsive documents are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of (or you must produce) the remaining documents.

4. For each document, or portion thereof, that you seek to withhold on the basis of any privilege or protection, provide a written response containing the information required by Rule 26(b)(5)(A) and Local Rule 26.2.

5. Under Rule 34(b)(2)(E)(i), the Commission requests that you organize and label documents produced in response to the Requests to correspond to the Requests' numbered categories.

6. Under Rule 33(b)(2), serve your responses to the Interrogatories below within 30 days of being served with the Interrogatories.

7. Under Rule 33(b)(3), answer each Interrogatory separately and fully in writing under oath, to the extent you do not object to the Interrogatory.

8. Under Rule 33(b)(5), sign your answers to these Interrogatories.

9. Under Rule 33(b)(4), if you object to an Interrogatory, state your grounds for objection with specificity.

10. The relevant period that applies to these Requests and Interrogatories, unless otherwise stated, is January 1, 2009 through December 31, 2010 (the "Relevant Period").

11. These Requests and Interrogatories are continuing. To the extent that you obtain information or documents that change or require correction or supplementation of your responses to the Requests or Interrogatories after you serve your responses on the Commission, you must promptly serve supplemental responses reflecting the new information and produce any additional documents, pursuant to Rule 26(e)(1).

## DOCUMENT REQUESTS

1. All documents supporting or providing a factual basis for the belief that Blast "is flying under the radar" and that "it has the ability to shock micro-cap investors with serious percentage gains," as set out in Paragraph 19(b) of the Complaint.

2. All of the emails received by ExplicitPicks.com "from investors all over the world thanking it for its pick of Blast Applications," as set out in Paragraph 19(c) of the Complaint.

3. All documents supporting or providing a factual basis for the belief that Blast stock could "potentially explode [from $0.0529 per share] towards $.10 or higher," as set out in Paragraph 19(d) of the Complaint.

4. All documents supporting or providing a factual basis for the "confidence" that Blast share prices "will continue its move north," as set out in Paragraph 19(g) of the Complaint.

5. All documents, including, but not limited to, calendars, relating to the visits paid by business analysts to Blue Gem and its warehouse facilities, as set out in Paragraph 36 of the Complaint.

6. All documents supporting or providing a factual basis for the prediction the Blue Gem Stock would appreciate to over $1.00 per share, as set out in Paragraph 37 of the Complaint.

7. All documents concerning or constituting the "research and due diligence" done by business analysts, as set out in Paragraph 58 of the Complaint.

8. All documents supporting or providing a factual basis for the statements relating to short positions in Lyric, as set out in Paragraph 59 of the Complaint.

9. All documents supporting or providing a factual basis for the statement that Smart Holdings was "newly traded" or relating to the "business model" of Smart Holdings, as set out in Paragraph 76 of the Complaint.

10. All documents supporting or providing a factual basis for the statement that Mass Hysteria's core management had a combined $1.36 billion in box office sales, as set out in Paragraph 90 of the Complaint.

## INTERROGATORIES

1. Identify the "business analysts" referred to in Paragraph 36 of the Complaint.

2. Identify the "business analysts" referred to in Paragraph 58 of the Complaint.

      3.      Identify the persons constituting "our team" referred to in Paragraph 58 of the Complaint.

      4.      Identify the persons doing the "due diligence" referred to in Paragraph 58 of the Complaint.

      5.      Identify the persons constituting "our team" referred to in Paragraph 76 of the Complaint.

Dated: New York, New York  
       March 15, 2018

Securities and Exchange Commission

By: _____  
     Howard Fischer

Howard Fischer  
Securities and Exchange Commission  
New York Regional Office  
200 Vesey Street, Suite 400  
New York, NY 10281  
(212) 336-0589 (Fischer)  
Email: fischerh@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,  :
                                     :
                   Plaintiff,        :
                                     :
     -against-                       :
                                     :
ANTHONY J. THOMPSON, Jr.,            :
JAY FUNG, and ERIC VAN NGUYEN,       :   14 Civ. 9126 (KBF)
                                     :
                   Defendants,       :
                                     :
     -and-                           :
                                     :
JOHN BABIKIAN and KENDALL THOMPSON   :
                                     :
                   Relief Defendants.:
                                     :
-------------------------------------------------------------------x

## CERTIFICATE OF SERVICE

      I hereby certify that on March 15, 2018, I served Plaintiff Securities and Exchange Commission's Second Requests for Production of Documents and Interrogatories to Defendant Anthony J. Thompson on the following parties, through their counsel listed below, by transmitting copies by email.

<u>Defendant Anthony J. Thompson, Jr.</u>
Maranda E. Fritz
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017
Maranda.Fritz@thompsonhine.com

<u>Defendant Jay Fung</u>
James D. Sallah
Sallah, Astarita & Cox LLC
2255 Glades Road, Suite 300E
Boca Raton, FL 33431
jds@sallahlaw.com

Relief Defendant Kendall Thompson
Roland Riopelle
Sercarz & Riopelle, LLP
810 Seventh Avenue, Suite 620
New York, New York 10019
rriopelle@sercarzandriopelle.com


Dated: New York, New York
       March 14, 2018

_____
Howard Fischer
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-0589
FischerH@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY J. THOMPSON Jr.,<br>JAY FUNG, and ERIC VAN NGUYEN,<br><br>Defendants.<br><br>JOHN BABIKIAN and KENDALL THOMPSON,<br><br>Relief Defendants. | 14 Civ. 9126 (KBF) |

**DEFENDANT ANTHONY J. THOMPSON JR.'S RESPONSES AND OBJECTIONS TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Defendant Anthony Thompson, Jr. ("Thompson") provides these supplemental responses to Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") Second Set of Requests for Production ("Requests") and Interrogatories ("Interrogatories") as follows:

**GENERAL OBJECTIONS**

1. Thompson reiterates and hereby re-incorporates the objections contained in his initial and supplemental responses to Plaintiff's First Set of Requests for Production and Interrogatories.

**OBJECTIONS TO INSTRUCTIONS**

1. Thompson reiterates the objections to definitions contained in his initial response to Plaintiff's First Set of Requests for Production and Interrogatories.

## DOCUMENT REQUESTS

1. All documents supporting or providing a factual basis for the belief that Blast "is flying under the radar" and that "it has the ability to shock micro-cap investors with serious percentage gains," as set out in Paragraph 19(b) of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses to Plaintiff's First Set of Requests for Production and Interrogatory ("Supplemental Responses"), documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

2. All of the emails received by ExplicitPicks.com "from investors all over the world thanking it for its pick of Blast Applications," as set out in Paragraph 19(c) of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

3. All documents supporting or providing a factual basis for the belief that Blast stock could "potentially explode [from $0.0529 per share] towards $.10 or higher," as set out in Paragraph 19(d) of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to

avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

4. All documents supporting or providing a factual basis for the "confidence" that Blast share prices "will continue its move north," as set out in Paragraph 19(g) of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

5. All documents, including, but not limited to, calendars, relating to the visits paid by business analysts to Blue Gem and its warehouse facilities, as set out in Paragraph 36 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

6. All documents supporting or providing a factual basis for the prediction the Blue Gem Stock would appreciate to over $1.00 per share, as set out in Paragraph 37 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to

Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

7.      All documents concerning or constituting the "research and due diligence" done by business analysts, as set out in Paragraph 58 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

8.      All documents supporting or providing a factual basis for the statements relating to short positions in Lyric, as set out in Paragraph 59 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

9.      All documents supporting or providing a factual basis for the statement that Smart Holdings was "newly traded" or relating to the "business model" of Smart Holdings, as set out in Paragraph 76 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to

Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

10.   All documents supporting or providing a factual basis for the statement that Mass Hysteria's core management had a combined $1.36 billion in box office sales, as set out in Paragraph 90 of the Complaint.

**RESPONSE:** As set forth in Thompson's Supplemental Responses, documents responsive to this Request have previously been provided to Plaintiff pursuant to administrative subpoenas in this and other matters and therefore is in the possession of Plaintiff. Nevertheless, in an effort to avoid further litigation regarding this same discovery, Thompson once again produced to Plaintiff in this litigation all non-privileged documents relating to the Newsletters within his possession, custody and control, which subsumes the documents sought in this Request.

### SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

1.   Identify the "business analysts" referred to in Paragraph 36 of the Complaint.

**RESPONSE:** The "business analysts" referred to in Paragraph 36 of the Complaint are Thompson and others associated with OTC Solutions, who visited warehouses bottling and stocking Blue Gem products, participated in product demonstrations and reviewed documentary substantiation concerning the marketing, celebrity endorsements (including former National Football League stars, Lawrence Taylor and Terrell Owens), and operations of Blue Gem.

2.   Identify the "business analysts" referred to in Paragraph 58 of the Complaint.

**RESPONSE:** The "business analysts" referred to in Paragraph 58 of the Complaint are Thompson and others associated with OTC Solutions, who interviewed Lyric Jeans' CEO, conducted diligence on product placement in national department stores and reviewed documentary substantiation concerning the company's licensing and other relationships with celebrity musicians permitting Lyric Jeans to use their intellectual property in the company's branding, marketing and as part of the design of the fashion merchandise.

3. Identify the persons constituting "our team" referred to in Paragraph 58 of the Complaint.

**RESPONSE:** The reference to "our team" in Paragraph 58 of the Complaint consists of Thompson and others associated with OTC Solutions, interviewed Lyric Jeans' CEO, conducted diligence on product placement in national department stores and reviewed documentary substantiation concerning the company's licensing and other relationships with celebrity musicians permitting Lyric Jeans to use their intellectual property in the company's branding, marketing and as part of the design of the fashion merchandise.

4. Identify the persons doing the "due diligence" referred to in Paragraph 58 of the Complaint.

**RESPONSE:** Thompson asserts that the persons doing the "due diligence" referred to in Paragraph 58 of the Complaint are Thompson and others associated with OTC Solutions, who conducted a phone interview with Lyric Jeans' CEO, conducted diligence on product placement in national department stores and reviewed documentary substantiation concerning the company's licensing and other relationships with celebrity musicians permitting Lyric Jeans to use their intellectual property in the company's branding, marketing and as part of the design of the fashion merchandise.

5. Identify the persons constituting "our team" referred to in Paragraph 76 of the Complaint.

**RESPONSE:** The reference to "our team" in Paragraph 76 of the Complaint consists of Thompson and others associated with OTC Solutions, who reviewed documentary substantiation concerning the company's financials and business model.


Dated: New York, New York　　　　THOMPSON HINE LLP
　　　　April 27, 2018


　　　　　　　　　　　　　　　　　　By:___/s/ Maranda Fritz_____

Maranda Fritz
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017
(212) 344-5680
Email: Maranda.Fritz@Thompsonhine.com

7