```
1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK:            PART TAP A
    ---------------------------------------X
3   THE PEOPLE OF THE STATE OF NEW YORK,   :
                                           :   INDICTMENT NO.3853-2014
4                   -against               :
                                           :
5   ANTHONY THOMPSON,                      :
                                           :
6                      Defendant.          :
    ---------------------------------------X
7                   100 Centre Street
                    New York, New York 10013
8                   January 4, 2019

9

10  B E F O R E:

11            THE HONORABLE ANN SCHERZER, Judge.

12

13
    A P P E A R A N C E S:
14
              OFFICE OF CYRUS VANCE, ESQ.
15            DISTRICT ATTORNEY - NEW YORK COUNTY
              1 Hogan Place
16            New York, New York 10013
              BY:  SEAN PIPPEN, ESQ.
17                 BRIAN KUDON, ESQ.
              Assistant District Attorneys
18            For the People

19
              MARANDA FRITZ, ESQ.
20            335 Madison Avenue, 12th Floor
              New York, New York 10017
21            For the Defendant

22

23

24
                    SAMANTHA SCUOTTO
25                  Senior Court Reporter


                    S. Scuotto,  SCR
```

PROCEEDINGS

```
 1                    THE CLERK:  Calendar 15, indictment 3853 of
 2          2014, Anthony Thompson.
 3                    MS. FRITZ:  Good morning.  Maranda Fritz,
 4          F-R-I-T-Z, for Anthony Thompson.
 5                    MR. PIPPEN:  Good morning, Judge.  Sean Pippen,
 6          P-I-P-P-E-N, for the People.
 7                    MR. KUDON:  Good morning.  Brian Kudon,
 8          K-U-D-O-N, for the People.
 9                    THE COURT:  This case is on today for sentence.
10          I have received and thoroughly reviewed the presentence
11          memoranda that were submitted by both parties.  Is there
12          anything else that either party wishes to add?
13                    MS. FRITZ:  There's one very brief matter I'd
14          like to discuss with your Honor at the bench.
15                    (Whereupon an off-the-record discussion was
16          held.)
17                    THE COURT:  Do you want to speak to your client
18          before we continue?
19                    MS. FRITZ:  No.
20                    THE COURT:  Please arraign the defendant for
21          sentence.  Wait a second, did we get a presentence report
22          in this case?
23                    MS. FRITZ:  Yes, we did.
24                    THE COURT:  Can I have that, please.  Thank you.
25                    THE CLERK:  Anthony Thompson, you are before the
```

PROCEEDINGS

1      Court for sentence following your conviction of

2      securities -- scheme to defraud, count 2; count 12,

3      securities fraud and count 46, securities fraud.  Before

4      being sentenced the Court will allow you, your attorney and

5      the ADA an opportunity to address the Court with any

6      matters relevant to sentencing.  For the People.

7              MR. PIPPEN:  Judge, just at this point we would

8      request that the Court impose sentence of one to three

9      years incarceration on each of the three felonies to which

10     Mr. Thompson pled guilty to run concurrent with each other.

11     And we'd ask that a judgement in the amount -- in the plea

12     agreement be entered, $869,910 in favor of the District

13     Attorney's Office to be used for paying back the victims.

14             THE COURT:  That's a change from what's been

15     requested in the past, meaning what you had asked for was

16     the jail sentence and submitted a memorandum in support of

17     that request.  I think that the defendant did not make the

18     payment he was supposed to make.  If he is sentenced to

19     jail that's punishment enough for not making that

20     compensation.  If you want to renegotiate a repayment

21     that's a different story, but you've never approached the

22     Court with an indication that that's how you want to move

23     forward.

24             MR. PIPPEN:  We understand that, just -- okay,

25     nothing further then.  We had come prepared to address

*S. Scuotto,  SCR*

PROCEEDINGS

1      certain representations that were made in the sentencing
2      memo.  I'm prepared to do so.
3                    THE COURT:  Yes, I'd like to hear whatever.  If
4      there's something briefly you want to state I'm certainly
5      interested in hearing it.  It's obviously a case that I
6      spent a lot of time reading the memoranda on so I could
7      understand the nature of the scheme that was involved here.
8                    MR. PIPPEN:  Okay, thank you, Judge.  This
9      should be very brief.  So, as articulated in our memo and
10     again throughout the course of the case, it's been our
11     position consistently that Mr. Thompson was engaged in a
12     lengthy and well orchestrated scheme to artificially
13     defraud investors through the manipulation of stocks to
14     drive up their value and to dump shares controlled by
15     himself and his coconspirators onto the market, onto
16     unsuspecting investors and then to move on to the next,
17     leaving the investors to hold the bag.
18                    So after reviewing the defendant's submission,
19     which our understanding was being submitted for, I believe,
20     the purposes of sort of asking this Court for mercy for a
21     non-jail sentence, it's our conclusion that that memorandum
22     fell short and was an unfortunate step in the wrong
23     direction.  Specifically there are a number of
24     misrepresentations in there, and I'll just address a couple
25     of them that I think are important and I think illustrate a

1       broader problem.

2                One of the arguments that was made was well, that

3       a Federal Court had reviewed Mr. Thompson's disclaimers and

4       found they were compliant with rule 17(b) of the Federal

5       Securities Law.  That may be technically true, but this

6       Federal Court never said there was not a pump and dump

7       operation going on or there wasn't securities fraud.  It

8       was merely that a specific portion of the disclaimers was

9       compliant with Federal Securities Laws.  It had nothing to

10      do with saying that the sale or that stock offering was not

11      fraudulent or anything else.  And frankly it has nothing to

12      do with what happened here because our case is not based

13      upon Federal Securities Laws.

14                THE COURT:  One moment.  I apologize, go ahead.

15                MR. PIPPEN:  Another one of the points that was

16      raised in the sentencing memorandum was related to the

17      defendant's use or consultation of attorneys during the

18      course of the fraud, I guess the argument being that

19      because he consulted with attorneys this was all sort of

20      legitimate in some ways.  Now, perhaps we would be willing

21      to concede that the defendant wanted his disclaimers as

22      news letters to be facially compliant with Federal

23      Securities Laws, but again that has nothing to do with the

24      disguise of ownership and control of the stock and the

25      manipulation of the market that was specifically hidden

PROCEEDINGS

1      from investors and not disclosed to the lawyers.  And

2      Defense Counsel and Mr. Thompson know that during the

3      course of the investigation we met with these attorneys and

4      addressed these issues.

5            The memorandum ignores activity post 2010 and it

6      would be difficult to be brief and address what we consider

7      to be a number of misleading statements in the sentencing

8      memo, but there is one sentence in there that I think is

9      worth just quoting here, which kind of is the culmination

10     of what we think is the problem.  "Certainly Mr. Thompson

11     made mistakes and ultimately he pled guilty to transactions

12     because he participated in what turned out to be a fraud on

13     shareholders."

14           So in short, defendant now wants to have it both

15     ways.  He wants to stand here and say I should be given

16     mercy because I'm taking responsibility for my actions

17     without actually taking responsibility for his actions.

18     And this is thus not a plea for mercy, but it is doing what

19     the memo said it wasn't setting out to do, it's a blatant

20     attempt to minimize and trivialize the defendant's conduct

21     and his culpability.

22           And even worse what is problematic is if you read

23     it, the defendant apparently is the victim of this whole

24     thing.  This is Kevin Sepe's fault, which is a ridiculous

25     statement.  Kevin Sepe didn't make him do anything.  And

PROCEEDINGS

1      we, the People, have never alleged or argued that Kevin
2      Sepe was the mastermind behind this entire organization.
3      That was never our position, nor does it really even
4      matter.  He's apparently the victim of a divorce being
5      attacked by teams of lawyers that are being motivated by
6      believing it was bitterness.  He couldn't get a job because
7      he was so humiliated and harmed emotionally by what was
8      happening, all the while again while he's living off this
9      trust that's supporting his lifestyle.  And again, as
10     illuminated or as discussed in our memo, our belief that
11     that trust was funded by proceeds of the fraud.
12             We're here again because the defendant pled
13     guilty under an agreement and it's that simple.  This is
14     not about what other defendants who cooperated or pled
15     guilty early got.  This is not about what relitigating
16     these issues.  And certainly while we stand here and we're
17     sympathetic and understand there are collateral
18     consequences to an individual going into jail, this is a
19     problem of his making, Mr. Thompson's making.
20             Every defendant has family, has children and the
21     defendant had a wife and kids when he chose to do this.
22     Every defendant has personal issues that can be exacerbated
23     when they go into custody.  And no one wants to go to jail,
24     including individuals who are charged and accused with
25     crimes like this defendant.  So finally the defendant is

PROCEEDINGS

1      here to be held accountable for the fraud that he engaged

2      in, the harm that he inflicted on the victims of this

3      scheme.  And to try to somehow blame the District

4      Attorney's Office, this Court for the consequences of his

5      own conduct, his fraud is not a plea for mercy, it's a

6      guilt trip.

7              THE COURT:  It's an attempt at a guilt trip,

8      Counsel.  It's an attempt at a guilt trip.

9              MR. KUDON:  An attempt at a guilt trip.  And,

10     thank you, your Honor, and thus for all of these reasons,

11     and I can go into more if necessary, but we believe that

12     the violation of the agreement or his violation of the

13     agreement, the sentence that we are recommending of one to

14     three is appropriate and we ask the Court to impose that.

15     Thank you for your indulgence, your Honor.

16             THE COURT:  Thank you.  Ms. Fritz.

17             MS. FRITZ:  Thank you, your Honor, and I really

18     do appreciate --

19             THE COURT:  I'm going to ask you to raise the

20     microphone up, so I can hear you.

21             MS. FRITZ:  First of all I want to say that I

22     appreciate, that we very much appreciate the time that your

23     Honor has spent reviewing the materials related to what is

24     obviously a fairly complicated case.  What I want to first

25     address is Mr. Pippen's point that was then echoed by the

PROCEEDINGS

1    Court, which is why does the sentencing submission spend so
2    much time talking about Mr. Thompson's business and I'll
3    tell you why.  This has been a long road to hold, your
4    Honor.
5                THE COURT:  What do you mean when you say it was
6    echoed by the Court?
7                MS. FRITZ:  When the Court said it was an
8    attempt at a guilt trip.
9                THE COURT:  I think my understanding of what the
10   Assistant was trying to say was more focused on the
11   personal ramification that will be facing the defendant
12   should he be incarcerated.  Was I correct about that?
13               MR. KUDON:  That's correct.
14               THE COURT:  I didn't take it to have anything to
15   do with the business portion of the memo.
16               MS. FRITZ:  But the reason why the brief spends
17   so much time is because of this, this indictment occurred
18   back in 2014.  It occurred with much fanfare, that it was a
19   mega fraud, 85 counts, B felonies, you name it.  Ever since
20   then, for years now, we have been dealing with a very
21   simple fact which is the DA takes the position that there
22   is this mega fraud.  We take the position, a very simple
23   position, that is well borne out by the documents, that Mr.
24   Thompson was trying very hard to run a good business and
25   then ran into, was hired by Kevin Sepe, and at that point

PROCEEDINGS

1    engaged in improper conduct in connection with those

2    transactions.

3            It's two different things, but each one of those

4    speaks volumes about Mr. Thompson.  What we tried to do in

5    this submission was to start by laying out what the

6    structure was that was involved here.  And I think it's

7    critically important because the DA's submission mushes

8    everyone together as if it was one group of individuals

9    sitting in a clubhouse.  Here's what it was.  It was --

10           THE COURT:  I don't need you -- I took a very

11   long time to familiarize myself with and understand the

12   nature of the scheme that was involved, including reading

13   your very voluminous submission and speaking with Judge

14   Conviser who had presided over the case for a significant

15   period of time.  So I'm willing to hear anything additional

16   that you have to say with respect to sentence, but I really

17   don't want you to repeat your version of the scheme as it

18   occurred, because I'm familiar with it having read your

19   very thorough papers.

20           MS. FRITZ:  I don't want to repeat it and I

21   appreciate the time the Court spent, but again responding

22   to what Mr. Pippen just said, Mr. Pippen would have the

23   Court believe that there was a group of individuals all

24   acting together and that's not the case.  Kevin Sepe had

25   some very close associates down in Florida that he had

1    worked with for many, many years.  Those individuals were

2    defendants in this case; Dervalli, Oxsalida, Rodriguez,

3    Halperin.  All of those individuals worked with Mr. Sepe

4    day in and day out in his enterprises doing what he was

5    doing.

6          And Mr. Pippen emphasized the idea that there was

7    disguised control here.  Those are the People who did the

8    disguising of the control.  Those are the people who served

9    as nominee shareholders, whether it's Dervalli, whether

10   it's Oxsalida, whether it's Rodriguez, those are the people

11   that were working with Sepe day in and day out

12   accomplishing this nominee shareholder scheme.

13         Then switch across the country, Mr. Thompson in

14   Maryland had created a very successful business and Sepe

15   hires him.  The business was successful and compliant.  Why

16   did I emphasize that there was so much of an effort to be

17   compliant?  Because I think that speaks volumes about who

18   he is and whether or not he was intending to hurt people.

19   So do I think that's absolutely important, yes.  Some of

20   the communications that I provided some of the exhibits

21   that were attached are like documents I've never seen in 40

22   years of doing this work.

23         THE COURT:  Ms. Fritz, are you withdrawing your

24   client's plea of guilty to having committed this crime?

25   Because this crime involves knowledge of a scheme to

PROCEEDINGS

1        defraud.  What you are essentially saying now is that he

2        was just sort of lured into something against his will and

3        that seems to be contrary to his plea of guilty.

4                MS. FRITZ:  What I'm trying to establish is if

5        you can picture a guy who is running a very good,

6        legitimate business, he gets hired by Kevin Sepe and then

7        in those transactions, and he has pled guilty with respect

8        to two of them, he engaged in improper conduct for which he

9        has stepped up and accepted responsibility.  The view from

10       this side of the room is mega fraud involved, everything

11       was a scam.  I'm trying to differentiate.  I'm trying to

12       say did he do wrong things?  Yes, he did and he's trying to

13       take responsibility for it.  But this whole mishmash of

14       trying to just clump everybody together I think is

15       inappropriate roles in --

16               THE COURT:  I would say the People's sentencing

17       memorandum was about one-twentieth the size of yours.  They

18       simply summarized the facts and made -- they noted that the

19       defendant had failed to abide by the plea agreement.  So I

20       don't think that they in any way have exceeded their

21       authority in making an appropriate sentence recommendation.

22       They haven't gone into the facts of what anybody other than

23       what your client did.  You are the one who has gone into

24       the facts of what people other than your client did, so I

25       really am containing -- would like to contain the argument

PROCEEDINGS

1          to your client's conduct.  And I can't help but observe
2          that the voice from your side of the room is an aggregation
3          of responsibility, rather than owning up to what your
4          client did.  To say your client --  I'll reserve my
5          comments for when I impose sentence.
6                    MS. FRITZ:  First of all, of course I've gone
7          through each and every sentence that was imposed in this
8          case, whether by Judge Conviser or by Judge Biben.  I've
9          done it because that's the law, because the Court of
10         Appeals, for example, has reversed a case where there was a
11         failure to consider and ensure that sentences were
12         proportionate one to another based on role and other
13         factors.  It is the law, that is what they expect.  And in
14         this case they reversed and remanded because the
15         sentence -- because the sentencing did not properly
16         consider that issue.  I think there's no question here that
17         I view it as vitally important what was done.  Ordinarily
18         in a case like this the Prosecution --
19                    THE COURT:  Please address your comments to what
20         the sentence for your client should be.
21                    MS. FRITZ:  Okay.  Given, I think, issues like
22         role in personal circumstances are terribly important along
23         with the background in terms of what this --  what the DA
24         has focused on.  Before I get to talking about Mr. Thompson
25         personally I have to address this issue that's been raised

1        by the DA and that is that because Mr. Thompson violated

2        the plea agreement, because he failed to pay the fine that

3        incarceration is appropriate.

4                I'm sure the Court is aware, I'm sure the Court

5        is aware under the relevant provisions of the Penal Law and

6        the Criminal Procedure Law, inability to pay a fine cannot

7        be, cannot be a basis for incarceration.

8                THE COURT:  This was not a fine, this was

9        restitution.

10               MS. FRITZ:  Inability to pay restitution.

11               THE COURT:  Okay, I hear you, yes.

12               MS. FRITZ:  So the Penal Law and the Criminal

13       Procedure Law are very clear in terms of how that issue is

14       addressed.  And the fact that for a long time now the

15       standard has been that we don't put people in jail for

16       that.  We do put people in jail and there was a recent

17       issue involving failure to pay a fine or restitution.  We

18       put people in jail when they fail willfully to pay an

19       amount that's due.  We don't put people in jail, and the

20       provisions of the CPL don't permit it, where they're not

21       able to pay the fine.  We only incarcerate individuals and

22       impose monetary --

23               THE COURT:  I don't think you've spent a lot of

24       time in this courthouse if you believe that's true.

25               MS. FRITZ:  Your Honor, again going through

*S. Scuotto,  SCR*

PROCEEDINGS

```
 1              60.27 --
 2                      THE COURT:  I'm talking about the reality of
 3              this courthouse.  I understand your point.  What is your
 4              next point?
 5                      MS. FRITZ:  Let me just follow-up then, because
 6              to me this is very clear from Penal Law 80 and 60.27 that
 7              inability to pay --
 8                      THE COURT:  Ms. Fritz, your client entered into
 9              a plea agreement.  Did he enter into a plea agreement in
10              which he agreed to make a certain amount of payment within
11              a certain amount of time?
12                      MS. FRITZ:  Yes.
13                      THE COURT:  Has he made one payment?  Has he
14              paid even one dollar?
15                      MS. FRITZ:  He has not.  And the issue is not --
16              the issue before this Court is --
17                      THE COURT:  Is your client living in a shelter?
18                      MS. FRITZ:  No.
19                      THE COURT:  Okay, I don't accept the proposition
20              that your client has not been able to make a single payment
21              in the period of one year, so to the extent you are arguing
22              he's literally unable to make any payment I do not accept
23              that.
24                      MS. FRITZ:  Okay.  The other thing I would point
25              out as a matter of law is that he was never Court ordered
```

*S. Scuotto,  SCR*

PROCEEDINGS

1          to make a payment.  He has never failed to make any payment

2          that has ever been directed by any Court anywhere.  Now, as

3          I said before, incarceration even for failure to pay

4          Court-ordered restitution is not permissible under our laws

5          absent failure to pay, absent failure to pay.

6                    THE COURT:  Please move on to your next point.

7                    MS. FRITZ:  I want to make the record here, your

8          Honor, cause given where we are, we've ended up, this is

9          incredibly significant.  In order -- even to order payment

10         of a fine, inability to pay has to be considered.  And

11         incarceration, for example --

12                   THE COURT:  I told you I don't accept your

13         client has been unable to make pay single payment in the

14         course of a year.

15                   MS. FRITZ:  We have provided ample --

16                   THE COURT:  I'm going to let you speak for five

17         more minutes because I do have a very full calendar, as you

18         know.  I did provide you with an opportunity to put all of

19         your arguments in writing.  You provided me with a very

20         extensive sentence memorandum.  You are now repeating the

21         same thing over and over again when I have already

22         indicated that I have an understanding of your arguments.

23                   MS. FRITZ:  I understand that.

24                   THE COURT:  So I'm going to give you five

25         minutes starting now to finish your argument and I don't

1            think that's unfairly cutting you off.

2                    MS. FRITZ:  I just want to spend some time

3            talking about the information that you received about Mr.

4            Thompson himself.  Obviously you received a great many

5            letters that talk about who he was, who he is, what he's

6            become over the last six years.  I want to introduce you to

7            some of the folks that wrote those letters.  Mr.  Anthony

8            Thompson is Mr. Thompson's Father.  He's an attorney in

9            Washington now for more than fifty years.  With him is

10           Bruce Crawford, another individual who wrote a letter

11           talking about the relationship that the family has and the

12           remarkable relationship that exists between Anthony and his

13           three young children.  With them is Lance Seacrest, he also

14           wrote a letter and talked about -- not the business that

15           Anthony had done, and talked about Anthony helping his

16           family in a terrible time of need and talked about the

17           children and their relationship with Anthony.  So to me,

18           who he was, who he is, who he has become is critically

19           important.

20                    Second, the reason why I'm asking for no jail is

21           because over the course of the last eight to ten years he

22           has suffered every kind of penalty, punishment that one

23           could possibly ask, that one could possibility inflict on

24           someone.  Everything from the loss of every sort of

25           business, professional reputation, his marriage, the loss

PROCEEDINGS

```
 1            of his own mother even as the case was going on.  He has
 2            gone through unbelievable pain and I know this because I've
 3            been there for six years alongside him and alongside this
 4            family.  The man will never reoffend, that's a given.
 5                      We believe that we have established that this was
 6            not a willful failure to pay.  We believe that we have
 7            tracked through every moment of why the agreement was
 8            entered into.  I even provided for the Court a copy of the
 9            arbitrator's order that said we could pay the fine, it's
10            one of the exhibits in here.  He reasonably, very
11            reasonably believed that that fine could be paid when he
12            entered into that agreement.
13                      I also want your Honor to know that when we took
14            this plea in front of Judge Biben we talked at great length
15            because I had very real concerns given the amount of money.
16            And I spoke with Judge Biben and said what are we going do
17            if we come back a year from now and what we had envisioned
18            doesn't happen?  And Judge Biben in no uncertain terms said
19            the issue becomes whether he was able or not, whether there
20            was an ability to pay or not.  I have tried to lay out what
21            Mr. Thompson's life has been over the course of the last
22            year.  Not only did we get in a fight for --
23                      THE COURT:  That is not indicated anywhere in
24            the plea agreement.
25                      MS. FRITZ:  That I fought for and got an order
```

*S. Scuotto,  SCR*

PROCEEDINGS

1        from the arbitrator to pay this amount?  It is one of the
2        exhibits.
3                    THE COURT:  I'm talking about what you say Judge
4        Biben said.
5                    MS. FRITZ:  It's not --  I mean, again to me
6        it's just flat out consistent with what the law is, which
7        is if there is -- if he doesn't pay -- and this was not a
8        court-order, Judge, this was a plea agreement.  This was a
9        breach of contract.  In a breach of contract case, your
10       Honor, there are mitigating circumstances.
11                   THE COURT:  I understand and we're at two
12       minutes now.
13                   MS. FRITZ:  The sentence must be commensurate
14       with the sentences that are being imposed on the other
15       individuals in this case.  As I said, the Court of appeals
16       has reversed for resentencing where the Court failed to
17       take into account whether a sentence was disproportionate
18       to others.  Here every single individual, whether it's
19       Kevin Sepe, whether it's the people who deliberately
20       engaged in acts as nominee shareholders, deliberate willful
21       violations, those individuals, people at a lower rung that
22       assisted Mr. Sepe and then the people completely outside of
23       the organization, the People that did the promotional
24       materials, including Jay Fung who actually managed to get
25       himself indicted for insider trading while awaiting

PROCEEDINGS

1   sentencing, the DA went in front of the Judge and still
2   insisted that he should get jail time, same position, and
3   Judge Conviser gave him time served.  There is not one
4   person here from the top of the latter all the way down
5   that has had jail imposed and it's extremely concerning
6   given the fact that we think that the inability to pay is
7   clear.
8           Here's what I came before the Court to ask for.
9   The Court is absolutely correct that if you put Mr.
10  Thompson in jail you cannot award any significant monetary
11  restitution.  He was, remains willing to do that, to repay
12  investors, to work his tail off after it took him six years
13  to get a position, to get a job.  He's more than willing to
14  do that.
15          The alternative at this point, this is a total
16  crossroads, right now at this moment.  He has finally
17  regained custody of the children.  He's got a small
18  apartment in Maryland and he's finally gotten a job.  He
19  had his first closing in that real estate position
20  recently.  He will either be able to continue that, to make
21  restitution, to do as Kevin Sepe, hundreds of hours of
22  community service, that's one path .  And we have here five
23  organizations in the Maryland area that we've researched
24  for him to perform community service.
25          THE COURT:  Has he done any community service or

PROCEEDINGS

1          any volunteer work during these past years?

2                    MS. FRITZ:  Yes, he was on the Board of Habitat.

3          He's been involved in United Way.

4                    THE COURT:  Being on the Board is different from

5          doing community service.

6                    THE DEFENSE:  He's also participated in their

7          activities.

8                    THE COURT:  He's built houses while he's been on

9          the Board of Habitat for Humanity.

10                    MS. FRITZ:  Yes, he has.

11                    THE COURT:  Mr. Fritz, I have to cut you off.

12          I'm sorry, I gave you a very fair warning and it's five

13          minutes past the warning I've given you.

14                    MS. FRITZ:  The Court is aware at this point you

15          can throw Mr. Thompson in jail.  There will be no monetary

16          component to it.  He will lose his children.  He will lose

17          his job.  He will lose the ability to be productive.  And

18          it is particularly difficult to accept that, whereas I said

19          I don't believe that inability to pay can be a basis for

20          incarceration and all it does is ensure an inability to

21          pay.  This is a precise circumstance where somebody has

22          rebuilt from the ground up, can do better.  He can and I

23          believe --

24                    THE COURT:  Okay, is there anything you want to

25          say Mr. Thompson before I sentence you?

*S. Scuotto,  SCR*

PROCEEDINGS

1              THE DEFENDANT:  Yes, your Honor.  Your Honor, I
2       stand before you and the Court today due to my actions and
3       my mistakes.  These last six years have been an incredibly
4       painful experience and one that I will always carry with
5       me.  After my indictment in 2014 my wife and I separated.
6       We are close to finalizing a painful and difficult divorce,
7       most of all for our three children, Skylar 12, Colton 9 and
8       Beckam 7.  I've lost my mother to a devastating battle with
9       cancer and saw what my criminal case and the worry brought
10      to her in her final days.  I've lost all my money, lived
11      through a painful custody fight and finally gained joint
12      custody of my children.
13              I've caused harm to people who invested in the
14      companies that I brought them and severe pain and heartache
15      to my loved ones.  I do not say these things to your Honor,
16      to this Court as a plea for sympathy, but to take
17      responsibility for my actions.  I understand and I want
18      your Honor to understand that I know what I did was wrong
19      and I've seen the pain that I've caused so many people.
20              It's been a long road back, but I've fought hard
21      to try and rebuild my life and become a better man each
22      day.  My entire world is my children, obviously I want to
23      be with them.  Based on the custody case the Court experts
24      agree it is also important for them to be with me.
25              Rebuilding a professional life was much harder

*S. Scuotto,  SCR*

1        than I imagined it would be, but I studied and passed the

2        real estate exam on the first try and have been given a

3        second chance by an amazing individual to earn money for my

4        family and to take care of my obligations.  I know if your

5        Honor sentences me to jail I will lose it all.  I'm asking

6        your Honor to allow me to go back and take care of my

7        family and continue to be a devoted father and a productive

8        member of society.

9                THE COURT:  Mr. Thompson, I appreciate your

10       words and I particularly appreciate your taking

11       responsibility for the harm that you caused to the people

12       who invested money in securities which were not what they

13       purported to be and I think that it's exceedingly

14       important.  I appreciate that because I think it's critical

15       for you to acknowledge that you stole money from people by

16       your own free will.  That you are a person who has been

17       given many, many advantages that most people who come

18       through this courthouse have not been given educationally,

19       professionally, family-wise.  You have been given

20       tremendous opportunities and yet you and presumably your

21       codefendants, even though I don't know anything much about

22       their cases, engaged in a scheme that was motivated by

23       greed and a lack of consideration for the people who were

24       going to be harmed by what you did.

25                I believed that the plea agreement you entered

*S. Scuotto,  SCR*

PROCEEDINGS

1      into was incredibly generous.  I think that the plea

2      agreements in this case were incredibly generous given the

3      crimes that took place, which had tremendous financial

4      consequences for many people and, as I said, were motivated

5      by greed and a lack of consideration for what would happen

6      to the person on the other side.

7            I am of course sympathetic to the fact that it

8      will be a tremendous hardship for your children if you go

9      to jail and for you.  And putting people in jail, despite

10     my position, is my least favorite thing that I do at my job

11     because it's terrible for everybody's family and every

12     person to have to go to jail, but the fact is that you were

13     given an incredibly reasonable, generous plea offer by the

14     People.  And there are -- I understand that you've come

15     upon financial hardship, but the fact that through this

16     time there hasn't been any effort to make any payments

17     toward the goal to me speaks volumes about your motivation

18     and your belief that you would get away with it.

19           So, I'm terribly sorry for your children that you

20     will be absent from their lives for a period of time,

21     however that is something that happens to anybody who

22     commits a crime and is caught and has to answer for it.  I

23     have already told you that the -- your lawyer that I will

24     permit you to surrender yourself for sentence.  The

25     sentence of the Court on this case is going to be one year

*S. Scuotto,  SCR*

PROCEEDINGS

1      in jail on each count.  The sentences will run concurrent

2      with one another and you can let me know what's a good date

3      for your client to step in.

4              MS. FRITZ:  Your Honor, I have one last request.

5      We took a hard look at Shock and whether Shock would be

6      appropriate in the event of imposition of jail time.  I

7      know your Honor is familiar with Shock --

8              THE COURT:  I don't know if he can get Shock

9      with a City jail sentence.

10              MR. PIPPEN:  My understanding is it's State, but

11      I could be wrong.

12              THE COURT:  I was specifically not sentencing

13      him to State time, so --

14              MS. FRITZ:  Okay.

15              THE COURT:  I mean that was my compromise in

16      your client's benefit.  If you think he would be better off

17      having Shock and a State prison sentence --

18              MS. FRITZ:  No, your Honor, I was actually

19      hoping you would consider a split if you were not going to

20      give what the People were asking for.

21              THE COURT:  What date would your client like to

22      surrender?

23              MR. KUDON:  Your Honor, I'm sorry for

24      interrupting, bail was exonerated on the date of the plea.

25      We would, considering your Honor is going to impose a jail

PROCEEDINGS

```
 1              term --
 2                        THE COURT:  First of all, one person at a time.
 3              Are you making a bail request?
 4                        MR. KUDON:  Yes, your Honor.
 5                        THE COURT:  That's denied.  Obviously my promise
 6              of the sentence is contingent of coming back and
 7              surrendering yourself.  I'm sure you'll do that.  The last
 8              thing you want to do is increase the amount of time and if
 9              you don't come back to court on the date of your sentence
10              that's what's going to happen.  I assume that's obvious to
11              you.
12                        THE DEFENDANT:  Yes.
13                        THE COURT:  I was giving you an opportunity to
14              surrender yourself so you can get your affairs in order and
15              speak to your children.
16                        THE DEFENDANT:  Thank you, your Honor.
17                        THE COURT:  What date would you like?
18                        MS. FRITZ:  Two weeks, your Honor.
19                        THE COURT:  How about January 25th --  how about
20              January 31st?
21                        MS. FRITZ:  Thank you.
22                        (Continued on next page.)
23
24
25
```

*S. Scuotto,  SCR*

PROCEEDINGS

1          THE COURT:  January 31st for sentence.

2                    *    *    *    *

3

4     C  E  R  T  I  F  I  C  A  T  I  O  N

5          It is hereby certified that the foregoing is
       a true and accurate transcript of the
6     proceedings.

7

8     _____
            SAMANTHA SCUOTTO
9            Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**S. Scuotto,  SCR**