**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
                              Plaintiff,    :
    :
    -against-    :
    :
ANTHONY J. THOMPSON, Jr., JAY FUNG, and    :
ERIC VAN NGUYEN,    :
    :    14 Civ. 9126 (ALC)
                          Defendants,    :
    -and-    :
    :
JOHN BABIKIAN and KENDALL THOMPSON    :
                  Relief Defendants.    :
    :
NEW YORK COUNTY DISTRICT ATTORNEY,    :
                    Intervenor    :
-----------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF**
**LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**
**<u>AGAINST DEFENDANT ANTHONY J. THOMPSON, JR.</u>**

**TABLE OF CONTENTS**

Page

BACKGROUND ...................................................................................................1

    THE SCHEME SET OUT IN THE COMPLAINT ............................................1

    WHAT THOMPSON ADMITTED TO IN THE CRIMINAL ACTION ...........3

LEGAL ARGUMENT...........................................................................................5

    A.  SUMMARY JUDGMENT STANDARD .........................................6

    B.  COLLATERAL ESTOPPEL STANDARD: THOMPSON IS PRECLUDED FROM RELITIGATING ISSUES PREVIOUSLY DETERMINED IN THE CRIMINAL CASE.................................................................................6

    C.  COLLATERAL ESTOPPEL SHOULD APPLY BASED ON THOMPSON'S CONVICTIONS ......................................................................................8

        1.  THE ISSUES ARE IDENTICAL: SCHEME TO DEFRAUD..............8

        2.  THE ISSUES ARE IDENTICAL: MARTIN ACT VIOLATION ......13

        3.  ALL OTHER ELEMENTS FOR COLLATERAL ESTOPPEL ARE PRESENT ...........................................................................................13

    D.  THE COURT SHOULD ORDER DISGORGEMENT AND PENALTIES...14

        1.  DISGORGEMENT ............................................................................15

        2.  THE COURT SHOULD IMPOSE SUBSTANTIAL PENALTIES....16

CONCLUSION....................................................................................................21

## Table of Authorities

**Cases**                            **Page(s)**

*Aaron v. SEC*, 446 U.S. 680 (1980) .................................................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................... 6

*Arthur Lipper Corp. v. SEC*, 547 F.2d 171 (2d Cir. 1976) ................................. 9

*Asdourian v. Konstantin*, 77 F. Supp. 2d 349 (E.D.N.Y. 1999) ........................10

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) ................................................. 6

*Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558 (1951) .....................7

*Ernst & Ernst v. Hochfelder* , 425 U.S. 185 (1976) ...........................................9

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) .................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .........6

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .............................................9,21

*People v. Alba*, 43 Misc.2d 878 (Sup.Ct. Bx. Co. 2014) ..................................10

*People v. First Meridian Planning Corp.*, 86 N.Y.2d 608 (1995) ....................11

*People v. Taylor*, 304 A.D.2d 434 (1st Dep't 2003) ........................................11

*South Cherry St., L.L.C. v. Hennessee Grp. L.L.C.*, 573 F.3d 98 (2d Cir. 2009) ...........9

*SEC v. Amerindo Inv. Advisors, Inc.*, 2013 WL 1385013 (S.D.N.Y. Mar. 11, 2013) ..................8

*SEC v. Blackwell*, 477 F. Supp. 2d 891 (S.D. Ohio 2007) ..................................8

*SEC v. Braslau*, 2016 WL 592266 (C.D. Cal. May 13, 2016) .........................12

SEC v. Bravata, 3 F. Supp. 3d 638 (E.D. Mich.2014 ......................................14

*SEC v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001) ....................................19

*SEC v. Colonial Inv. Mgmt. L.L.C.*, 381 F. App'x 27 (2d Cir. 2010) ...........................20

*SEC v. Contorinis*, 743 F.3d 296 (2d Cir. 2014) ........................................15,16

*SEC v. Cook*, 2016 WL 128132 (D. Minn. Jan. 12, 2016) ...........................12

*SEC v. Dimensional Entm't Corp.*, 493 F. Supp. 1270 (S.D.N.Y. 1980) ....................12

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ...................15,16

*SEC v. Forest Res. Mgmt. Corp.*, 2010 WL 2077202  (S.D.N.Y. May 18, 2010) ..................16,18

SEC v. Juno Mother Earth Asset Mgmt., L.L.C., 2014 WL 1325912

   (S.D.N.Y. Mar. 31, 2014) ......................................................15,

*SEC v. Garber*, 959 F. Supp. 2d 374 (S.D.N.Y. 2013) .................................. 10

*SEC v. Garber*, 2013 WL 1732571 (S.D.N.Y. Apr. 22, 2013) ....................... 10

*SEC v. Grossman*, 1997 WL 231167 (S.D.N.Y. May 6, 1997) ...................... 15

*SEC v. GTF Enters.*, 2015 WL 728159 (S.D.N.Y. Feb. 19, 2015) ................. 19

*SEC v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y. 2007) ....................... 17,18

*SEC v. Hansen*, 2017 WL 1298022 (S.D.N.Y. Mar. 31, 2017) ...............................................11, 18

*SEC v. Huff*, 758 F. Supp. 2d 1288 (S.D. Fla. 2010) ................................................................. 20

*SEC v. Illarramendi*, 260 F. Supp. 3d 166 (D. Conn. 2017) .................................................. 7,8

*SEC v. Jean-Pierre*, 2015 WL 1054905 (S.D.N.Y. Mar. 9, 2015) ..........................................20

*SEC v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007) ................................................................ 15

*SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1 (D.D.C. 1998) ................................................19

*SEC v. Lazare Indus.*, 294 F. App'x 711 (3d Cir. 2008) ..........................................................20

*SEC v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010) ....................................................................9

*SEC v. Lybrand*, 281 F. Supp. 2d 726 (S.D.N.Y. 2003) ...........................................................16

*SEC v. Malik*, 2016 WL 670032 (S.D.N.Y. Feb. 9, 2016) ........................................................18

*SEC v. Mattera*, 2013 WL 6485949 (S.D.N.Y. Dec. 6, 2013) ..................................................19

*SEC v. McGinn, Smith & Co.*, 2015 WL 667848 (N.D.N.Y. Feb. 17, 2015) ...........................8,12

*SEC v. Milligan*, 2007 WL 9724904 (E.D.N.Y. June 5, 2007) ................................................. 11

*SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) ..............................................9,10

*SEC v. Nadel*, 2016 WL 639063 (E.D.N.Y. Feb. 11, 2016) .....................................................17

*SEC v. Namer*, 2004 WL 2199471 (S.D.N.Y. Sept. 29, 2004) ..................................................7

*SEC v. Neman*, 2015 WL 12745802 (C.D. Cal. Dec. 8, 2015) .............................................8,12,14

*SEC v. Opulentica, L.L.C.*, 479 F. Supp. 2d 319 (S.D.N.Y. 2007) ...........................................7

*SEC v. Palmisano*, 135 F.3d 860 (2d Cir. 1998) ....................................................................17

*SEC v. Pattison*, 2011 WL 723600 (N.D. Cal. Feb. 23, 2011) ................................................19

*SEC v. Quinlan*, 2008 WL 4852904 (E.D. Mich. Nov. 7, 2008) ..............................................13

*SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013) ......................................................................17

*SEC v. Roor*, 2004 WL 1933578 (S.D.N.Y. Aug. 30, 2004) .....................................................7

*SEC v. Sayid*, 2018 WL 357320 (S.D.N.Y. Jan. 10, 2018) ......................................................10

*SEC v. Shehyn*, 2010 WL 3290977 (S.D.N.Y. Aug. 6, 2010) ...............................................7,9,12

*SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340 (S.D.N.Y. 2011) .................................10

*SEC v. Tzolov*, 2011 WL 308274 (S.D.N.Y. Jan. 26, 2011) ....................................................12

*SEC v. Warde*, 151 F.3d 42 (2d Cir. 1998) ............................................................................15

*SEC v. Weed*, 315 F. Supp. 3d 667 (?YEAR?) ....................................................................... 7

*SEC v. Wyly*, 117 F. Supp. 3d 381 (S.D.N.Y. 2015) ................................................................9

*SEC v. Yorkville Advisors, L.L.C.*, 2013 WL 3989054 (S.D.N.Y. Aug. 1, 2013) .......................10

*United States v. Podell*, 572 F.2d 31 (2d Cir. 1978) .................................................................6

**Statutes**

*Securities Act of 1933*

Section 17(a), 15 U.S.C. § 77q(a) ............................................................................... *passim*
Section 20(d),15 U.S.C. § 77t (2012) ........................................................................18

*Securities Exchange Act of 1934*

Section 10(b), 15 U.S.C. § 78j(b) ............................................................................... *passim*
Section 21(d)(3), 15 U.S.C. § 78u(d)(3) ................................................................17,19

*NYCLS Gen. Business Law*

N.Y. Gen. Bus. Law § 352-c(5) ................................................................................. *passim*

*NYCLS Penal Law*

N.Y. Penal Law § 190.65 ............................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................1,7,13
17 C.F.R. § 201.1004 ...................................................................................................17
17 C.F.R. § 240.10b-5.................................................................................................. *passim*

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") respectfully submits this memorandum, together with its Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("SMF"), in support of its motion for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure against Defendant Anthony J. Thompson, Jr. ("Defendant" or "Thompson").[1] The Commission seeks summary judgment on the grounds that Thompson's criminal guilty plea and conviction in the parallel criminal proceeding in New York State criminal court, *People of New York v. Thompson*, Indictment No. 3853-201412-CR-127 (the "Criminal Action"), establishes that Thompson violated Section 17(a) of the Securities Act of 1933 ("Securities Act")[15 U.S.C. § 77q(a)][2] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] as alleged in the Commission's Complaint ("Complaint").

## BACKGROUND

### The Scheme Set Out in the Complaint

The Complaint in this action, attached to the Pizzani Declaration as Exhibit F ("Comp."), sets out a series of securities laws violations to inflate the value of five penny stock issuers so that Thompson, and others, could then dump their shares on unsuspecting investors. Comp. ¶ 1. The five penny stock companies were Blast Applications Inc. ("Blast"), Smart Holdings, Inc. ("Smart Holdings"), Blue Gem Enterprise, Inc. ("Blue Gem"), Lyric Jeans, Inc. ("Lyric"), and

---

[1]    Factual citations are made to the relevant numbered paragraphs of the accompanying Statement of Material Facts ("SMF"). Each numbered paragraph in the SMF sets forth material facts not in dispute in accordance with Local Civil Rule 56.1, and, in turn, each paragraph of the SMF cites to the exhibits attached to either the accompanying Declaration of Peter Pizzani, dated February 15, 2019 ("Pizzani Decl."), or the accompanying Declaration of Michael Vitale, dated February 15, 2019 ("Vitale Decl."). Where appropriate, direct citations are made to the exhibits attached to either the Pizzani Declaration or the Vitale Declaration.

[2]    The SEC also asserted claims under Section 17(b) of the Securities Act, but those are not within the scope of this application.

Mass Hysteria Entertainment Company, Inc. ("Mass Hysteria"). Comp. ¶ 1. Thompson was the managing director of and had ultimate authority over OTC Solutions LLC ("OTC Solutions"), a now defunct entity based in Bethesda, Maryland, that distributed certain electronic penny stock promotion newsletters, including ExplicitPicks.com, PremierPennyStocks.com, ExplicitPennyPicks.com, FreeInvestmentReport.com, FreePennyAlerts.com and OxofWallStreet.com. Thompson also controlled a company called Microcapster, Inc. ("Microcapster"). Comp. ¶ 9.

The Complaint in this action alleges that Thompson participated in five separate schemes that employed common components, and took place between November 2009 and September 2010 (*see, e.g.*, Comp. ¶¶ 1, 18-19, 35, 37, 47, 57, 74, 90; SMF ¶¶ 16, 18, 21), and involved the following steps:

*First*, all the defendants, including Thompson, acquired a significant amount, sometimes the majority, of the shares of these issuers. Comp. ¶¶ 2(a), 16, 33, 55, 73, 89-90; SMF ¶ 22.

*Second*, all the defendants, including Thompson, distributed misleading electronic marketing letters through entities they controlled, creating demand by touting the issuers through a barrage of falsehoods or misleading omissions of material fact.[3] Each newsletter containing these falsehoods constituted a separate violation. Comp. ¶ 2; SMF ¶ 23, 24.

*Third*, along with the other defendants, Thompson made a number of misrepresentations and omissions in the materials disseminated by the promotional entities he controlled.[4] Each

---

[3]      According to the complaint, these included, among others (1) statements about favorable price movements, *e.g.* Comp. ¶¶ 19 (regarding Blast), without informing investors that his own undisclosed trading contributed to much of the favorable price movements and increase in volume (Comp. ¶ 22); (2) statements claiming that due diligence and analysis by allegedly disinterested independent third parties resulted in optimistic assessments of the issuers' prospects (*see, e.g.,* Comp. ¶¶ 36, 40 (regarding Blue Gem), 58 (regarding Lyric); as well as (3) general misstatements claiming rosy financial prospects, potential short squeezes, or the nature of the investment. *See, e.g.,* Comp. ¶¶ 59-60 (regarding Lyric), 75-77 (Smart Holdings). *See also* SMF ¶ 24.

[4]      The Complaint alleges that Thompson's misrepresentations and omissions fell into three categories: (1) misstatements about the consideration received for pumping the shares; (2) misrepresentations about Thompson's

2

newsletter and other promotional materials that failed to disclose the full truth, as set forth above, constituted a separate violation.

The Complaint alleges that, ultimately, the defendants, including Thompson, sold their shares at the "pumped" price, leading to a crash in value that left unwitting investors with losses. Comp. ¶ 2. *See also* Comp. ¶¶ 28, 51, 71, 86, 98; SMF ¶ 26. These schemes were highly profitable for Defendant. In total, Thompson was unjustly enriched in the amount of $2,374,873.61 million as a result of the schemes set out above, as set forth in the annexed Declaration of Michael Vitale at ¶¶ 6, 8, 9-11, 15-27, 18-20, 12-14; Exhibits 6,12-17, 18-24, 30-32, 33-35, 27-29; *see also* SMF ¶¶ 28-43.

Based on these allegations, the SEC asserted claims against Thompson for (1) violations of Section 17(a) of the Securities Act (Comp. ¶¶ 100-103); (2) violations of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder (Comp. ¶¶ 107-110); and for violations of Section 17(b) of the Securities Act. Comp. ¶¶ 104-06.

### What Thompson Admitted To in the Criminal Action

In the Criminal Action, Thompson, along with several other defendants, was charged with numerous violations of state criminal law with respect to nine penny stock issuers, including the five issuers from the SEC Action – Blast, Blue Gem, Mass Hysteria, Lyric and Smart Holdings – plus several others.[5] SMF ¶¶ 1-2. (A copy of this charging instrument dated September 3, 2014 (the "Indictment") is attached as Exhibit A to the Pizzani Declaration.)

The Indictment covered the period of April 3, 2009, through June 1, 2012 (*i.e.*, a more expansive period than the November 2009 through September 2010 period set out in the SEC

---

intent with respect to selling those shares; and (3) failing to disclose that Thompsons was acting in concert with others to pump up the price of the issuers he promoted. SMF ¶ 24.

[5]     The other issuers were Recycle Tech, Inc., (RCYT), Hydrogenetics, Inc (HYGN), XYnergy Holdings (XYNH), and Sunpeaks Ventures (SNPK).

3

Complaint). Indictment 1; SMF ¶ 3. Several of the Counts involved conduct that ranged through the entire time frame of the scheme and involved all issuers; others related to just one issuer. Indictment 1. Moreover, not all defendants were named in each Count. *Id.*

Thompson reached a plea agreement (Pizzani Decl. Ex. C), dated September 27, 2017, whereby he entered pleas of guilty to Counts Two, Twelve and Forty-Six of the indictment. SMF ¶ 9. Count Two was Scheme to Defraud in the First Degree, under Penal Law § 190.65(1)(a), relating to the entirety of the scheme involving all nine issuers. SMF ¶ 6. Counts Twelve (relating to Blue Gem) and Forty-Six (relating to another issuer) involved violations of what is known as the Martin Act, N.Y. G.B.L. § 352-c(5). SMF ¶¶ 7, 9.

The Second Count charged Thompson (and others) with committing a scheme to defraud. It charged that "during the period from on or about April 3, 2009 to on or about June 1, 2012, [Thompson] engaged in a scheme constituting a systemic ongoing course of conduct with intent to defraud 10 or more persons and to obtain property from 10 or more persons by false and fraudulent pretenses, representations and promises, and so obtained property from one or more such persons." SMF ¶ 6. The time period for this charged scheme includes the time period set out in the SEC's Complaint in the case at bar.

The Twelfth Count charged that Thompson (and others) violated the Martin Act, NY G.B.L. § 352-c(5), in connection with the Blue Gem scheme when, through the time period July 2, 2009 through February 28, 2010, they "intentionally engaged in a scheme constituting a systemic ongoing course of conduct with intent to defraud 10 or more persons and to obtain property from 10 or more persons by false and fraudulent pretenses, representations and promises and so obtained property from one or more such persons while engaged in inducing and

4

promoting the issuance, distribution, exchange, sale, negotiation and purchase of securities, to

wit, the stock of Blue Gem Enterprises, Inc. (BGEM)." SMF ¶ 7.[6]

On or around September 27, 2017, Thompson pleaded guilty to the above-referenced

three Counts, pursuant to a written plea agreement. SMF¶ 8 ("Plea Agreement"). Pursuant to this

plea agreement (Pizzani Decl., Ex. C) Thompson agreed to

> plead guilty . . . to: Scheme to Defraud in the First Degree, under
> count 2 of the Indictment, a class E felony, in violation of Penal
> Law § 190.65(1)(a); violation of General Business Law § 352-c(5),
> under count 12 of the Indictment, a class E felony; and General
> Business Law § 352-c(5), under count 46 of the Indictment, a class
> E felony.

Plea ¶ 3; SMF ¶¶ 8, 9.

During his plea in open court, Thompson was asked, "Are you pleading guilty, sir,

because you are in fact guilty?" and responded "Yes, Your Honor." Pizzani Decl. Ex. D; Plea Tr.

3:20-22; SMF ¶ 10.

Thompson was sentenced on all three of the counts referenced above, and given a term of

imprisonment for each of the three counts for which he pled guilty. "The sentence of the Court

on this case is going to be one year in jail on each count. The sentences will run concurrent with

one another . . . ." January 4, 2019 Sentencing Transcript at 24:24 – 25:2. (Pizzani Decl. Ex. E;

SMF ¶ 11.)

## LEGAL ARGUMENT

Thompson's conviction on the basis of his plea provides the legal basis, under the

doctrine of collateral estoppel, for summary judgment on the majority of the SEC's claims

against him. As set forth below, the convictions for scheme to defraud under New York Penal

---

[6]      The Forty-Sixth Count was similar, except it covered the time period of January 1, 2010 through April 1,
2010, and related to Recycle Tech, Inc., an issuer not included in the case at bar. SMF ¶ 8.

Law §190.65(1)(a) and under the New York Martin Act, G.B.L. § 352-c(5), satisfy the elements of the SEC's claims under §§ 17(a) of the Securities Act and 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

### A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).

The burden then shifts to the defendants who "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In deciding the SEC's motion, the court must draw all "justifiable inferences" in Defendants' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Collateral Estoppel Standard: Thompson is Precluded From Relitigating Issues Previously Determined in the Criminal Case

The doctrine of collateral estoppel precludes Thompson from disputing the facts that formed the basis for his criminal convictions. It is settled law that once an issue of law or fact necessary to a judgment has been decided, the doctrine of collateral estoppel precludes "relitigation of [that same issue] in a suit on a different cause of action involving a party to the first case." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (internal citations and quotations omitted). "It is well-settled that a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F.2d 31,

35 (2d Cir. 1978). This is because the "the government bears a higher burden of proof in the criminal than in the civil context." *SEC v. Shehyn*, 2010 WL 3290977, at *3 (S.D.N.Y. Aug. 9, 2010).

As the Supreme Court has stated, "a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding ... [provided the questions were] 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69 (1951) (citations omitted). For collateral estoppel to apply in a parallel civil action, the civil claim does not need to arise under the same statutory provisions under which the defendant was criminally convicted. *SEC v. Amerindo Inv. Advisors, Inc.*, 2013 WL 1385013, at *3 (S.D.N.Y. Mar. 11, 2013). Rather, it is enough if "the factual allegations underlying the ... convictions are sufficient to establish that [the defendant] also violated the provisions [of law] at issue." *Id.* If the facts underlying the prior criminal conviction are the same as the essential facts underlying the subsequent civil case, the doctrine of collateral estoppel will apply even if the factual allegations are not identical. *See, e.g., SEC v. Dimensional Entertainment Corp.*, 493 F. Supp. 1270, 1277 (S.D.N.Y. 1980); *SEC v. Namer*, 2004 WL 2199471, at *6 (S.D.N.Y. Sept. 29, 2004).

As a result, where, like here, a party has pleaded guilty or been convicted of criminal charges covering the same conduct set out in the SEC's Complaint, courts in this district (and elsewhere) have not hesitated to enter summary judgment on the grounds of collateral estoppel. *See, e.g., SEC v. Illarramendi*, 260 F. Supp. 3d 166, 176 (D. Conn. (2017); *SEC v. Opulentica, LLC*, 479 F.Supp. 2d 319,325-27 (S.D.N.Y. 2007); *SEC v. Haligiannis*, 470 F.Supp.2d 373, 378-79 (S.D.N.Y. 2007); *SEC v. Roor*, 2004 WL 1933578, * 7 (S.D.N.Y. Aug. 30, 2004); *see also SEC v. Weed*, 315 F. Supp. 3d 667, 673 (D. Ma. 2018) (involving charges that defendant

7

engaged in scheme related to promoter's issuance of misleading press releases in connection with penny stock pump and dump); *SEC v. Neman*, 2015 WL 12745802, *7 (C.D. Cal. 2015); *SEC v. Blackwell*, 477 F. Supp. 2d 891, 899-900 (S.D. Ohio, 2007). As observed by the Court in *SEC v. Blackwell*: "The prevalence of estoppel in civil cases following their criminal counterparts is due in part to the court's desire to avoid inconsistent verdicts in light of the higher burden of proof required in the prior criminal case." 477 F. Supp. 2d at 899. *See, also, Illarramendi*, 260 F.Supp.3d at 176; *SEC v. McGinn, Smith & Co.*, 2015 WL 667848, *6 (N.D.N.Y. Feb. 17, 2015).

Collateral estoppel is appropriate when (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated was necessary to the judgment. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

The Commission "has the burden of demonstrating the identity of the issues," while Thompson "has the burden of showing lack of a full and fair opportunity to litigate the issue in the prior action." *McGinn, Smith & Co.*, 2015 WL 667848, at *6. As set forth below, the SEC easily meets its burden.

### C. Collateral Estoppel Should Apply Based on Thompson's Convictions

#### 1. The Issues Are Identical: Scheme to Defraud

The elements of Thompson's conviction for a scheme to defraud are legally and factually similar enough to the charges brought by the SEC to entitle the SEC to collateral estoppel.

In order to establish a violation of Section 10(b) and Rule 10b-5, the Commission must show that the defendant, (1) acting with the requisite scienter,[7] (2) made material misrepresentations or omissions or engaged in a manipulative practice, such as a scheme to defraud, (3) in connection with the purchase or sale of a security, (4) by use of an instrumentality of interstate commerce, such as the mails or wires. *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) (citing *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)). *See also SEC v. Shehyn*, 2010 WL 3290977 at *3; *SEC v. Tzolov*, 2011 WL 308274 at *2 (S.D.N.Y. Jan. 26, 2011) (same).

Courts have further explained what constitutes a scheme to defraud. Exchange Act Section 10(b) makes it "unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." Rules 10b-5(a) and (c) prohibit the use of any "device, scheme, or artifice to defraud" or any other "act, practice or course of business which operates ... as a fraud or deceit" in connection with the purchase or sale of securities, with scienter. *SEC v. Monarch Funding Corp.*, 192 F.3d 295 at 308. In short, these antifraud provisions impose primary liability on any individual who "substantially participates in a manipulative or deceptive scheme by directly or indirectly employing a manipulative or deceptive device . . . intended to mislead investors." *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (emphasis omitted). Scheme liability can attach to a defendant based

---

[7]    Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n. 12 (1976); *Aaron v. SEC*, 446 U.S. 680, 695-697 (1980). In the Second Circuit, scienter also may be demonstrated by showing reckless disregard for the truth of statements made. *SEC v. Wyly*, 117 F. Supp. 3d 381, 388 (S.D.N.Y. 2015) (*citing South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)). To establish scienter, it is not necessary to show that the defendant knew he was violating the law; it is sufficient to show that he knew what he was doing. *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 181 (2d Cir. 1976) ("there must be proof of intention 'to deceive, manipulate, or defraud' not an intention to do this in knowing violation of the law").

on his performance of "inherently deceptive" conduct distinct from a misleading statement. *See SEC v. Garber*, 2013 WL 1732571, *4 (S.D.N.Y. Apr. 22, 2013).

The elements of a violation under Section 17(a) of the Securities Act are, as court after court has held, "essentially the same" except that while Section 10(b) of the Exchange Act applies only to sales of securities, Section 17(a) of the Securities Act applies to offers and sales.[8] Moreover, subsections (a)(2) and (a)(3) of Section 17(a) do not require scienter. *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 349 (S.D.N.Y. 2011); *see also SEC v. Sayid*, 2018 WL 357320, *3 (Jan. 10, 2018) ("under Section 17(a)(2) of the Securities Act, the SEC must allege that [defendant] obtained money or property through misstatements or omissions about material facts in the offer or sale of securities"); *SEC v. Yorkville*, 2013 WL 3989054 (S.D.N.Y. Aug. 2, 2013).

The scheme to defraud statute to which Thompson pleaded guilty contains all the necessary elements to establish liability in this case. "Penal Law § 190.65(1)(a) provides that the crime of scheme to defraud in the first degree is committed by a person who:

> engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons."

*People v. Alba*, 43 Misc.2d 878, 879 (Sup.Ct. Bx. Co. 2014). By pleading guilty to this charge, Thompson has conceded that he engaged "in a scheme constituting a systemic ongoing course of conduct with intent to defraud," and that he obtained property from others as part of that scheme to defraud in which he used "false or fraudulent pretenses, representations or promises." As it is undisputed that Thompson's conduct was in connection with the purchase or sale of a security,

---

[8]      *See, e.g., SEC v. Monarch Funding Grp.*, 192 F.3d 295, 308 (2d Cir.1999); *SEC v. Mattera*, 2013 WL 6485949, *9 (S.D.N.Y. Dec. 9, 2013); *see also SEC v. Garber*, 959 F.Supp.2d 374, 379 (S.D.N.Y. 2013).

Thompson's plea satisfies all the elements of Sections 10(b) of the Exchange Act and 17(a) of the Securities Act.[9]

While there is a dearth of decisions construing this specific New York scheme to defraud statute in the collateral estoppel context, case law construing collateral estoppel motions by the SEC after convictions for federal mail and/or wire fraud demonstrates that a conviction under the New York scheme to defraud statute is sufficient to warrant entry of judgment for the Commission. That is because the New York penal law is modeled on the federal mail fraud statute,[10] and because that federal statute is often used as the basis for collateral estoppel in civil enforcement actions.

Courts in this district and elsewhere have routinely applied collateral estoppel in civil enforcement actions where a defendant previously pled guilty or was convicted of mail and/or wire fraud. For example, in the recent case of *SEC v. Hansen*, 2017 WL 1298022 (S.D.N.Y. Mar. 31, 2017), the court noted that the defendant there had been convicted of mail and wire fraud, which entailed a scheme to defraud (which required scienter and material misrepresentations), the use of the mails, and the obtaining of property through the fraud (*Hansen*, 2017 WL 1298022, at * 5) – the same elements of the scheme to defraud under the New York Penal law. This was held to establish collateral estoppel for violations of 10(b) of the Exchange Act, and Rule 10b-5 thereunder, as well as Section 17(a) of the Securities Act. The same results obtained in *SEC v. McGinn, Smith*, 2015 WL 667848 at *8 (collecting cases applying collateral estoppel to mail and wire fraud convictions); *SEC v. Milligan*, 2007 WL 9724904, *3 (E.D.N.Y. June 5,

---

[9] There is also no dispute that the instrumentalities of interstate commerce, including wires and mails, were used. SMF ¶ 17; *see also* Pizzani Decl. Ex. F.

[10] The statute Thompson was convicted of violating is modeled on the federal mail fraud statute. *People v. First Meridian Planning Corp.*, 86 N.Y.2d 608, 616 (1995); see also *People v. Taylor*, 304 A.D.2d 434, 435 (1st Dep't 2003) ("The scheme to defraud statute (Penal Law § 190.60 and § 190.65) was derived from and patterned after the Federal mail fraud statute").

11

2007) (wire fraud); *SEC v. Tzolov*, 2011 WL 308274, *4 (S.D.N.Y. Jan. 26, 2011) (summary judgment granted where the same conduct was at issue in the criminal case, which included wire fraud, as in the SEC action); *SEC v. Shehyn*, 2010 WL 3290977, at *2–3 (granting summary judgment on the SEC's §§ 17(a), 10(b), and Rule 10b–5 claims based on the defendant's prior wire fraud guilty plea). *See also SEC v. Braslau,* 2016 WL 592266, *4-6 (C.D. Cal. May 13, 2016) (mail and wire fraud convictions show that "the key elements needed to prove the SEC's case [under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act] have already been adjudicated and decided against" defendant); *SEC v. Cook*, 2016 WL 128132, *2 (D. Minn. Jan. 12, 2016) (mail and wire fraud convictions satisfy collateral estoppel requirements for SEC charges under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act); *SEC v. Neman*, 2015 WL 12745802 at *2 (mail fraud conviction acts as collateral estoppel justifying Exchange Act and Securities Act fraud charges); *SEC v. Bravata*, 3 F. Supp.3d 638, 655-57 (E.D. Mich. 2014) (conviction on wire fraud and conspiracy to commit wire fraud).

Notably, in *SEC v. Dimensional Entertainment Corp.*, 493 F. Supp.1270 (S.D.N.Y. 1980), the defendant was acquitted on two counts of securities fraud, but convicted on one count of wire fraud. The fact that he was acquitted for criminal securities fraud did not, however, prevent a finding of liability on collateral estoppel grounds to civil securities fraud counts. To the contrary, the Court held that since the wire fraud claim related to a scheme to defraud securities purchasers through false statements by creating an artificially inflated market also established the SEC's charges under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as under Section 17(a) of the Securities Act.

### 2. The Issues Are Identical: Martin Act Violation

The same analysis applies to the plea and conviction of Count 12 under the Martin Act, relating to Blue Gem. The New York State Martin Act is a securities fraud analog. *See SEC v. Quinlan*, 2008 WL 4852904, *4-5 (E.D. Mich. Nov. 7, 2008) (conviction under state securities fraud statute is collateral estoppel for Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act claims).

The elements of the Martin Act Count, NY G.B.L. § 352-c(5), to which Thompson pled guilty in connection with the Blue Gem scheme, through the time period July 2, 2009 through February 28, 2010, establishes a violation under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as Section 17(a) of the Securities Act. Elements of the admitted Martin Act violation include (1) scienter ("intentionally engag[ing] in a scheme constituting a systemic ongoing course of conduct . . . [with] intent to defraud"); (2) material misrepresentations or a scheme ("false and fraudulent pretenses, representations and promises" and "ongoing course of conduct"); (3) in connection with the purchase or sale of a security ("inducing and promoting the issuance, distribution, exchange, sale, negotiation and purchase of securities, to wit, the stock of Blue Gem Enterprises, Inc. (BGEM).") *See* NY G.B.L. §352-c(5).

### 3. All Other Elements For Collateral Estoppel Are Present

With respect to both the scheme to defraud and Martin Act counts, it cannot be gainsaid that the other elements of collateral estoppel are satisfied.

*First*, as set out above, the issues necessary to a collateral estoppel finding were litigated in the Criminal Action. It is well-established that where, as here, the same factual elements of the second case were present in the earlier criminal action, those issues were actually litigated, even

if the specific charges were different. *Neman*, 2015 WL 12745802, *7. That is the case here. In Thompson's allocution, he stated that charges in the Criminal Action, like in the case at bar, related to misleading statements in promotional newsletters. "During the period from April 2009, and continuing through 2012 . . . I agreed to conduct promotional [campaigns] . . . and I engaged in newsletter promotions that resulted in increases in volume of trading and the price of those stocks and did this as a part of the scheme intended to defraud ten or more investors, and I participated in transactions in order to obtain property and did obtain property as a result of those transactions." Plea at 8:1-12; SMF ¶ 10. Finally, Thompson's guilty plea formed the basis for the actual decision in the Criminal Action.

> **Second**, Thompson had a full and fair opportunity to litigate the prior action and elected to plead guilty, thereby accepting the truth of the charges brought against him. The criminal case was litigated for a number of years, and the criminal court entertained significant motion practice. Thompson successfully moved to have numerous counts of the indictment dismissed before pleading guilty. He had able counsel, and prevailed in many motions.

> **Finally**, the issues previously decided are necessary to a judgment here. As set out above, all of the factual predicates that are elements of claims under Section 10(b) of the Exchange Act and Section 17(a) under the Securities Act were necessarily decided in the prior Criminal Action. Further, the conduct that Thompson admitted to in the Criminal Action is necessary to support a judgment in this civil case.

### D. **The Court Should Order Disgorgement and Penalties**

### 1. **Disgorgement**

Thompson should be ordered to disgorge $2,374,873.61, plus pay prejudgment interest. The Court enjoys broad equitable power to order Thompson to disgorge the profits from his

wrongful conduct. *See First Jersey Secs. Inc.*, 101 F.3d at 1474. The "primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *Id.* at 1474; *SEC v. Juno Mother Earth Asset Mgmt., LLC*, 2014 WL 1325912, at *2-3 (S.D.N.Y. Mar. 31, 2014) ("Through disgorging any ill-gotten gain, the court returns the Defaulting Defendants to their status quo prior to the wrongdoing.").

The disgorgement amount "need only be a reasonable approximation of profits causally connected to the violation; 'any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty.'" *SEC v. First Jersey Sec., Inc.*, 101 F.3d at 1475 (quoting *SEC v. Patel*, 61 F.3d 137, 139, 140 (2d Cir. 1995)).[11]

A district court has broad discretion not only in determining whether to order disgorgement but also in calculating the amount to be disgorged. *SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014). Furthermore, the SEC's burden on such an application is light. Thus, once the SEC has met its burden to come forward with a reasonable approximation of profits causally connected to the violation, "the burden shifts to the defendant[] to contest the Government's calculations." *Juno Mother Earth Asset Mgmt.*, 2014 WL 1325912 at *2.[12]

As the Vitale Decl. sets out, Thompson earned the following amounts for each promotion:

---

[11]   "[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation. So long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998). *SEC v. Jones*, 476 F. Supp. 2d 374, 386 (S.D.N.Y. 2007) ("a court need not determine the precise amount of funds a defendant acquired"). *See also First Jersey Secs, Inc.*, 101 F.3d at 1475.

[12]   Nor does it matter that a defendant may be currently unable to pay. *Juno Mother Earth*, 2014 WL 1325912, at *3 (court does not consider the defendants' financial situation to be a valid defense to the request for disgorgement"); *SEC v. Grossman*, 1997 WL 231167 at *10 (S.D.N.Y. May 6, 1997) ("there is no legal support for [defendant's] assertion that his financial hardship precludes the imposition of an order of disgorgement"), *aff'd in part, vacated in part on other grounds sub nom. SEC v. Hirshberg*, 1999 WL 163992 (2d Cir. Mar. 18, 1999).

BLAP:        $139,516.65
BGEM:        $485,366.00
MHYS:        $564,412.00
LYJN:        $660,578.96
SMHS:        $525,000.00

Vitale Decl. ¶¶ 6-21 and Exhibits 6-7, 12-35.

The Court should also grant the Commission prejudgment interest on the amount of

disgorgement. The Court has discretion as to whether to grant prejudgment interest on the

amount to be disgorged and the applicable rate. The grant of prejudgment interest "is intended to

deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably

approximating the cost of borrowing such gain from the government." *Contorinis*, 743 F.3d at

308. Typically, courts apply the IRS underpayment rate to the amount to be disgorged. *See, e.g.,*

*First Jersey Secs, Inc.*, 101 F.3d at 1476-77 (approving of that rate).

## 2.  **The Court Should Impose Substantial Penalties**

In addition to disgorgement, the Court should also order Thompson to pay a significant

penalty as a consequence of his misconduct. "[B]ecause disgorgement represents merely a return

of ill-gotten gains," courts recognize that "an additional monetary penalty is necessary to

appropriately punish and deter . . . fraudulent activities." *SEC v. Forest Res. Mgmt. Corp.*, 2010

WL 2077202, at *2 (S.D.N.Y. May 18, 2010). Those provisions further state that the amount of

the penalty shall be determined by the Court "in light of the facts and circumstances." "District

courts have discretion in determining the appropriate amount of any penalty" imposed under the

federal securities laws. *SEC v. Lybrand*, 281 F. Supp. 2d 726, 729 (S.D.N.Y. 2003).

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act provide

three separate tiers of potential penalties that increase depending upon the seriousness of the

violation. "The first tier of fines applies to all securities law violations; the second provides

higher maximum fines for violations that involved fraud; and the third provides the highest

maximums for violations that involved fraud and 'resulted in substantial losses or created a

significant risk of substantial losses to other persons.'" *SEC v. Palmisano*, 135 F.3d 860, 866 (2d

Cir. 1998) (citation omitted).

Under each tier, the Court is authorized to impose the greater of the defendant's

"pecuniary gain" from the violation, or the applicable tier of the penalty amount per each

violation. For example, for first-tier penalties (as modified for inflation by the Debt Collection

Improvement Act of 1996 and the corresponding Commission regulations), the statutes provide

that for violations occurring after March 3, 2009 but before March 2013 (as is the case for

Thompson's violations), the amount of the penalty for a natural person shall not exceed the

greater of $7,500 per violation or the gross amount of pecuniary gain to that person. That amount

increases to $75,000 for a second tier penalty, or the gross amount of pecuniary gain to the

defendant, and to $150,000, or, again, the gross amount of pecuniary gain, for third-tier

penalties. *See, e.g.,* 15 U.S.C. § 78u(d)(3)(B)(i) (Section 21(d)(3)(B)(i) of the Exchange Act); 17

C.F.R. § 201.1004; Table IV to Subpart E. *See also SEC v. Nadel*, 2016 WL 639063, *21

(E.D.N.Y. Feb. 11, 2016).

However, the Court can also assess a penalty based on the appropriate tier. Under the

applicable statutes,

> a first-tier penalty may be imposed for any violation; a second-tier penalty may be
> imposed if the violation "involved fraud, deceit, manipulation, or deliberate or
> reckless disregard of a regulatory requirement"; a third-tier penalty may be
> imposed when, in addition to meeting the requirements of the second tier, the
> "violation directly or indirectly resulted in substantial losses or created a
> significant risk of substantial losses to other persons,"

*SEC v. Razmilovic*, 738 F.3d 14, (2d Cir. 2013). *See also SEC v. Palmisano*, 135 F.3d 860, 866

(2d Cir. 1998) (citation omitted). Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d)(2), and

Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), further state that the amount of the penalty shall be determined by a court "in light of the facts and circumstances." Factors that courts consider in determining whether penalties should be imposed, and the amount of the penalty, include (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's *scienter*; (3) whether the defendant's conduct created substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *See Forest Res. Mgmt. Corp.*, 2010 WL 2077202, at \*2; *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007). *See also SEC v. Tavella*, 77 F. Supp. 2d 353, 362 (S.D.N.Y. 2015); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007); *see also SEC v. Malik*, 2016 WL 670032, \*2 (S.D.N.Y. Feb. 9, 2016).

Here, because Thompson's violations involved fraud, deceit and manipulation, and resulted in substantial losses, third tier penalties would be appropriate. *SEC v. Opulentica* LLC, 479 F. Supp. 2d 319 at 331-32 (finding defendant's "principal" role in fraudulent scheme that deprived investors of $443,000 and diversion of $185,000 for personal use "alone" justified a third-tier penalty); *see also Forest Res. Mgmt. Corp.*, 2010 WL 2077202 at \*2 (fraudulent scheme conducted over six months in publicly traded stock that resulted in hundreds of thousands of dollars in ill-gotten gains justified third-tier penalties). Moreover, courts frequently assess more severe penalties the more central the defendant's role in the overall scheme. *See Opulentica*, 479 F. Supp. 2d at 331-32 (finding defendant's "principal" role in fraudulent scheme that deprived investors of $443,000, and diversion of $185,000 for personal use "alone" justified a third-tier penalty). Here, Thompson's newsletters were central to the scheme.

18

As the sentencing court noted, "this crime involves knowledge of a scheme to defraud." (Pizzani Decl. Ex. E at 11:2 – 12:1) (*see also id.* at 24:2-6) (describing the plea agreement as "incredibly generous given the crimes that took place, which had tremendous financial consequences for many people and, as I said, were motivated by greed and a lack of consideration for what would happen to the person on the other side.") As Thompson himself conceded at the sentencing hearing, "I've caused harm to people who invested in the companies that I brought them . . . I've seen the pain that I've caused so many people." *Id.* at 22:12-19; SMF ¶ 13.

The Court may also impose civil penalties for each violation of the federal securities laws. *See* 15 U.S.C. § 78u(d)(3). Consequently, the Court could assess the highest third-tier penalty on a per violation basis, or $150,000 per violation. Should the Court determine to use the per-violation method rather than the method premised on pecuniary gain, the per tier amount is not an overall limitation, but a maximum amount for "each such violation." Numerous courts have held that a per-violation calculation may be based on each violative act, measured either by the number of violative transactions, or the number of investors. *SEC v. Coates*, 137 F. Supp. 2d 413, 427 (S.D.N.Y. 2001) (assessing a $10,000 penalty for each of four separate, misleading statements to an investor in violation of the Exchange Act); *Malik*, 2016 WL 670032 at *3 (imposing a maximum third tier penalty multiplied by the number of investors whose investments with defendant were misappropriated by him); *SEC v. GTF Enterprises*, 2015 WL 728159 at *4 (S.D.N.Y. Feb. 19, 2015) (courts can determine the number of violations in several ways, including looking at the number of investors defrauded, or the number of violative transactions); *SEC v. Pattison*, 2011 WL 723600, *5 (N.D. Cal. 2011) ("Court may assess a penalty for each distinct violation, *e.g.*, each time Defendant falsified a record"); *SEC v. Kenton*

19

*Capital*, Ltd. 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998) (defendant could be assessed a third tier

penalty for each investor); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1365 (S.D. Fla. 2010) (court

ordered third-tier penalties of $100,000 for each fraudulent SEC filing).[13]

Here, as set out in greater detail in the accompanying Pizzani Declaration, there were at

least 54 misleading email newsletters and promotions: five for Blast, ten for Smart Holdings,

thirty-two for Blue Gem, five for Lyric, and two for Mass Hysteria. SMF ¶¶ 29, 32, 35, 38, 41;

see also Pizzani Decl. ¶¶ 14-19 and Exhibits H to L.

Finally, as another alternative, courts sometimes impose a penalty for each statutory

violation. *See SEC v. Jean-Pierre*, 2015 WL 1054905, at *12 (S.D.N.Y. Mar. 9, 2015)

(collecting cases). Under this analysis, the court would calculate a civil penalty based on each

violation of the Exchange Act and the Securities Act for each issuer.

The Commission respectfully requests that the Court impose an appropriate maximum

civil penalty against Thompson for his egregious violations of the federal securities laws.

---

[13]     *See also SEC v. Colonial Inv. Mgmt. LLC*, 381 F. App'x 27, 32 (2d Cir. 2010) (affirming penalty of $25,000 for each of the defendant's eighteen violative transactions); *SEC v. Lazare Indus., Inc.*, 294 F. App'x 711, 715 (3d Cir. 2008) (statute permits penalty equal to the maximum amount multiplied by the 54 illegal sales of stock); *cf. Otis & Co. v. SEC*, 106 F.2d 579, 584 (6th Cir. 1939) (each sale of stock constitutes separate violation of act).

## CONCLUSION

As set forth above, Thompson's convictions warrant the entry of summary judgment in favor of the SEC on the violations set forth above. It is respectfully submitted that the Court should grant the SEC's application, and order that Thompson pay disgorgement plus prejudgment interest. Finally, a civil penalty should be imposed.

Dated: New York, New York
February 15, 2019

SECURITIES AND EXCHANGE COMMISSION

By: _____
Howard A. Fischer, Senior Trial Counsel
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0589 (Fischer)
Email: FischerH@SEC.gov

Of Counsel:
Thomas P. Smith Jr. (SmithTh@sec.gov)
Peter A. Pizzani Jr. (PizzaniP@sec.gov)