# Exhibit 1 con't

# EXHIBIT 16

NITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 12-21656-CIV-LEONARD**

**SECURITIES AND EXCHANGE COMMISSION,**

                    **Plaintiff,**

**v.**

**RECYCLE TECH, INC.,
RYAN GONZALEZ,
OTC SOLUTIONS LLC, ANTHONY
THOMPSON, PUDONG LLC, and
JAY FUNG,**

                    **Defendants,**

_____/

## DEFENDANT OTC SOLUTIONS, LLC'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rules 33 of the Federal Rules of Civil Procedure, Defendants OTC Solutions LLC ("OTC"), by and through their undersigned counsel, hereby answers Plaintiff 's Second Set of Interrogatories to Defendant OTC Solutions as follows:

## GENERAL OBJECTIONS

1.      Each response is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any document or information in court. All such objections and grounds for objection involving or relating to the matters raised herein are reserved and may be introduced at the time of trial or other hearing.

2.      OTC objects to each Interrogatory to the extent the requests seek information

protected by the attorney/client privilege or the work product doctrine.

3.      OTC objects to each Interrogatory insofar as the requests seek information

equally available to Plaintiff.

4.      OTC objects to Plaintiff's service of each Interrogatory on the basis that OTC

lacks the capacity to be sued under Rule 17(b) of the Federal Rules of Civil Procedure because

OTC ceased to exist as a Maryland limited liability company, and its affairs were entirely wound

up, prior to commencement of this action by Plaintiff.

5.      OTC objects to each Interrogatory because the requests are not tailored to secure

the just, speedy and inexpensive determination of this action, given the documents already

produced in this action and/or provided to Plaintiff.

6.      OTC objects to each Interrogatory insofar as the information sought can be

obtained from another source that is more convenient, less burdensome, or less expensive.

7.      Thompson further objects to each and every Interrogatory that seeks information

regarding other newsletters or issues that do not involve Recycle Tech as being overbroad

because they seek information that is not relevant to any claim or defense in this action and not

reasonably calculated to lead to the discovery of admissible evidence.

8.      OTC qualifies each and every response herein by noting that its investigation of

the facts relating to this action and discovery is ongoing.  Because OTC's future discovery and

investigation may disclose the existence of additional responsive information, OTC's responses

are without prejudice to its right to utilize, produce, or introduce, at trial or any other proceeding,

information or documentation which is inadvertently omitted, not yet known, or not yet

2

ascertained, discovered, identified, or located by OTC while responding to these Discovery Requests. OTC reserves the right to amend or supplement its responses by virtue of obtaining additional information or otherwise as permitted by the Federal Rules of Civil Procedure.

      9.    The objections above apply to each of the responses below, and the responses set forth are not to be deemed a waiver, either in whole or in part, of any of those objections. Notwithstanding the above objections, and without in any way waiving or limiting those objections, Plaintiff will attempt in good faith to provide responses to the requests based on information known and reasonably available to Plaintiff.

## OBJECTIONS TO INSTRUCTIONS

OTC objects to Plaintiff's Definitions to the extent that they seek to impose a greater or different obligation on OTC in responding to this discovery than imposed or authorized by the Federal Rules of Civil Procedure. OTC will respond to the requests in accordance with said rules, notwithstanding any Instruction that purports to expand, or is contrary to, those rules.

## OBJECTIONS TO DEFINITIONS

      1.    OTC objects to Plaintiff's Definitions to the extent that they seek to impose a greater obligation on OTC in responding to this discovery than imposed or authorized by the Federal Rules of Civil Procedure. OTC will respond to the requests in accordance with said rules, notwithstanding any Instruction that purports to expand, or is contrary to, those rules.

      2.    OTC objects to Plaintiff's Definitions to the extent that they purport to require OTC to produce information and documents in responding to Defendant's requests other than the information and documents that are within OTC's possession, custody or control.

{00455824-1 }

3.      OTC objects to Plaintiff's Definitions to the extent they conflate OTC solutions and Defendant Thompson under the single definition of "You", which improperly attempts to ignore the significant legal distinction between OTC and Thompson and introduces unnecessary and prejudicial ambiguity into the record.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1.  Identify your affirmative defenses to the Amended Complaint and the factual basis supporting each defense.

**ANSWER:**    OTC objects to this request to the extent it seeks the disclosure of attorney work-product and/or requests OTC to provide legal conclusions.  In addition, although OTC provides a "factual basis" for the affirmative defenses below, subject to the objections stated herein, OTC's responses are limited to providing notice of the factual basis for the defenses and do not purport to identify each and every fact that may support the defense.  For Affirmative Defenses, please see the Affirmative Defenses identified in Thompson and OTC's joint Answer to the First Amended Complaint.

**First Affirmative Defense** – the first affirmative defense is a legal defense that relies on the insufficuncies in the allegations of the First Amended Complaint rather than on any facts. It is anticipated that this affirmative defense will be stricken pursuant to Plaintiff's motion to strike.

**Second Affirmative Defense** – The second affirmative defense is predicated upon the advice of counsel sought and received by Thompson in issuing his newsletters and his reliance entirely on the public filings and press releases issued by Recycle Tech. According to the deposition testimony of Thompson, Marlow and Gracin, Thompson sought out their legal advice

4

on his business and specifically requested advice about his disclaimers, including on the day before and the day of OTC's Recycle Tech Newsletters.

**Third Affirmative Defense** – The third affirmative defense is a legal defense and does not require a factual basis beyond the factual allegations in the First Amended Complaint.

**Fourth Affirmative Defense** – The fourth affirmative defense has a similar factual basis to the second affirmative defense. In addition, the disclaimers contained in the newsletters, as well as on the websites to which the newsletters linked fully disclosed the extent of compensation in such a way that, as the Court observed in its ruling on the motion to dismiss, no one could be misled about the fact that OTC Solutions' opinions expressed in the newsletters were bought and paid for.

**Fifth Affirmative Defense** – The fifth affirmative defense is largely determined as a matter of law.  The factual basis for this defense includes, but is not limited to, the fact that the Court's rulings on the Motion to Dismiss, particularly with respect to its Rulings on Section 17(b), limits and/or undermines SEC's claims for violation of Section 17(a) and 10b-5 for purported misreprsentations and/or omissions in the compensation and/or bias disclosures in the newsletters at issue.  In addition, the SEC has pled and repeatedly asserted its Section 17(a) and 10b-5 claims are limited to purported misreprsentations and omissions in the newsletters issued by OTC.

**Sixth Affirmative Defense** – The sixth affirmative defense is largaely determined as a matter of law.  The factual basis for this defense includes, but is not limited to, the sixth affirmative defense is based on the enforcement action undertaken by the SEC's New York Field

5

Office and the criminal referral and investigation being orchestrated by that office, which, when combined with the present case, deprive Thompson of due process of law..

**Seventh Affirmative Defense** – The factual basis for this affirmative defense is the same as for the second affirmative defense.

**Eighth Affirmative Defense** – The factual basis for this claim is that Thompson does not have any knowledge of who ran websites beyond his own nor did he have the ability to control their content.

INTERROGATORY NO. 2.  For the period of January 1, 2009 – December 31, 2010 identify the issuers you promoted through email newsletters and the time period for each marketing campaign.

**ANSWER:**    OTC objects to the question insofar as the term "promoted" is ambiguous and does not accurately describe OTC's conduct with regard to any issuers. OTC further objects to this interrogatory as overbroad as it seeks information that is not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving and subject to these objections, OTC responds that  to the extent the question is understood merely to mean which companies were featured in newsletters issued by OTC Solutions and for what periods, the answer is the following:

| | |
|---|---|
| Blue Gem Enterprises (BGEM) | 12/13-20/09<br>1/1/10<br>2/1-2/10 |
| Recycle Tech Inc. (RCYT) | 2/22-24/10 |
| Dynamic Response Group Inc. (DRGZ) | 7/13/09-11/17/09 |
| Medical Connections Holdings (MCTH) | 8/23/09-9/30/09 |
| Mass Hysteria Entertainment (MHYS) | 8/24/09-9/30/09 |
| Wind Works Power (WWPW) | 11/23-26/09 |
| Red Branch Technologies (RBTI) | 11/29/09-12/1/09 |
| Lyric Jeans Inc. (LYJN) | 3/19-23/10 |

6

| Fresh Harvest Products Inc. (FRHV) | 4/12-13/10 |
|---|---|

INTERROGATORY NO. 3.  For each of the issuers identified in your answer to number 2 above, identify the marketing campaigns that you completed in conjunction with Pudong, LLC and/or Jay Fung.

**ANSWER:**    Thompson objects to this interrogatory because the phrase "in conjunction with" is ambiguous. The issuers on which OTC issued newsletters on which Thompson understands that Pudong, LLC also issued newsletters includes: BGEM, RCYT, DRGZ, MCTH, MHYS, WWPW, LYJN, FRHV.

INTERROGATORY NO. 4.  For each of the issuers identified in your answer to number 2 above, identify the marketing campaigns that you completed in which Kevin Sepe was involved in any manner and identify how he was involved.

**ANSWER:**    Kevin Sepe was not "involved" in any of the internal affairs of OTC Solutions and therefore was not "involved" in any aspect of any OTC Solutions marketing campaign. Notwithstanding the foregoing, Sepe did play a role in retaining OTC solutions to feature BGEM, RCYT, DRGZ, MHYS, and  LYJN in newsletters. For each of these marketing campaigns Sepe had a similar role. Sepe was a middle man who brought issuers or third parties wishing have the issuer featured in a newsletter to OTC. Sepe negotiated and coordinated payment according to the terms agreed upon by OTC and the hiring party. Sepe also consulted with OTC on the approximate dates the newsletters would be issued, including the beginning date and the duration of the newsletter campaigns for each issuer. Finally, at times Sepe would offer suggestions or consult with OTC on information and sources of information that would be appropriate to incorporate into newsletters, including providing to OTC or directing OTC's

7

attention to publicly available information such as press releases and SEC filings for the issuers
that OTC was hired to feature.

Respectfully Submitted,

Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, Utah 84111
Tel: (801) 322-2516
Fax: (801) 521-6280

By:   /s/Brent R. Baker
      BRENT R. BAKER
      D. LOREN WASHBURN
      Admitted Pro Hac Vice
      Attorneys for Defendants Anthony Thompson and
      OTC Solutions
      brb@clydesnow.com
      dlw@clydesnow.com

      and

      The Law Offices of Jeffrey A. Neiman
      100 Southeast Third Avenue, Suite 2612
      Fort Lauderdale, FL 33394
      Tel: (954)-462-1200
      Fax: (954)-688-2492

By:   /s/ Jeffrey A. Neiman
      JEFFREY A. NEIMAN
      Florida Bar Number 544469
      jeff@jneimanlaw.com

8

I swear or affirm that the foregoing Answers to Plaintiff's Second Set of Interrogatories to Defendant OTC Solutions LLC are true and correct to the best of my knowledge.

OTC Solutions, LLC,
a dissolved Maryland limited liability company

Date: ___11/21/13___

By: _____
Anthony Thompson
Its:  Signed only pursuant to the Court's order and
without representing to any party that
Thompson has authority, express or implied, to
bind the Company; pursuant to Maryland Code
§ 4A-905 with no designation as liquidating
member.

STATE OF  Maryland    )
                                          : ss.
COUNTY OF  Montgomery    )

Before me, the undersigned authority, personally appeared __Anthony Thompson__,

who is personally known to me or produced a __MD DL__ bearing his name and

photograph as identification, and who, upon being duly sworn, deposed and stated that the

Answers to the foregoing Interrogatories are true and correct, to the best of his knowledge.

Date: __11/21/13__

_____
NOTARY PUBLIC

JOHN D HOFFMAN
Notary Public
Montgomery County
Maryland
My Commission Expires Mar 23. 2017

9

{00455824-1 }

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the _____ day of November, 2013, I filed the foregoing **DEFENDANT OTC SOLUTIONS, LLC'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES** with the Clerk of the Court and notification of such filing was sent to the following:

Christine Nestor
Securities and Exchange Commission
801 Brickell Ave., Suite 1800
Miami, FL  33131
nestorc@sec.gov
alonkai@sec.gov

James D. Sallah
Jeffrey L. Cox
Joshua A. Katz
Sallah Astarita & Cox, LLC
One Boca Place
2255 Glades Road, Suite No. 300E
Boca Raton, FL  33431
jds@sallahlaw.com
jlc@sallahlaw.com
jak@sallahlaw.com

Ryan Gonzalez
8240 NE 8th Place
Miami, FL  33138
seekrets@hotmail.com


/s/Brent R. Baker_____

{00455824-1 }

# EXHIBIT 17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-21656-CIV-LEONARD**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**RECYCLE TECH, INC.,**
**RYAN GONZALEZ,**
**OTC SOLUTIONS LLC, ANTHONY**
**THOMPSON, PUDONG LLC, and**
**JAY FUNG,**

**Defendants,**

_____/

## DEFENDANT ANTHONY THOMPSON'S ANSWERS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rules 33 of the Federal Rules of Civil Procedure, Defendant Anthony Thompson ("Thompson"), by and through his undersigned counsel, hereby answers Plaintiff 's Second Set of Interrogatories to Defendant Anthony Thompson as follows:

## <u>GENERAL OBJECTIONS</u>

1.      Each response is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any document or information in court. All such objections and grounds for objection involving or relating to the matters raised herein are reserved and may be introduced at the time of trial or other hearing.

2.      Thompson objects to each Interrogatory to the extent the requests seek information protected by the attorney/client privilege or the work product doctrine.

3.      Thompson objects to each Interrogatory insofar as the requests seek information equally available to Plaintiff.

4.      Thompson objects to each Interrogatory because the requests are not tailored to secure the just, speedy and inexpensive determination of this action, given the documents already produced in this action and/or provided to Plaintiff.

5.      Thompson objects to each Interrogatory insofar as the information sought can be obtained from another source that is more convenient, less burdensome, or less expensive.

6.      Thompson further objects to each and every Interrogatory that seeks information regarding other newsletters or issues that do not involve Recycle Tech as being overbroad because they seek information that is not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Thompson qualifies each and every response herein by noting that its investigation of the facts relating to this action and discovery is ongoing.  Because Thompson's future discovery and investigation may disclose the existence of additional responsive information, Thompson's responses are without prejudice to its right to utilize, produce, or introduce, at trial or any other proceeding, information or documentation which is inadvertently omitted, not yet known, or not yet ascertained, discovered, identified, or located by Thompson while responding to these Discovery Requests.  Thompson reserves the right to amend or supplement its responses by virtue of obtaining additional information or otherwise as permitted by the Federal Rules of Civil Procedure.

2

8. The objections above apply to each of the responses below, and the responses set forth are not to be deemed a waiver, either in whole or in part, of any of those objections. Notwithstanding the above objections, and without in any way waiving or limiting those objections, Plaintiff will attempt in good faith to provide responses to the requests based on information known and reasonably available to Plaintiff.

## OBJECTIONS TO INSTRUCTIONS

Thompson objects to Plaintiff's Definitions to the extent that they seek to impose a greater or different obligation on Thompson in responding to this discovery than imposed or authorized by the Federal Rules of Civil Procedure. Thompson will respond to the requests in accordance with said rules, notwithstanding any Instruction that purports to expand, or is contrary to, those rules.

## OBJECTIONS TO DEFINITIONS

1. Thompson objects to Plaintiff's Definitions to the extent that they seek to impose a greater obligation on Thompson in responding to this discovery than imposed or authorized by the Federal Rules of Civil Procedure. Thompson will respond to the requests in accordance with said rules, notwithstanding any Instruction that purports to expand, or is contrary to, those rules.

2. Thompson objects to Plaintiff's Definitions to the extent that they purport to require Thompson to produce information and documents in responding to Defendant's requests other than the information and documents that are within Thompson's possession, custody or control.

## RESPONSES TO INTERROGATORIES

3

**INTERROGATORY NO. 1.**        Identify your affirmative defenses to the Amended Complaint and the factual basis supporting each defense.

**ANSWER:**    Thompson objects to this request to the extent it seeks the disclosure of attorney work-product and/or requests Thompson to provide legal conclusions.  In addition, although Thompson provides a "factual basis" for the affirmative defenses below, subject to the objections stated herein, Thompson's responses are limited to providing notice of the factual basis for the defenses and do not purport to identify each and every fact that may support the defense.  For Affirmative Defenses, please see the Affirmative Defenses identified in Thompson and OTC's joint Answer to the First Amended Complaint.

**First Affirmative Defense** – the first affirmative defense is a legal defense that relies on the insufficuncies in the allegations of the First Amended Complaint rather than on any facts.

**Second Affirmative Defense** – The second affirmative defense is predicated upon the advice of counsel sought and received by Thompson in issuing his newsletters and his reliance entirely on the public filings and press releases issued by Recycle Tech. According to the deposition testimony of Thompson, Marlow and Gracin, Thompson sought out their legal advice on his business and specifically requested advice about his disclaimers, including on the day before and the day of OTC's Recycle Tech Newsletters.

**Third Affirmative Defense** – The third affirmative defense is a legal defense and does not require a factual basis beyond the factual allegations in the First Amended Complaint.

**Fourth Affirmative Defense** – The fourth affirmative defense has a similar factual basis as the second affirmative defense. In addition, the disclaimers contained in the newsletters, as well as on the websites to which the newsletters linked, fully disclosed the extent of

4

compensation in such a way that, as the Court observed in its ruling on the motion to dismiss, no one could be misled about the fact that OTC Solutions' opinions expressed in the newsletters were bought and paid for.

**Fifth Affirmative Defense** – The fifth affirmative defense is largely determined as a matter of law. The factual basis for this defense includes, but is not limited to, the fact that the Court's rulings on the Motion to Dismiss, particularly with respect to its Rulings on Section 17(b), limits and/or undermines SEC's claims for violation of Section 17(a) and 10b-5 for purported misreprsentations and/or omissions in the compensation and/or bias disclosures in the newsletters at issue. In addition, the SEC has pled and repeatedly asserted its Section 17(a) and 10b-5 claims are limited to purported misreprsentations and omissions in the newsletters issued by OTC.

**Sixth Affirmative Defense** – The sixth affirmative defense is largaely determined as a matter of law. The factual basis for this defense includes, but is not limited to, the enforcement action undertaken by the SEC's New York Field Office and the criminal referral and investigation being orchestrated by that office, which, when combined with the present case, deprive Thompson of due process of law..

**Seventh Affirmative Defense** – The factual basis for this affirmative defense is the same as for the second affirmative defense.

**Eighth Affirmative Defense** – The factual basis for this claim is that Thompson does not have any knowledge of who ran websites beyond his own nor did he have the ability to control their content.

5

**INTERROGATORY NO. 2.**       For the period of January 1, 2009 – December 31, 2010 identify the issuers you promoted through email newsletters and the time period for each marketing campaign.

**ANSWER:**    Thompson objects to the question insofar as the term "promoted" is ambiguous and does not accurately describe Thompson's or OTC's conduct with regard to any issuers. Thompson further objects to this interrogatory as overbroad as it seeks information that is not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving and subject to these objections, Thompson responds that je did not promote (however that term might be interpreted) any issuers through newsletters; all newsletters were issued by OTC and not by Thompson individually. To the extent Plaintiffs interrogatory attempts to conflate Thompson and OTC by grouping them under the definition of the term "You" this is an improper attempt to create ambiguity, cloud the record, and hold Thompson liable for conduct other than his own.

**INTERROGATORY NO. 3.**       For each of the issuers identified in your answer to number 2 above, identify the marketing campaigns that you completed in conjunction with Pudong, LLC and/or Jay Fung.

**ANSWER:**    Thompson objects to this interrogatory because the phrase "in conjunction with" is ambiguous. Thompson further objects to this interrogatory as overbroad as it seeks information that is not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving and subject to these and all general objections, Thompson observes that this Interrogatory only requests a response for "any issuers identified in your answer to number 2." As set forth in Thompson's Response to

6

Interrogatory No. 2, he did not personally complete any marketing campaigns nor issue any newsletters, and thus identified no issuers.  Thompson therefore has no further response to this Interrogatory.

**INTERROGATORY NO. 4.**     For each of the issuers identified in your answer to number 2 above, identify the marketing campaigns that you completed in which Kevin Sepe was involved in any manner and identify how he was involved.

**ANSWER:**    Thompson objects to this interrogatory as overbroad as it seeks information that is not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving and subject to these and all general objections, Thompson observes that this Interrogatory only requests a response for "any issuers identified in your answer to number 2." As set forth in Thompson's Response to Interrogatory No. 2, he did not personally complete any marketing campaigns nor issue any newsletters, and thus identified no issuers.  Thompson therefore has no further response to this Interrogatory..

Respectfully Submitted,

Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, Utah 84111
Tel:  (801) 322-2516
Fax:  (801) 521-6280

By:    /s/Brent R. Baker_____
        BRENT R. BAKER
        D. LOREN WASHBURN
        Admitted Pro Hac Vice

7

Attorneys for Defendants Anthony Thompson and
OTC Solutions
brb@clydesnow.com
dlw@clydesnow.com

and

The Law Offices of Jeffrey A. Neiman
100 Southeast Third Avenue, Suite 2612
Fort Lauderdale, FL 33394
Tel: (954)-462-1200
Fax: (954)-688-2492

By:     /s/ Jeffrey A. Neiman
        JEFFREY A. NEIMAN
        Florida Bar Number 544469
        jeff@jneimanlaw.com

8

I swear or affirm that the foregoing Answers to Plaintiff's Second Set of Interrogatories to Defendant Anthony Thompson are true and correct to the best of my knowledge.

Anthony Thompson,

Date: ___11/21/13___    By: _____

STATE OF Maryland )
                          : ss.
COUNTY OF Montgomery )

Before me, the undersigned authority, personally appeared Anthony Thompson, who is personally known to me or produced a MD DL bearing his name and photograph as identification, and who, upon being duly sworn, deposed and stated that the Answers to the foregoing Interrogatories are true and correct, to the best of his knowledge.

Date: 11/21/13    _____
                                   NOTARY PUBLIC

JOHN D HOFFMAN
Notary Public
Montgomery County
Maryland
My Commission Expires Mar. 23, 2017

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____ day of November, 2013, I filed the foregoing **DEFENDANT ANTHONY THOMPSON'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES** with the Clerk of the Court and notification of such filing was sent to the following:

Christine Nestor
Securities and Exchange Commission
801 Brickell Ave., Suite 1800
Miami, FL 33131
nestorc@sec.gov
alonkai@sec.gov

James D. Sallah
Jeffrey L. Cox
Joshua A. Katz
Sallah Astarita & Cox, LLC
One Boca Place
2255 Glades Road, Suite No. 300E
Boca Raton, FL 33431
jds@sallahlaw.com
jlc@sallahlaw.com
jak@sallahlaw.com

Ryan Gonzalez
8240 NE 8th Place
Miami, FL 33138
seekrets@hotmail.com


/s/Brent R. Baker

10

# EXHIBIT 18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-21656-CIV-LEONARD**

**SECURITIES AND EXCHANGE COMMISSION,**

                **Plaintiff,**

**v.**

**RECYCLE TECH, INC.,**
**RYAN GONZALEZ,**
**OTC SOLUTIONS LLC, ANTHONY**
**THOMPSON, PUDONG LLC, and**
**JAY FUNG,**

                **Defendants,**

_____/

## DEFENDANT OTC SOLUTIONS, LLC'S RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant OTC Solutions LLC (OTC) responds Plaintiff's Request for Production of Documents as follows:

### GENERAL OBJECTIONS

1.      Each response is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any document or information in court. All such objections and grounds for objection involving or relating to the matters raised herein are reserved and may be introduced at the time of trial or other hearing.

2.      OTC objects to each Request for Production to the extent the requests seek information protected by the attorney/client privilege or the work product doctrine.

{00441377-1 }

3.     OTC objects to each Request for Production insofar as the requests seek information equally available to Plaintiff.

4.     OTC objects to each Request for Production because the requests are not tailored to secure the just, speedy and inexpensive determination of this action, given the documents already produced in this action and/or provided to Plaintiff pursuant to SEC administrative subpoenas.

5.     OTC objects to each Request for Production because OTC lacks the capacity to be sued under Rule 17(b) of the Federal Rules of Civil Procedure.  Specifically, OTC no longer exists as a corporate entity, has no custodian of records, and therefore does not have the capacity to possess records. OTC Solutions, LLC, a now terminated Maryland LLC, filed Articles of Cancellation on March 11, 2011. In the articles of cancellation, Anthony Thompson was designated to wind up the affairs of the company and to serve as the resident agent for the company for the period of one year. OTC distributed all assets and wound up operations before the present lawsuit was filed. Under Maryland law, OTC no longer exists as a legal entity, nor did it at the time this lawsuit was filed. Although Thompson was designated as the individual responsible for winding up the company, upon completion of wind-up activities the company ceased to exist and no longer has any agents. OTC also no longer has any repository of records. To the extent records that were previously the corporate records of OTC exist at the present time, they ceased to be corporate records at the time of OTC's dissolution and now exist only as individual records of the person who possesses them. OTC understands that Anthony Thompson has previously produced records in this matter  that may have been, at one time, the business records of OTC. To the extent the Court in this matter finds that OTC, contrary to the law of

2

Maryland where it was organized, continues to have the capacity to maintain corporate records, OTC would adopt the production of Thompson as its own. However, absent such a ruling, OTC has no corporate records and therefore produces none.

6.     OTC objects to Plaintiff's discovery requests to the extent that they seek information that is unreasonably cumulative, duplicative or obtainable from some other source that is more convenient, less burdensome or less expensive, including Plaintiff's own records. .

7.     OTC objects to Plantiff's discovery requests to the extent that they seek confidential business or proprietary information with no evidentiary significance.

8.     OTC objects to Plaintiff's discovery requests to the extent they require OTC to characterize documents or their contents or to speculate as to what the documents may or may not show, as vague, ambiguous, or calling for a legal conclusion or speculation.

9.     OTC qualifies each and every response herein by noting that its investigation of the facts relating to this action and discovery is ongoing.  Because OTC's future discovery and investigation may disclose the existence of additional responsive information, OTC's responses are without prejudice to its right to utilize, produce, or introduce, at trial or any other proceeding, information or documentation which is inadvertently omitted, not yet known, or not yet ascertained, discovered, identified, or located by OTC while responding to these Discovery Requests.  OTC reserves the right to amend or supplement its responses by virtue of obtaining additional information or otherwise as permitted by the Federal Rules of Civil Procedure.

10.     The objections above apply to each of the responses below, and the responses set forth are not to be deemed a waiver, either in whole or in part, of any of those objections. Notwithstanding the above objections, and without in any way waiving or limiting those

{00441377-1 }

objections, Plaintiff will attempt in good faith to provide responses to the requests based on information known and reasonably available to Plaintiff.

## OBJECTIONS TO INSTRUCTIONS

OTC objects to Plaintiff's Instructions to the extent that they seek to impose a greater or different obligation on OTC in responding to this discovery than imposed or authorized by the Federal Rules of Civil Procedure. OTC will respond to the requests in accordance with said rules, notwithstanding any Instruction that purports to expand, or is contrary to, those rules.

## OBJECTIONS TO DEFINITIONS

To the extent OTC adopts any term or definition presented by Plaintiff, they are adopted solely for convenience in responding to these demands, and OTC does not accept any terms or definitions or concede that any of them are appropriate, descriptive or accurate.

OTC objects to Plaintiff's Definitions to the extent that they purport to require OTC to produce documents in responding to Plaintiff's requests other than the documents that are within OTC's possession, custody or control, as noted above OTC has no records in its possession, custody or control.

## DOCUMENTS REQUESTED

REQUEST NO. 1. Produce documents which support your affirmative defenses.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

4

REQUEST NO. 2.   For the period of January 1, 2009 - December 31, 2010 produce your brokerage records, including monthly account statements, where stock was held in exchange for marketing services you provided to issuers.

**RESPONSE:**  Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 3.   For the period of January 1, 2009 - December 31, 2010 produce your bank account records, including bank statements, where proceeds of stock you sold were deposited or held.

**RESPONSE:**  Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 4.   Produce e-mail newsletters you issued for the period of January 1, 2009 - December 31, 2010.

**RESPONSE:**  Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 5.   Produce e-mail newsletters you issued regarding Mass Hysteria.

5

{00441377-1 }

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 6.   Produce e-mail newsletters you issued regarding Blue Gem.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 7.   Produce e-mail newsletters you issued regarding Lyric Jeans.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 8.   Produce documents between you and Pudong LLC and/or Jay Fung regarding Mass Hysteria.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 9.   Produce documents between you and Pudong LLC and/or Jay Fung regarding Blue Gem.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 10.   Produce documents between you and Pudong LLC and/or Jay Fung regarding Lyric Jeans.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 11.   Produce documents between you and Kevin Sepe regarding Mass Hysteria, Blue Gem, and/or Lyric Jeans.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 12.   Produce e-mail newsletters that Pudong LLC and/or Jay Fung issued for the period of January 1, 2009 - December 31, 2010.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

{00441377-1 }

REQUEST NO. 13.   For the period of January 1, 2009 - December 31, 2010, produce documents related to any payment made in exchange for legal advice given regarding your newsletter disclaimer.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

REQUEST NO. 14.   Produce documents between you and Pudong LLC and/or Jay Fung regarding your newsletter disclaimer.

**RESPONSE:** Subject to and without wavier of its objections, OTC is dissolved and has no corporate records. To the extent a future contrary ruling of the Court would dictate that records in the possession of Anthony Thompson continue to be the corporate records of OTC Solutions, OTC Solutions will adopt the production made by Thompson as its own.

{00441377-1 }

Dated: November 15, 2013

Respectfully Submitted,

Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, Utah 84111
Tel:  (801) 322-2516
Fax:  (801) 521-6280

By:   /s/Brent R. Baker
        BRENT R. BAKER
        D. LOREN WASHBURN
        Admitted Pro Hac Vice
        Attorneys for Defendants Anthony Thompson and
        OTC Solutions
        brb@clydesnow.com
        dlw@clydesnow.com

        and

The Law Offices of Jeffrey A. Neiman
100 Southeast Third Avenue, Suite 2612
Fort Lauderdale, FL 33394
Tel: (954)-462-1200
Fax: (954)-688-2492

By:   /s/ Jeffrey A. Neiman
        JEFFREY A. NEIMAN
        Florida Bar Number 544469
        jeff@jneimanlaw.com

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15 day of November, 2013, I filed the foregoing **DEFENDANT OTC SOLUTIONS, LLC'S RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** with the Clerk of the Court and notification of such filing was sent to the following:

Christine Nestor
Securities and Exchange Commission
801 Brickell Ave., Suite 1800
Miami, FL 33131
nestorc@sec.gov
alonkai@sec.gov

James D. Sallah
Jeffrey L. Cox
Joshua A. Katz
Sallah Astarita & Cox, LLC
One Boca Place
2255 Glades Road, Suite No. 300E
Boca Raton, FL 33431
jds@sallahlaw.com
jlc@sallahlaw.com
jak@sallahlaw.com

Ryan Gonzalez
8240 NE 8th Place
Miami, FL 33138
seekrets@hotmail.com


/s/Brent R. Baker_____

{00441377-1 }

# EXHIBIT 19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-21656-CIV-LEONARD**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**RECYCLE TECH, INC.,**
**RYAN GONZALEZ,**
**OTC SOLUTIONS LLC, ANTHONY**
**THOMPSON, PUDONG LLC, and**
**JAY FUNG,**

**Defendants,**

_____/

**DEFENDANT ANTHONY THOMPSON'S RESPONSES TO**
**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant Anthony Thompsonresponds Plaintiff's Request for Production of Documents as follows:

**GENERAL OBJECTIONS**

1.      Each response is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any document or information in court.  All such objections and grounds for objection involving or relating to the matters raised herein are reserved and may be introduced at the time of trial or other hearing.

2.      Thompson objects to each Request for Production to the extent the requests seek information protected by the attorney/client privilege or the work product doctrine.

{00455940-1 }

3.      Thompson objects to each Request for Production insofar as the requests seek information equally available to Plaintiff.

4.      Thompson objects to each Request for Production because the requests are not tailored to secure the just, speedy and inexpensive determination of this action, given the documents already produced in this action and/or provided to Plaintiff pursuant to SEC administrative subpoenas.

5.      Thompson objects to Plaintiff's discovery requests to the extent that they seek information that is unreasonably cumulative, duplicative or obtainable from some other source that is more convenient, less burdensome or less expensive, including Plaintiff's own records. .

6.      Thompson objects to Plantiff's discovery requests to the extent that they seek confidential business or proprietary information with no evidentiary significance.

7.      Thompson objects to Plaintiff's discovery requests to the extent they require Thompson to characterize documents or their contents or to speculate as to what the documents may or may not show, as vague, ambiguous, or calling for a legal conclusion or speculation.

8.      Thompson qualifies each and every response herein by noting that its investigation of the facts relating to this action and discovery is ongoing.  Because Thompson's future discovery and investigation may disclose the existence of additional responsive information, Thompson's responses are without prejudice to its right to utilize, produce, or introduce, at trial or any other proceeding, information or documentation which is inadvertently omitted, not yet known, or not yet ascertained, discovered, identified, or located by Thompson while responding to these Discovery Requests.  Thompson reserves the right to amend or

{00455940-1 }

supplement its responses by virtue of obtaining additional information or otherwise as permitted by the Federal Rules of Civil Procedure.

9. The objections above apply to each of the responses below, and the responses set forth are not to be deemed a waiver, either in whole or in part, of any of those objections. Notwithstanding the above objections, and without in any way waiving or limiting those objections, Plaintiff will attempt in good faith to provide responses to the requests based on information known and reasonably available to Plaintiff.

## OBJECTIONS TO INSTRUCTIONS

Thompson objects to Plaintiff's Instructions to the extent that they seek to impose a greater or different obligation on Thompson in responding to this discovery than imposed or authorized by the Federal Rules of Civil Procedure. Thompson will respond to the requests in accordance with said rules, notwithstanding any Instruction that purports to expand, or is contrary to, those rules.

## OBJECTIONS TO DEFINITIONS

To the extent Thompson adopts any term or definition presented by Plaintiff, they are adopted solely for convenience in responding to these demands, and Thompson does not accept any terms or definitions or concede that any of them are appropriate, descriptive or accurate.

Thompson objects to Plaintiff's Definitions to the extent that they purport to require Thompson to produce documents in responding to Plaintiff's requests other than the documents that are within Thompson's possession, custody or control, as noted above Thompson has no records in its possession, custody or control.

## <u>DOCUMENTS REQUESTED</u>

3

REQUEST NO. 1.   Produce documents which support your affirmative defenses.

**RESPONSE:**  Documents responsive to this request for production were produced pursuant to the SEC's first Request for Production of Documents. Furthermore, documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore is in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff.

REQUEST NO. 2.   For the period of January 1, 2009 - December 31, 2010 produce your brokerage records, including monthly account statements, where stock was held in exchange for marketing services you provided to issuers..

**RESPONSE:**  Documents responsive to this request for production were produced pursuant to the SEC's first Request for Production of Documents. Furthermore, these documents have previously been produced as part of this litigation by third parties. Furthermore, documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 3.   For the period of January 1, 2009 - December 31, 2010 produce OTC Solutions LLC's brokerage records, including monthly account statements, where stock was held in exchange for marketing services you and/or OTC Solutions LLC provided to issuers.

4

**RESPONSE:** Documents responsive to this request for production were produced pursuant to the SEC's first Request for Production of Documents. Furthermore, these documents have previously been produced as part of this litigation by third parties. Furthermore, documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 4.   For the period of January 1, 2009 - December 31, 2010 produce your bank account records, including bank statements, where proceeds of stock you sold were deposited or held.

**RESPONSE:** Documents responsive to this request have previously been produced as part of this litigation by third parties. Furthermore, documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 5.   For the period of January 1, 2009 - December 31, 2010 produce OTC Solutions LLC's bank account records, including bank statements, where proceeds of stock you sold were deposited or held.

{00455940-1 }

**RESPONSE:** Documents responsive to this request have previously been produced as part of this litigation by third parties. Furthermore, documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 6.   Produce e-mail newsletters you and/or OTC Solutions LLC issued for the period of January 1, 2009 – December 31, 2010.

**RESPONSE:** Documents responsive to this request for production were produced pursuant to the SEC's first Request for Production of Documents. Furthermore, documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 7.   Produce e-mail newsletters you and/or OTC Solutions LLC issued regarding Mass Hysteria.

**RESPONSE:** Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

6

REQUEST NO. 8. Produce e-mail newsletters you and/or OTC Solutions LLC issued regarding Blue Gem.

**RESPONSE:** Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 9. Produce e-mail newsletters you and/or OTC Solutions LLC issued regarding Lyric Jeans.

**RESPONSE:** Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 10. Produce documents between you and Pudong LLC and/or Jay Fung regarding Mass Hysteria.

**RESPONSE:** Documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 11. Produce documents between you and Pudong LLC and/or Jay Fung regarding Blue Gem.

**RESPONSE:** Documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the

7

responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 12.   Produce documents between you and Pudong LLC and/or Jay Fung regarding Lyric Jeans.

**RESPONSE:**  Documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 13.   Produce documents between you and Kevin Sepe regarding Mass Hysteria, Blue Gem, and/or Lyric Jeans.

**RESPONSE:**  Documents responsive to this request have previously been provided to the SEC pursuant to administrative subpoenas in this and other matters and therefore the responsive documents are in the possession of the SEC. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 14.   Produce e-mail newsletters that Pudong LLC and/or Jay Fung issued for the period of January 1, 2009 - December 31, 2010.

8

**RESPONSE:** Thompson objects to this request because documents responsive to it have have been subpoenaed from and are more readily available from another party in this matter. Furthermore, because the documents requested have either previously been produced, are being produced pursuant to other requests, or are outside the scope of any allegation in the complaint, this request is not reasonably calculated to lead to the discovery of relevant evidence. Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 15.   For the period of January 1, 2009 - December 31, 2010, produce documents related to any payment made in exchange for legal advice given regarding your newsletter disclaimer

**RESPONSE:** Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

REQUEST NO. 16.   Produce documents between you and Pudong LLC and/or Jay Fung regarding your newsletter disclaimer.

**RESPONSE:** Subject to and without wavier of its objections, Thompson will produce all relevant non-privileged documents to the extent they exist, are in his possession and have not heretofore been provided to Plaintiff by Thompson or another party or witness.

9

Dated: November 15, 2013

Respectfully Submitted,

Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, Utah 84111
Tel:  (801) 322-2516
Fax: (801) 521-6280

By:  /s/Brent R. Baker
     BRENT R. BAKER
     D. LOREN WASHBURN
     Admitted Pro Hac Vice
     Attorneys for Defendants Anthony Thompson and
     OTC Solutions
     brb@clydesnow.com
     dlw@clydesnow.com

     and

     The Law Offices of Jeffrey A. Neiman
     100 Southeast Third Avenue, Suite 2612
     Fort Lauderdale, FL 33394
     Tel: (954)-462-1200
     Fax: (954)-688-2492

By:  /s/ Jeffrey A. Neiman
     JEFFREY A. NEIMAN
     Florida Bar Number 544469
     jeff@jneimanlaw.com

10

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on the 15th day of November, 2013, I filed the foregoing **DEFENDANT ANTHONY THOMPSON'S RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS** with the Clerk of the Court and notification of such filing was sent to the following:

       Christine Nestor
       Securities and Exchange Commission
       801 Brickell Ave., Suite 1800
       Miami, FL 33131
       nestorc@sec.gov
       alonkai@sec.gov

       James D. Sallah
       Jeffrey L. Cox
       Joshua A. Katz
       Sallah Astarita & Cox, LLC
       One Boca Place
       2255 Glades Road, Suite No. 300E
       Boca Raton, FL 33431
       jds@sallahlaw.com
       jlc@sallahlaw.com
       jak@sallahlaw.com

       Ryan Gonzalez
       8240 NE 8th Place
       Miami, FL 33138
       seekrets@hotmail.com


       /s/Brent R. Baker

11

# EXHIBIT 20

This agreement provides for the distribution of funds deposited by:

Depositor:      Anthony Thompson
Address:        18 Holly Leaf Court
                Bethesda, MD 20817

in a non-interest bearing trust account established with:

Trust Agent:    Clyde Snow & Sessions PC IOLTA Trust Account
                201 S. Main Street 13th Floor, Salt Lake City, UT 84111

Whereas Depositor wishes to provide for payment of amounts offered in

settlement of a civil action in which Depositor and the United States Securities and

Exchange Commission (SEC) are parties, Depositor and Trust Agent agree as follows:

1. Depositor hereby designates Trust Agent as depository and trust agent,

2. Depositor shall place in the trust account the sum of $493,239.76.

3. The funds in the trust account shall be distributed according to the following

instructions:

(a) Trust Agent shall distribute the funds in the trust account according to

the terms of a court order, entered by consent in proceedings to which Depositor and the

SEC are parties; or,

(b) Trust Agent shall release all funds in the trust account to Depositor

upon receipt of a written notice, signed by the Director of the SEC's Division of

Enforcement.

Dated   1/14/14

Anthony Thompson

Page 1 of 2

Trust Agent acknowledges receipt of these instructions, and agrees to hold and dispose of

the sums deposited into the trust account in accordance with the terms and conditions of

this agreement.

Dated  1-13-14

Brent R. Baker, Esq.
Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, UT 84111

Page 2 of 2

# EXHIBIT 21

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:12-cv-21656-JAL**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| **Plaintiff,** | |
| v. | |
| RECYCLE TECH, INC., RYAN GONZALEZ, OTC SOLUTIONS LLC, ANTHONY THOMPSON, PUDONG LLC, and JAY FUNG, | |
| **Defendants.** | |

**CONSENT OF DEFENDANT ANTHONY THOMPSON TO
FINAL JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF**

1.      Defendant Anthony Thompson acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over him and over the subject matter of this action.

2.      Without admitting or denying the allegations of the complaint (except as provided herein in paragraph 13 and except as to personal and subject matter jurisdiction, which Thompson admits), Thompson hereby consents to the entry of the final judgment of permanent injunction and other relief in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

      (a)      permanently restrains and enjoins Thompson from violation of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15

U.S.C. § 77e(a), 15 U.S.C. § 77e(c), and 15 U.S.C. § 77q(a); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5;

(b)    orders that Thompson is jointly and severally liable with Defendant OTC Solutions LLC to pay disgorgement in the amount of $349,504.61, plus prejudgment interest thereon in the amount of $23,735.15;

(c)    orders Thompson pay a civil penalty of $120,000 pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and

(d)    imposes a penny stock bar on Thompson pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

3.    Thompson shall satisfy his obligation to pay disgorgement, prejudgment interest, and a civil penalty by paying $493,239.76 which he has escrowed with his counsel, within fourteen (14) days from the date of entry of the Final Judgment. Thompson may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Thompson may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of

2

this Court; Thompson as a defendant in this action; and specifying that payment is made pursuant to the Final Judgment. Thompson shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Thompson relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Thompson.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's Final Judgment for disgorgement, prejudgment interest, and civil penalty by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of the Final Judgment. Thompson shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

4.      To preserve the deterrent effect of the civil penalty, Thompson agrees that he shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Thompson's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Thompson's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Thompson agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United

States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Thompson by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

5.     Thompson agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Thompson pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Thompson further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Thompson pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6.     Thompson waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7.     Thompson waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

8.     Thompson enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Thompson or anyone acting on his behalf to enter into this Consent.

4

9.      Thompson agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

10.     Thompson will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11.     Thompson waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Thompson of its terms and conditions. Thompson further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Thompson has received and read a copy of the Final Judgment.

12.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Thompson in this civil proceeding. Thompson acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Thompson waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Thompson further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any

disciplinary proceeding before the Commission based on the entry of the injunction in this action, Thompson understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

13.     Thompson understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations."  As part of Thompson's agreement to comply with the terms of Section 202.5(e), Thompson: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Thompson does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Thompson does not deny the allegations; (iii) upon the filing of this Consent, Thompson hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Thompson under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Thompson of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).  If Thompson

6

breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Thompson's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14.     Thompson hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Thompson to defend against this action.  For these purposes, Thompson agrees that he is not the prevailing party in this action since the parties have reached a good faith settlement.

15.     Thompson agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

16.     Thompson agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: ___1|.3|.14___

_____
Anthony Thompson

State of __Maryland__     )
                                          )     ss:
County of __Howard__      )

On January 13, 2014, Anthony Thompson, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires: __August 22, 2017__

7

Approved as to form:

Dated: January 13, 2014

Brent R. Baker, Esq.
Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, UT 84111
*Counsel for Anthony Thompson and OTC Solutions LLC*

# EXHIBIT 22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:12-cv-21656-JAL

SECURITIES AND EXCHANGE
COMMISSION,

                                        Plaintiff,

                    v.

RECYCLE TECH, INC.,
RYAN GONZALEZ,
OTC SOLUTIONS LLC,
ANTHONY THOMPSON,
PUDONG LLC, and JAY FUNG,

                                        Defendants.

## CONSENT OF DEFENDANT OTC SOLUTIONS LLC TO
## FINAL JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF

1.      Defendant OTC Solutions LLC acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over it and over the subject matter of this action.

2.      Without admitting or denying the allegations of the complaint (except as provided herein in paragraph 11 and except as to personal and subject matter jurisdiction, which OTC Solutions admits), OTC Solutions hereby consents to the entry of the final judgment of permanent injunction and other relief in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

        (a)     permanently restrains and enjoins OTC Solutions from violation of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a), 15 U.S.C. § 77e(c), and 15 U.S.C. § 77q(a); and

Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5;

(b)     orders that OTC Solutions is jointly and severally liable with Defendant Anthony Thompson to pay disgorgement in the amount of $349,504.61, plus prejudgment interest thereon in the amount of $23,735.15; and

(c)     dismisses Plaintiff's civil penalty claim against OTC Solutions LLC pursuant to Federal Rule of Civil Procedure 41(a).

3.     OTC Solutions shall satisfy its obligation to pay disgorgement and prejudgment interest by paying $373,239.76 which it has escrowed with its counsel, within fourteen (14) days from the date of entry of the Final Judgment.  OTC Solutions may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  OTC Solutions may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; OTC Solutions as a defendant in this action; and specifying that payment is made pursuant to the Final Judgment.  OTC Solutions shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action.  By making this payment, OTC Solutions relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to OTC Solutions.

2

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's Final Judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of the Final Judgment. OTC Solutions shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

4.      OTC Solutions waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.      OTC Solutions waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.      OTC Solutions enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce OTC Solutions or anyone acting on its behalf to enter into this Consent.

7.      OTC Solutions agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.      OTC Solutions will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

3

9.      OTC Solutions waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to OTC Solutions of its terms and conditions. OTC Solutions further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that OTC Solutions has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against OTC Solutions in this civil proceeding. OTC Solutions acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. OTC Solutions waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. OTC Solutions further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, OTC Solutions understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

11.     OTC Solutions understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of OTC Solutions's agreement to comply with the terms of Section 202.5(e), OTC Solutions: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that OTC Solutions does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that OTC Solutions does not deny the allegations; (iii) upon the filing of this Consent, OTC Solutions hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by OTC Solutions under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by OTC Solutions of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19). If OTC Solutions breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects OTC

Solutions's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

　　　　12.　　OTC Solutions hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by OTC Solutions to defend against this action. For these purposes, OTC Solutions agrees that it is not the prevailing party in this action since the parties have reached a good faith settlement.

　　　　13.　　OTC Solutions agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

　　　　14.　　OTC Solutions agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated:  1|13|14

OTC Solutions LLC

By _____
Anthony Thompson
Its ___Former Owner___

State of _Maryland_        )
                          )    ss:
County of _Howard_        )

　　　　On January 13, 2014, Anthony Thompson, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of OTC Solutions LLC as its ___former owner___.



_____
Notary Public
Commission expires: August 22, 2017

6

Approved as to form:

Brent R. Baker, Esq.
Clyde Snow & Session
201 S. Main Street, 13th Floor
Salt Lake City, UT 84111
*Counsel for Anthony Thompson and OTC Solutions LLC*

Dated: January 13, 2014

7

# EXHIBIT 23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:12-cv-21656-JAL

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| | Plaintiff, |
| v. | |
| RECYCLE TECH, INC., RYAN GONZALEZ, OTC SOLUTIONS LLC, ANTHONY THOMPSON, PUDONG LLC, and JAY FUNG, | |
| | Defendants. |

## FINAL JUDGMENT OF PERMANENT INJUNCTION
## AND OTHER RELIEF AS TO DEFENDANT ANTHONY THOMPSON

The Securities and Exchange Commission having filed a Complaint and Defendant Anthony Thompson having entered a general appearance; consented to the Court's jurisdiction over him and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to personal and subject matter jurisdiction and except as otherwise provided herein in paragraph III, which Thompson admits); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

**I.**

**PERMANENT INJUNCTION**

A. <u>Sections 5(a) and 5(c) of the Securities Act of 1933</u>

**IT IS ORDERED AND ADJUDGED** that Thompson and his officers, agents, servants, representatives, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c), by, directly or indirectly, in the absence of any applicable exemption:

    (a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    (b)    Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

    (c)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act, 15 U.S.C. § 77h.

2

### B. Section 17(a) of the Securities Act

IT IS FURTHER ORDERED AND ADJUDGED that Thompson and his officers, agents, servants, representatives, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

### C. Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934

IT IS FURTHER ORDERED AND ADJUDGED that Thompson and his officers, agents, servants, representatives, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

## II.

## DISGORGEMENT, PREJUDGMENT INTEREST, AND CIVIL PENALTY

**IT IS FURTHER ORDERED AND ADJUDGED** that Thompson is jointly and severally liable with Defendant OTC Solutions LLC for disgorgement in the amount of $349,504.61, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $23,735.15. Thompson shall also

4

pay a civil penalty in the amount of $120,000 pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d). Thompson shall satisfy his obligation to pay disgorgement, prejudgment interest, and a civil penalty by paying $493,239.76, which he has escrowed with his counsel, to the Securities and Exchange Commission within fourteen (14) days from the date of entry of this Final Judgment.

Thompson may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Thompson may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

    Enterprise Services Center
    Accounts Receivable Branch
    6500 South MacArthur Boulevard
    Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Thompson as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment. Thompson shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Thompson relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Thompson.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment

5

to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest, by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of the Final Judgment. Thompson shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

To preserve the deterrent effect of the civil penalty, Thompson shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Thompson's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Thompson's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Thompson shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Thompson by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

Thompson shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Thompson pays, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Thompson shall not claim, assert, or apply for a tax deduction

6

or tax credit with regard to any federal, state, or local tax for any penalty amounts that Thompson pays, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

## III.

## BANKRUPTCY NONDISCHARGEABILITY

**IT IS FURTHER ORDERED AND ADJUDGED** that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the allegations in the Complaint are true and admitted by Thompson, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Thompson under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Thompson of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

## IV.

## PENNY STOCK BAR

**IT IS FURTHER ORDERED AND ADJUDGED** that Thompson is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act, 17 C.F.R. 240.3a51-1.

## V.

### INCORPORATION OF CONSENT

IT IS FURTHER ORDERED AND ADJUDGED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Thompson shall comply with all of the undertakings and agreements set forth therein.

## VI.

### RETENTION OF JURISDICTION

IT IS FURTHER ORDERED AND ADJUDGED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

## VII.

### RULE 54(b) CERTIFICATION

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

DONE AND ORDERED in Chambers in Miami, Florida, this $13$ day of ___Feb.___, 2014.

Joan A. Lenard

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

8

# EXHIBIT 24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:12-cv-21656-JAL

SECURITIES AND EXCHANGE
COMMISSION,

                                        Plaintiff,

v.

RECYCLE TECH, INC.,
RYAN GONZALEZ,
OTC SOLUTIONS LLC,
ANTHONY THOMPSON,
PUDONG LLC, and JAY FUNG,

                                        Defendants.

## FINAL JUDGMENT OF PERMANENT INJUNCTION
## AND OTHER RELIEF AS TO DEFENDANT OTC SOLUTIONS LLC

The Securities and Exchange Commission having filed a Complaint and Defendant OTC

Solutions LLC having entered a general appearance; consented to the Court's jurisdiction over it

and the subject matter of this action; consented to entry of this Final Judgment without admitting

or denying the allegations of the Complaint (except as to personal and subject matter jurisdiction

and except as otherwise provided herein in paragraph III, which OTC Solutions admits); waived

findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

## I.

## PERMANENT INJUNCTION

### A. Sections 5(a) and 5(c) of the Securities Act of 1933

IT IS ORDERED AND ADJUDGED that OTC Solutions and its officers, agents, servants, representatives, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c), by, directly or indirectly, in the absence of any applicable exemption:

    (a)    Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

    (b)    Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

    (c)    Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act, 15 U.S.C. § 77h.

2

### B. Section 17(a) of the Securities Act

**IT IS FURTHER ORDERED AND ADJUDGED** that OTC Solutions and its officers, agents, servants, representatives, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

### C. Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934

**IT IS FURTHER ORDERED AND ADJUDGED** that OTC Solutions and its officers, agents, servants, representatives, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company.

## II.

## DISGORGEMENT AND PREJUDGMENT INTEREST

**IT IS FURTHER ORDERED AND ADJUDGED** that OTC Solutions is jointly and severally liable with Defendant Anthony Thompson for disgorgement in the amount of $349,504.61, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $23,735.15. OTC Solutions shall

satisfy its obligation to pay disgorgement and prejudgment interest by paying $373,239.76, which it has escrowed with its counsel, to the Securities and Exchange Commission within fourteen (14) days from the date of entry of this Final Judgment.

OTC Solutions may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. OTC Solutions may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; OTC Solutions as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment. OTC Solutions shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, OTC Solutions relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to OTC Solutions.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment

interest, by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of the Final Judgment. OTC Solutions shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

## III.

### BANKRUPTCY NONDISCHARGEABILITY

**IT IS FURTHER ORDERED AND ADJUDGED** that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the allegations in the Complaint are true and admitted by OTC Solutions, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by OTC Solutions under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by OTC Solutions of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

## IV.

### CIVIL PENALTY

**IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to Federal Rule of Civil Procedure 41(a), Plaintiff's civil penalty claim in the above-captioned action is dismissed against OTC Solutions.

## V.

### INCORPORATION OF CONSENT

**IT IS FURTHER ORDERED AND ADJUDGED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that OTC Solutions shall comply with all of the undertakings and agreements set forth therein.

6

## VI.

### RETENTION OF JURISDICTION

IT IS FURTHER ORDERED AND ADJUDGED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

## VII.

### RULE 54(b) CERTIFICATION

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

DONE AND ORDERED in Chambers in Miami, Florida, this 13 day of

_____ Feb _____, 2014.

JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

7

# EXHIBIT 25

**Brent R. Baker**

| | |
|---|---|
| **From:** | Pizzani, Peter A. <PizzaniP@SEC.GOV> |
| **Sent:** | Friday, March 28, 2014 4:26 PM |
| **To:** | Brent R. Baker |
| **Cc:** | Osnato, Michael J.; Smith, Thomas |
| **Subject:** | RE: Thompson Offer of Settlement - FRE 408 Communication |

This will confirm that your understanding is correct and consistent with the scope of the recommendation being presented to the Commission.

**From:** Brent R. Baker [mailto:BRB@clydesnow.com]
**Sent:** Friday, March 28, 2014 4:35 PM
**To:** Pizzani, Peter A.
**Cc:** Mark L. Smith; Loren Washburn; Brent R. Baker; Aaron Lebenta
**Subject:** Thompson Offer of Settlement - FRE 408 Communication

Peter:

As I mentioned in our call this morning, Anthony Thompson is out of town with his family until early next week. I email him the document and he faxed it back with his signature. It is not notarized but he will get me a signed and notarized copy when he returns next week. I will forward it to you promptly.

Also, as we have discussed several times as part of our settlement negotiations, our understanding is that this Offer of Settlement/Agreement is meant to cover all of the legal and factual issues referenced in all subpoenas issued under the Formal Order of Investigation in the Matter of Blast Applications, Inc. (NY-8264). Can the Staff please confirm that our understanding is correct and consistent with the scope of the recommendation being presented by the Staff to the Commission in this matter?

Thanks,

Brent

Brent R. Baker

# ClydeSnow
ATTORNEYS AT LAW
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
P: 801.322.2516
D: 801.433.2438
F: 801.521.6280
www.clydesnow.com

CONFIDENTIALITY NOTICE
This electronic mail transmission, and any documents, files, or previous e-mail messages attached to it, is intended only for the use of the person or entity to whom it is addressed and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution, use of any of the information, or the taking of action in reliance on the contents of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving it in any manner.

FEDERAL TAX ADVICE DISCLAIMER  We are required by U. S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.
Please consider the environment before printing this e-mail.

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

# EXHIBIT 26



U.S. Securities and Exchange Commission

brb@clydesnow.com

| | |
|---|---|
| **Sent:** | Dec 20, 2013 12:54 PM |
| **Expires:** | Mar 20, 2014 12:54 PM |
| **From:** | brb@clydesnow.com |
| **To:** | pizzanip@sec.gov |
| **Cc:** | |
| **Subject:** | RE: smail Blast Applications |

Let's just have an initial call with us today and if it makes sense we can do a separate call including the DA later.

Brent
--- Originally sent by pizzanip@sec.gov on Dec 20, 2013 12:01 PM ---
Does it make sense to have someone from the DA's office on the call?  Let me know your preference.

Thanks.

From: Brent R. Baker [mailto:BRB@clydesnow.com]
Sent: Thursday, December 19, 2013 7:14 PM
To: Pizzani, Peter A.
Cc: Osnato, Michael J.; Mark L. Smith; Loren Washburn
Subject: Re: Blast Applications

That works for me. I will see Mark and Loren at the firm Holiday party tonight and I'll see if they are open too. I'll email you later.

Thanks,

Brent

Brent Baker
Clyde Snow

On Dec 19, 2013, at 5:04 PM, "Pizzani, Peter A."
<PizzaniP@SEC.GOV<mailto:PizzaniP@SEC.GOV>> wrote:
My afternoon is pretty wide open. How is 3:30 Eastern time?
Sent from BlackBerry Wireless Handheld.


From: Brent R. Baker [mailto:BRB@clydesnow.com]
Sent: Thursday, December 19, 2013 06:21 PM Eastern Standard Time
To: Pizzani, Peter A.
Cc: Osnato, Michael J.; Mark L. Smith <MLS@clydesnow.com<mailto:MLS@clydesnow.com>>;
Loren Washburn <dlw@clydesnow.com<mailto:dlw@clydesnow.com>>
Subject: RE: Blast Applications

Peter:

I have had a chance to talk to my client and he is genuinely open to discussing the terms you laid out in your email below. Can you find some time tomorrow afternoon to talk about possible resolution? Please let me know what works for you. I am also in Monday of next week.

Regards,

Brent

Brent R. Baker
ClydeSnow
ATTORNEYS AT LAW
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
P: 801.322.2516
D: 801.433.2438
F: 801.521.6280
www.clydesnow.com<http://www.clydesnow.com/>

CONFIDENTIALITY NOTICE
This electronic mail transmission, and any documents, files, or previous e-mail messages attached to it, is intended only for the use of the person or entity to whom it is addressed and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution, use of any of the information, or the taking of action in reliance on the contents of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving it in any manner.
FEDERAL TAX ADVICE DISCLAIMER   We are required by U. S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.
Please consider the environment before printing this e-mail.

From: Brent R. Baker
Sent: Monday, December 16, 2013 4:54 PM
To: 'Pizzani, Peter A.'
Cc: Osnato, Michael J.; Mark L. Smith; Loren Washburn
Subject: RE: Blast Applications

Peter:

Thanks for the prompt response. I know the Commission staff is very busy but I would like to think it is always an efficient use of resources and professionally responsible for the staff to talk about settlement at any point.

As to the terms you proposed, please allow me a day or two to talk with my client and I will get back to you. I am hopeful we can find enough common ground to make further conversation meaningful.

Best regards,

Brent

Brent R. Baker
ClydeSnow
ATTORNEYS AT LAW
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
P: 801.322.2516
D: 801.433.2438
F: 801.521.6280
www.clydesnow.com<http://www.clydesnow.com/>
CONFIDENTIALITY NOTICE
This electronic mail transmission, and any documents, files, or previous e-mail messages attached
to it, is intended only for the use of the person or entity to whom it is addressed and may contain
information that is privileged, confidential, and/or exempt from disclosure under applicable law. If
you are not the intended recipient or a person responsible for delivering it to the intended recipient,
you are hereby notified that you must not read this transmission and that any disclosure, copying,
printing, distribution, use of any of the information, or the taking of action in reliance on the contents
of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you
have received this transmission in error, please immediately notify the sender by telephone or
return e-mail and delete the original transmission and its attachments without reading or saving it in
any manner.
FEDERAL TAX ADVICE DISCLAIMER   We are required by U. S. Treasury Regulations to inform
you that, to the extent this message includes any federal tax advice, this message is not intended
or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax
penalties.
Please consider the environment before printing this e-mail.

From: Pizzani, Peter A. [mailto:PizzaniP@SEC.GOV]
Sent: Monday, December 16, 2013 3:10 PM
To: Brent R. Baker
Cc: Osnato, Michael J.; Mark L. Smith
Subject: RE: Blast Applications

We don't see the need to discuss status.  We are moving forward with our investigation.

As to a possible resolution, here are the only terms we would be willing to discuss and ultimately
recommend:

-       antifraud injunction.
-       penny stock bar, as well as all other collateral bars.
-       disgorgement of proceeds from Blast plus prejudgment interest.
-       payment of penalty, amount to be determined

If your client is willing to proceed on this basis, we can schedule a time to talk.

Peter A. Pizzani
Senior Counsel
Securities and Exchange Commission
3 World Financial Center
New York, NY 10281
(212) 336-0147

From: Brent R. Baker [mailto:BRB@clydesnow.com]
Sent: Monday, December 16, 2013 4:28 PM
To: Pizzani, Peter A.
Cc: Mark L. Smith
Subject: Blast Applications

Mr. Pizzani:

Do you have some time in the next few days to schedule a time to talk about the status of this matter and possible resolution.  Let me know when you are available and I will set up a call.

Best regards,

Brent

Brent R. Baker
ClydeSnow
ATTORNEYS AT LAW
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
P: 801.322.2516
D: 801.433.2438
F: 801.521.6280
www.clydesnow.com<http://www.clydesnow.com/>

CONFIDENTIALITY NOTICE
This electronic mail transmission, and any documents, files, or previous e-mail messages attached to it, is intended only for the use of the person or entity to whom it is addressed and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution, use of any of the information, or the taking of action in reliance on the contents of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving it in any manner.
FEDERAL TAX ADVICE DISCLAIMER   We are required by U. S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.
Please consider the environment before printing this e-mail.

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its

attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

------------------------------------------------------------------------

This message was secured by ZixCorp(R).

Secured by **zix**corp

# EXHIBIT 27



**U.S. Securities and Exchange Commission**

brb@clydesnow.com

| | |
|---|---|
| **Received:** | Jan 7, 2014 8:42 AM |
| **Expires:** | Apr 7, 2014 9:42 AM |
| **From:** | pizzanip@sec.gov |
| **To:** | brb@clydesnow.com |
| **Cc:** | osnatom@sec.gov, mls@clydesnow.com, dlw@clydesnow.com |
| **Subject:** | smail Blast Applications NY-8264 |

**Attachments:**    Baker Term Sheet.pdf, htmlBody.html

Dear Mr. Baker,

I have attached the a letter we discussed yesterday concerning the proposed settlement with your clients.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, 4th Floor, New York, NY 10281-1022 | direct 212.336.0147 | main 212.336.1100 | fax 212.336.1353

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

---------------------------------------------------------------------

This message was secured by ZixCorp(R).

Secured by **Zix** Corp



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE, 200 VESEY STREET
NEW YORK, NY 10281-1022

PETER PIZZANI
TELEPHONE: (212) 336-0147
pizzanip@sec.gov

January 7, 2014

**BY E-MAIL**
Brent R. Baker, Esq.
Clyde Snow & Sessions
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111

      Re:     ***Blast Applications, Inc. (NY-8264)***

Dear Mr. Baker:

      This letter is to memorialize that your clients, Anthony J. Thompson, Jr. ("Thompson") and OTC Solutions, LLC ("OTC Solutions") agree to settle all potential claims against them arising from the promotion of the stock of Blast Applications, Inc. on the following terms:

      • Injunctions against Thompson and OTC Solutions with respect to further violations of the anti-touting provisions of the Securities Act and the anti-fraud provisions the Securities Act and the Exchange Act;

      • A life-time bar against Thompson associating with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or national recognized statistical rating organization, and from participating in any penny stock offering;

      • Thompson will pay disgorgement equal to one-third of the proceeds of OTC's sale of Blast Applications stock in connection with the November 2009 promotion of Blast Applications (approximately $570,000 ÷ 3 = $190,000) plus prejudgment interest;

      • Thompson will pay a civil penalty equal to the amount of disgorgement;

Brent Baker, Esq.
January 6, 2014
Page 2

     As you know, any settlement must be approved by the full Commission and the terms outlined herein are representative only of the position of the Division of Enforcement. The staff will not recommend any settlement offer until we receive proof that all funds to paid pursuant to the proposed settlement have been placed in escrow.

     To indicate your acceptance of these terms, please countersign below.

Sincerely yours,

Peter Pizzani
Senior Counsel
Division of Enforcement

AGRRED AND ACCEPTED:

_____
Anthony J. Thompson, Jr.

OTC Solutions, LLC

_____
By:
Title:

APPROVED AS TO FORM:

_____
Brent R. Baker, Esq.
Clyde Snow & Sessions
Counsel for Anthony J. Thompson, Jr.
and OTC Solutions, LLC

# EXHIBIT 28

**Aaron Lebenta**

| | |
|---|---|
| **From:** | Aaron Lebenta |
| **Sent:** | Wednesday, September 03, 2014 5:02 PM |
| **To:** | Aaron Lebenta |
| **Subject:** | FW: Call this afternoon |
| **Attachments:** | Confidential Thompson Settlement Letter (00474950-2).docx |

**From:** Brent R. Baker
**Sent:** Thursday, January 09, 2014 1:47 PM
**To:** Pizzani, Peter A.
**Cc:** Mark L. Smith; Aaron Lebenta
**Subject:** RE: Call this afternoon

Peter,

As promised, attached is the revised term sheet. We converted the original to a word document; our changes are displayed in redline. Please let me know if you have any questions or wish to discuss.

Regards,
Brent

Brent R. Baker

# ClydeSnow

ATTORNEYS AT LAW
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
P: 801.322.2516
D: 801.433.2438
F: 801.521.6280
www.clydesnow.com

**CONFIDENTIALITY NOTICE**
This electronic mail transmission, and any documents, files, or previous e-mail messages attached to it, is intended only for the use of the person or entity to whom it is addressed and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution, use of any of the information, or the taking of action in reliance on the contents of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving it in any manner.
FEDERAL TAX ADVICE DISCLAIMER   We are required by U. S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.
**Please consider the environment before printing this e-mail.**

**From:** Pizzani, Peter A. [mailto:PizzaniP@SEC.GOV]
**Sent:** Thursday, January 09, 2014 11:31 AM
**To:** Brent R. Baker
**Subject:** Call this afternoon

When will you be available?

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, 4th Floor, New York, NY 10281-1022 | direct 212.336.0147 | main 212.336.1100 | fax 212.336.1353

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE BROOKFIELD PLACE,
200 VESEY STREET
NEW YORK, NY 10281-1022

PETER PIZZANI
TELEPHONE: (212) 336-0147
pizzanip@sec.gov

January 7, 2014

**BY E-MAIL**
Brent R. Baker, Esq.
Clyde Snow & Sessions
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111

Re: Confidential Settlement Communication in the Matter of ***Blast Applications, Inc. (NY-8264)***

Dear Mr. Baker:

This letter is to memorialize that your clients, Anthony J. Thompson, Jr. ("Thompson") and OTC Solutions, LLC ("OTC Solutions") agree to settle all potential claims against them brought by or on behalf of the United States Securities and Exchange Commission ("Commission), or to which the Commission is a party. This includes any and all claims arising from the ~~promotion~~ Commission's investigation pursuant to a formal order of investigation in re Blast Applications, Inc. (NY-8264), and excluding the Commission's commenced litigation in the Southern District of Florida captioned SEC v. Recycle Tech, Inc. et al., Case number 1:12-cv-21656~~of the stock of Blast Applications, Inc.~~ and ~~other~~ conduct over which the Commission has jurisdiction on the following terms:

• A cease-and-desist order pursuant to Section 21C of the Securities and Exchange Act of 1934 ("Exchange Act") ~~Injunctions~~ without admitting or denying any allegations against Thompson and OTC Solutions with respect to ~~further~~ violations of the anti-touting provisions of the Securities Act and the anti-fraud provisions of the Securities Act and the Exchange Act;

• A ~~life-time~~ permanent bar against Thompson from associating with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or national recognized statistical rating organization, and from participating in any penny stock offering;

• Thompson will pay disgorgement equal to one-third of the proceeds of OTC's sale of Blast Applications stock in connection with the November 2009 promotion of Blast Applications (approximately $570,000 ÷ 3 = $190,000) plus prejudgment interest;

{00474950-2 }

• Thompson will pay a Third Tier civil penalty of $150,000 pursuant to Section 21(d)(3) of the Exchange Act~~equal to the amount of disgorgement~~;

Brent Baker, Esq.
January 6, 2014
Page 2

As you know, any settlement must be approved by the full Commission and the terms outlined herein are representative only of the position of the Division of Enforcement. The staff will not recommend any settlement offer until we receive proof that all funds to be paid pursuant to the proposed settlement have been placed in escrow.

To indicate your acceptance of these terms, please countersign below.

Senior Counsel
Division of Enforcement

AGREED AGREED AND ACCEPTED:

_____
Anthony J. Thompson, Jr.
OTC Solutions, LLC

_____
By:
Title:

APPROVED AS TO FORM:

_____
Brent R. Baker, Esq.
Clyde Snow & Sessions
Counsel for Anthony J. Thompson, Jr.
and OTC Solutions, LLC

{00474950-2 }

# EXHIBIT 29

**Brent R. Baker**

| | |
|---|---|
| **From:** | Pizzani, Peter A. <PizzaniP@SEC.GOV> |
| **Sent:** | Wednesday, January 15, 2014 4:50 PM |
| **To:** | Brent R. Baker |
| **Cc:** | Mark L. Smith |
| **Subject:** | RE: Status of escrow |

We will start now based on your representation.

**From:** Brent R. Baker [mailto:BRB@clydesnow.com]
**Sent:** Wednesday, January 15, 2014 6:07 PM
**To:** Pizzani, Peter A.
**Cc:** Mark L. Smith
**Subject:** RE: Status of escrow

Peter:

The money ($345,000 plus amount roughly equal to prejudgment interest through August 2013) is in currently my trust account for use in settling this matter subject to consideration and approval by the Commission.

Let me know what additional information you need to get started on the drafting of the Offer of Settlement.

Regards,

Brent

Brent R. Baker

# ClydeSnow
ATTORNEYS AT LAW
201 South Main Street, Suite 1300
Salt Lake City, UT 84111
P: 801.322.2516
D: 801.433.2438
F: 801.521.6280
www.clydesnow.com

CONFIDENTIALITY NOTICE
This electronic mail transmission, and any documents, files, or previous e-mail messages attached to it, is intended only for the use of the person or entity to whom it is addressed and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution, use of any of the information, or the taking of action in reliance on the contents of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving it in any manner.
FEDERAL TAX ADVICE DISCLAIMER  We are required by U. S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.
Please consider the environment before printing this e-mail.

**From:** Pizzani, Peter A. [mailto:PizzaniP@SEC.GOV]
**Sent:** Wednesday, January 15, 2014 3:29 PM
**To:** Brent R. Baker
**Subject:** Status of escrow

Any update?

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, 4th Floor, New York, NY 10281-1022 | direct 212.336.0147 | main 212.336.1100 | fax 212.336.1353

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

# EXHIBIT 30



U.S. Securities and Exchange Commission

**brb@clydesnow.com**

| | |
|---|---|
| **Received:** | Mar 11, 2014 12:51 PM |
| **Expires:** | Jun 9, 2014 12:51 PM |
| **From:** | pizzanip@sec.gov |
| **To:** | brb@clydesnow.com |
| **Cc:** | osnatom@sec.gov |
| **Subject:** | smail Blast Applications - Thompson Offer of Settlement |
| **Attachments:** | htmlBody.html, Thompson-OTC Offer of Settlement.03.pdf |

Brent,

I have attached a revised Offer of Settlement for Anthony Thompson.  I tried to call you to discuss the changes in the document.  Please call me when you have a chance.

Thank you.


Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147 | fax 212.336.1353


Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.


-----------------------------------------------------------------
This message was secured by ZixCorp(R).

Secured by **ZiX** Corp

UNITED STATES OF AMERICA
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**ADMINISTRATIVE PROCEEDING**
**File No.**

| | | |
|---|---|---|
| **In the Matter of** | : | |
| | : | |
| **ANTHONY J. THOMPSON, JR,** | : | **OFFER OF SETTLEMENT OF** |
| **JAY FUNG, and PUDONG, LLC** | : | **ANTHONY J. THOMPSON, JR.** |
| | : | |
| **Respondents.** | : | |

**I.**

Anthony J. Thompson, Jr. ("Thompson") ("Thompson" or "Respondent"), pursuant to Rule 240(a) of the Rules of Practice of the Securities and Exchange Commission ("Commission") [17 C.F.R. § 201.240(a)] submits this Offer of Settlement ("Offer") in anticipation of public administrative and cease-and-desist proceedings to be instituted against him by the Commission, pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), Sections 15(b), 21B, and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act").

**II.**

This Offer is submitted solely for the purpose of settling these proceedings, with the express understanding that it will not be used in any way in these or any other proceedings, unless the Offer is accepted by the Commission. If the Offer is not accepted by the Commission, the Offer is withdrawn without prejudice to Thompson and shall not become a part of the record in these or any other proceedings, except for the waiver expressed in Section V with respect to Rule 240(c)(5) of the Commission's Rules of Practice [17 C.F.R. § 201.240(c)(5)].

**III.**

On the basis of the foregoing, Thompson hereby:

A.      Admits the jurisdiction of the Commission over him and over the matters set forth in the Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A

of the Securities Act, Sections 15(b) and 21C of the Exchange Act, and Sections 9(b) of the Investment Company Act, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order");

  B.  Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission or in which the Commission is a party prior to a hearing pursuant to the Commission's Rules of Practice, 17 C.F.R. § 201.100 et seq., and without admitting or denying the findings contained in the Order, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, which are admitted, consents to the entry of an Order by the Commission containing the following findings[1] and remedial sanctions set forth below:

### Summary

  These proceedings arise out of the 2009 pump-and-dump manipulation of the stock price of Blast Applications, Inc. ("Blast"). Thompson's company, OTC Solutions, LLC ("OTC Solutions") received 18 million free trading shares to promote Blast's stock in its electronic newsletters. Thompson, through OTC Solutions, sold the 18 million shares of stock for proceeds of over $556,000 while Thompson, in conjunction with others, ran a successful campaign to promote Blast's stock. Thompson and OTC Solutions failed to disclose the full amount of the shares they received as compensation for promoting Blast or that they were dumping the shares while promoting the stock. Thompson also engaged in matched trades to help support the price of Blast's stock as part of the promotion.

### Respondent

  1.  **Thompson**, age 38, of Bethesda, Maryland, is a penny stock promoter and was the Managing Director and sole owner of OTC Solutions. Thompson held the Series 7, 63, and 65 licenses, but has not been associated with a registered broker-dealer since 2007.

### Other Relevant Entities

  2.  **OTC Solutions** is a now defunct Maryland limited liability company located in Bethesda, Maryland. At the time of the events described herein, OTC Solutions published and distributed, via email and website postings, newsletters that promoted penny stocks, including *freepennyalerts.com, premierepennystocks.com, explicitpicks.com, oxofwallstreet.com, and explicitpennypicks.com.* The newsletters purported to offer unbiased recommendations on penny

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

stocks that it identified as likely to increase in price based upon recent events, such as a new contract or product.

3.      **Blast** is a Delaware corporation formerly known as Medivisor, Inc., with its principal executive offices in Plainview, New York. In July 2009, Medivisor changed its name to Blast Applications, Inc. and changed its business classification from health and allied services to web solutions and marketing. In many of its press releases the company described itself as "a premier creator and developer of applications for iPhone, iPad, Facebook, Twitter, and Android." Blast Applications' stock is quoted on OTC Link (formerly the "Pink Sheets") under the symbol BLAP. Blast filed a Form 10 on March 7, 2008, registering its common stock under Section 12(g). Its registration became effective on or about May 6, 2008. Thereafter, although it filed three Forms 8-K, Blast never filed any periodic reports pursuant to its reporting obligations under Section 13(a). On November 12, 2009, Blast filed a Form 15 claiming it was eligible for voluntary deregistration based on Rule 12g-4(a)(1).

4.      **Jay Fung ("Fung")**, age 40, of Delray Beach, Florida, is a penny stock promoter who controls Pudong, LLC, a Florida limited liability company located in Boca Raton, Florida. Pudong distributed stock promotion newsletters, including *Penny Pic*, a newsletter that promoted Blast Applications.

5.      **Eric Van Nguyen ("Van Nguyen")**, of Montreal, Quebec, Canada, is a penny stock promoter who controlled Golden Dragon Media, a now defunct Nevada corporation formerly located in Henderson, Nevada that distributed newsletters promoting penny stocks. The websites and newsletters controlled by Golden Dragon Media included goldenmediadragoninc.com, *secretpennystocks.com, unrealstocks.com,* and *insanepicks.com.*

### Background

6.      Blast was incorporated as Medivisor, Inc., a medical communications company. On March 7, 2008, Medivisor filed a Form 10 for registration of securities under Section 12(g) of the Exchange Act, which it amended in April and July 2008 (collectively the "Form 10"). In the Form 10 Medivisor disclosed that its auditors expressed substantial doubt about the company's ability to continue as a going concern. Medivisor also reported that for the quarter ending March 31, 2008, it had an operating loss of $71,261 and its liabilities exceeded its assets by $98,021. In July 2009, Medivisor changed its name to Blast Applications, Inc. and changed its business classification from health and allied services to web solutions and marketing.

### Blast Transfers 18 Million Shares to OTC Solutions

7.      On or about February 15, 2008, Medivisor entered into a consulting agreement (the "Golden Gate Agreement") with Golden Gate Capital Partners ("Golden Gate") pursuant to which Golden Gate was to assist Medivisor by preparing "financial, operational and accounting reports and schedules as requested," referring the company to potential funding sources, and performing other tasks to be determined by the company. Under the Golden Gate Agreement,

3

Medivisor was obligated to pay Golden Gate a retainer fee of 500,000 shares of common stock plus an additional cash fee of $15,500. Medivisor further agreed to pay Golden Gate $240,000, payable in $10,000 monthly installments (plus expenses) during the 24-month term of the agreement, which was memorialized in a promissory note (the "Golden Gate Note") convertible into shares at par value.

8.      By letter dated October 14, 2009, Golden Gate notified Blast that it was in default of its obligations under the Golden Gate Note for failure to pay the balance due. The letter stated that the remedy for the default would be the conversion of $10,000 of the principal due into "free trading" shares of Blast common stock. Pursuant to a Notice of Acceptance and Conversion dated October 14, 2009, Blast agreed to transfer 25 million purportedly free trading shares of Blast common stock to Golden Gate.

9.      As part of the groundwork for the eventual promotion of Blast's stock, OTC Solutions signed a consulting agreement dated November 11, 2009 (the "OTC Consulting Agreement") with Golden Gate, whereby OTC Solutions agreed to provide business advisory, shareholder information and public relations services to Golden Gate in exchange for 18 million free trading shares of Blast Applications stock. The OTC Consulting Agreement stated that OTC would have the right to direct how the shares were to be issued. In a document dated the same day, Golden Gate instructed Blast and its transfer agent, Island Stock Transfer, to issue 18 million shares of purportedly free trading Blast stock to OTC Solutions.

### The Promotion

10.     From October 26, 2009 through November 19, 2009, Blast issued several press releases announcing purportedly positive news about the company. From November 18 through November 20, 2009, Blast's stock was also touted in newsletters controlled by OTC Solutions. Trading records also indicate that Thompson helped support the price of Blast's stock as the promotion began by engaging in manipulative trading to create an attractive pre-promotion price chart.

11.     Thompson's newsletters began touting Blast's stock based on the company's press releases concerning purported exciting business developments. For example, on November 18, 2009, one of Thompson's newsletters, ExplicitPicks.com, announced a "Blockbuster Pick Alert" on Blast. The newsletter referred to Blast as a "hidden gem" priced at $.0153 that "could be ready to make a power move." The newsletter referred to Blast's recent announcement that it had been accepted into the iPhone Developer Program to develop applications for sale through the Apple iTunes store and described Blast as "a premier creator and developer of applications for iPhone, Twitter and Facebook" that was entering "a market with off the charts potential." Referring to recent jumps in the price of stocks of other applications developers, the newsletter stated "we believe [Blast] is flying under the radar" and that "it has the ability to shock micro-cap investors with serious percentage gains."

4

12.    Later the same day, ExplicitPicks.com issued a newsletter announcing "BLAP on a tear – Blast Apps coiled up and ready to blast off!" The newsletter claimed that it had received e-mails from investors all over the world thanking it for its pick of Blast Applications and claimed that with the latest company news the stock could "potentially explode [from $0.0529 per share] towards $.10 or higher." The newsletter continued: "BLAP has got some serious buzz with the stock closing at $0.0529, an unbelievable first day gain of over 245% from yesterday's close and closing just off the highs of the day. Ladies and gentlemen BLAP traded over 294 million shares today, now that is some serious strength." The newsletter added:

> BLAP is one of the CHEAPEST picks our team has decided to release a pick on! Now investors see why we felt so comfortable with our pick on BLAP. Blast Applications had its BIGGEST volume day EVER today closing near the high of the day! If that isn't a Bullish indicator we don't know what it [sic]! We are extremely confident that BLAP will continue its move north!! BLAP is sitting on a beautiful support level and we believe there are amazing gains to be made here. Traders flock to volume and strength and BLAP has both!!!

13.    The newsletters distributed by Thompson, through OTC Solutions, contained disclaimers. Before the newsletters were disseminated, Thompson and his co-promoters discussed the misleading manner in which they would purport to disclose and disclaim their receipt of 18 million free trading shares as compensation for the Blast promotion.

At 4:17 p.m. on November 17, 2009, Van Nguyen sent the following email to Thompson:

> *I used some of your stuff in my newsletter. hope [sic] you don't mind :)*
> *Also, what should I put in the disclaimer for tomorrow AM?*
> *Expect to receive up to 500,000$ [sic] in cash from a Third Party?*
> *Let me know what you think.*

Thompson's reply was "*No put 6 mill shares I don't want to disclaim 18 mill.*" Van Nguyen replied: "*ok.*" Thompson's reference to "18 mill" corresponded to his receipt of shares in that amount from Golden Gate to run the promotion.

14.    The next day Van Nguyen sent Thompson the following email: "*Hi Anthony, In [sic] regards to BLAP stocks, please sell as you please on BLAP shares. I'll trust your judgment whatever you decide to do with the stocks in the upcoming days :) I'll try to connect with you as well during market hours.*"

Thompson replied: "*No problem man. I will try and get us as much as possible and whatever is made we split three ways evenly. Talk tomorrow man.*" [Id.]

15.    The November 18, 2009 newsletter distributed by Explicit Picks at 6:17 p.m. contained the following disclaimer:

5

"PLEASE NOTE WELL: the employees of Explicit Picks are not registered as Investment advisors in any jurisdiction whatsoever. Never invest in any stock featured on our site or e-mails unless you can afford to lose your entire investment. Investing in penny stocks is highly speculative."

16.     Thompson and OTC Solutions issued a second newsletter at 7:17 p.m. that contained a more comprehensive disclaimer than the 6:17 p.m. version. The text falsely stated that ExplicitPicks received only six million Blast shares as compensation for its "profile" of the company and falsely stated that it *may* sell its shares during the period in which it was performing such services. In reality, Thompson was actively selling the shares held by OTC Solutions into the promotion he had orchestrated. This disclaimer also stated: "To view our complete disclaimer please visit our entire disclaimer page."

17.     The disclaimer on Explicit Picks' web site, stated, among other things, that: Explicit Picks was not recommending or soliciting the purchase of any of the securities it profiled; its report was issued solely for informational purposes; and that investors should not rely solely on the information in its newsletters. In addition, the web site disclaimer stated:

ExplicitPicks.com owners may or may not hold positions in the companies that are profiled or be compensated by the companies profiled and therefore have a conflict of interest. Such owners *may* liquidate any securities of such profiled companies when they deem [it] appropriate to do so. Such liquidation may have a negative impact on the securities being liquidated. Such owners will not advise as to when it [sic] decides to sell and does not and will not offer any opinion as to when others should sell; each investor must make that decision based on his or her judgment of the market. (Emphasis added)

18.     The web disclaimer falsely disclosed that Explicit Picks had received six million free trading shares from a third party for a one month profile rather than the 18 million shares in fact received by OTC Solutions and Thompson for coordinating the promotion.

### Thompson's Manipulative Matched Trades

19.     The "beautiful support level" described in the November 18, 2009 Explicit Picks newsletter was in part artificially generated by Thompson's trading. As the Blast promotion got underway, there was a substantial sale of Blast stock that put downward pressure on the stock price. To counter this, Thompson engaged in matched trades with Patriot Holdings, an entity controlled by one of Thompson's business associates ("Patriot").

20.     At approximately 1:07 p.m. on November 17, 2009, the price of Blast's stock was $0.025 per share. At 2:17 p.m., there was a sale of 50,000 shares at $0.0153. In an apparent effort to counteract this downward price movement, Thompson, through OTC Solutions, began trading Blast stock. At 3:44 p.m., Thompson sold a block of 25,000 shares at $0.017 per share. Two minutes later Thompson sold another 25,000 shares at $0.0153. Patriot purchased 12,000

6

shares of this second 25,000 share block. At 3:48 p.m., OTC Solutions sold 50,000 shares to Patriot at $0.0153. At 3:59 p.m., OTC Solutions sold another 78,000 shares to Patriot at the same price. From 3:48 p.m. to 3:59 p.m. the only trades in Blast stock were between OTC Solutions and Patriot. These matched trades provided support for Blast's stock price as the promotion got underway.

21.    The Blast promotion did not proceed smoothly. Large sell orders during the promotion threatened the profitability of the scheme to dump their shares. Thompson's reaction to the large dumping of Blast shares revealed the purpose of the Blast "profiles" and Thompson's trading. On November 19, 2009, Van Nguyen sent an email to Thompson stating: *"[H]ey guys, looks like the company is going crazy on the offer. Can you tell me how many shares we sold? I think we should go aggressive just to make sure we are covered. thx."* Thompson replied as follows: *"I tried calling you. They are pounding it and have been jumping our broker =ll day. Do you want to just get out all together? We have sold 6 mill tota= out of 18mill. Has been a joke with nite selling like crazy. What do you =ant to do?"* Van Nguyen replied: *"[K]ill the market man. Go crazy and lets [sic] sell everything if we have to. [G]reedy bastards dont [sic] understand that we created the market. . . ."*

## The Impact of the Promotion on Blast's Stock Price

22.    On November 18, 2009, the closing price of Blast's stock jumped to $0.0528 from $0.0153 the day before. Volume skyrocketed from 1,420,481 shares on November 17, 2009 to 29,405,456 on November 18, 2009. Five days after Thompson's promotional campaign ended, Blast's stock closed at $0.017 per share on trading volume of 720,736 shares. By November 27, 2009, trading volume was 657,213 shares and the closing price was $0.0165 per share.

23.    OTC Solutions sold 18 million shares of Blast stock between November 17, 2009 and November 24, 2009, generating proceeds of $556,126.68, which Thompson shared with Jay Fung, and Eric Van Nguyen, stock promoters who helped him promote Blast's stock through their own newsletters. Thompson, Van Nguyen and Fung agreed to divide the proceeds evenly. Thompson's one third share was approximately $185,375.56.

## Violations

24.    As a result of the conduct described above, Thompson willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit fraudulent conduct in the offer or sale of securities and in connection with the purchase or sale of securities, and Section 17(b) of Securities Act, which makes it unlawful for any person to publicize a security for sale, for a consideration received or to be received, directly or indirectly, from an issuer, underwriter or dealer, without fully disclosing the receipt of such consideration and the amount thereof.

## IV.

On the basis of the foregoing, Thompson hereby consents to the entry of an Order by the Commission imposing the following sanctions pursuant to Section 8A of the Securities Act, Sections 15(b) and 21C of the Exchange Act, and Section 9(b) of the Investment Company Act:

A.     Thompson shall cease and desist from committing or causing any violations and any future violations of Sections 17(a) and 17(b) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B.     Thompson be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and

> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter.

C.     Any reapplication for association by Thompson will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following: (a) any disgorgement ordered against Thompson, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission order.

D.     Thompson shall, within three business days of the entry of this Order, pay disgorgement of $185,375.56 and prejudgment interest of $24,746.62 to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

E.     Thompson shall, within three business days of the entry of this Order, pay a civil money penalty in the amount of $175,000 to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. 3717.

F.     Payment must be made in one of the following ways:

(1) Thompson may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

8

(2) Thompson may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Thompson may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> HQ Bldg., Room 181, AMZ-341
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Thompson as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Robert J. Keyes, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 3 World Financial Center, Rm. 400, New York, N.Y. 10281-1022.

      G.     Such civil money penalty may be distributed pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended ("Fair Fund distribution"). Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Thompson agrees that in any Related Investor Action, he shall not argue that he is entitled to, nor shall he benefit by, offset or reduction of any award of compensatory damages by the amount of any part of his payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Thompson agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

<h3 style="text-align:center">V.</h3>

      By submitting this Offer, Respondent hereby acknowledges his waiver of those rights specified in Rules 240(c)(4) and (5) [17 C.F.R. §201.240(c)(4) and (5)] of the Commission's Rules of Practice. Respondent also hereby waives service of the Order.

9

## VI.

Thompson understands and agrees to comply with the terms of 17 C.F.R § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of Thompson's agreement to comply with the terms of Section 202.5(e), Thompson: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any finding in the Order or creating the impression that the Order is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Thompson does not admit the findings of the Order, or that the Offer contains no admission of the findings, without also stating that Thompson does not deny the findings; and (iii) upon the filing of this Offer of Settlement, Thompson hereby withdraws any papers previously filed in this proceeding to the extent that they deny, directly or indirectly, any finding in the Order. If Thompson breaches this agreement, the Division of Enforcement may petition the Commission to vacate the Order. Nothing in this provision affects Respondent's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

## VII.

Consistent with the provisions of 17 C.F.R. § 202.5(f), Respondent waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.

## VIII.

Respondent hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Respondent to defend against this action. For these purposes, Respondent agrees that Respondent is not the prevailing party in this action since the parties have reached a good faith settlement.

## IX.

Thompson agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source including, but not limited to, payment made pursuant to any insurance policy, with regard to any penalty amounts that he shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Thompson further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state or local tax for any penalty amounts that he shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

## X.

    Thompson and OTC Solutions state that they have read and understand the foregoing Offer, that this Offer is made voluntarily, and that no promises, offers, threats, or inducements of any kind or nature whatsoever have been made by the Commission or any member, officer, employee, agent, or representative of the Commission in consideration of this Offer or otherwise to induce him to submit to this Offer.

\_\_\_\_ Day of _____, 2014         _____

                                          Anthony J. Thompson, Jr.

**STATE OF MARYLAND**      }

                                 }     **SS:**

**COUNTY OF MONTGOMERY**  }

    The foregoing instrument was acknowledged before me this \_\_\_day of _____, 2014, by Anthony J. Thompson, Jr., who \_\_\_is personally known to me or \_\_\_who has produced a Maryland driver's license as identification and who did take an oath.

_____

Notary Public
State of Maryland
Commission Number       :
Commission Expiration    :

11

# EXHIBIT 31



CLARK W. SESSIONS
RODNEY G. SNOW
STEVEN E. CLYDE
EDWIN C. BARNES
NEIL A. KAPLAN
D. BRENT ROSE
CHARLES R. BROWN
J. SCOTT HUNTER
PERRIN R. LOVE
DEAN C. ANDREASEN
ANNELI R. SMITH
WALTER A. ROMNEY, JR.
MATTHEW A. STEWARD
T. MICKELL JIMENEZ
JENNIFER A. JAMES
CHRISTOPHER B. SNOW
BRENT R. BAKER
D. LOREN WASHBURN
AARON D. LEBENTA
MARK E. SMITH
WAYNE Z. BENNETT
BRIAN C. WEBBER
BRIAN A. LEBRECHT

ROBERT D. ANDREASEN
KATHERINE E. JUDD
DIANA L. TELFER
JONATHAN S. CLYDE
SHANNON K. ZOLLINGER
TIMOTHY R. PACK
TAYLOR L. FONNESBECK
NICOLE SALAZAR HALL
LAUREN A. MCGEE

NATHAN B. WILCOX
BRADWICK B. DESMOND
EDWARD W. CLYDE (1917-1991)

June 6, 2014

**Via Federal Express**

Peter Pizzani
Securities and Exchange Commission
3 World Financial Center
New York, New York 10281

        Re:    *In the Matter of Anthony J. Thompson, Jr.*
                File No.: 320115-001005

Dear Mr. Pizzani:

Enclosed with this letter is the *original* signed Offer of Settlement of Anthony J. Thompson, Jr. If you need additional information or have any questions, please do not hesitate to contact our office.

Thank you,

CLYDE SNOW & SESSIONS

Angalee Trujillo
Legal Assistant to Brent R. Baker

w/enclosure

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

ADMINISTRATIVE PROCEEDING
File No.

| | |
|---|---|
| In the Matter of | : |
| | : |
| ANTHONY J. THOMPSON, JR. and | : |
| JAY FUNG | : |
| | : |
| Respondents. | : |
| | : |

OFFER OF SETTLEMENT OF
ANTHONY J. THOMPSON, JR.

I.

Anthony J. Thompson, Jr. ("Thompson" or "Respondent"), pursuant to Rule 240(a) of the Rules of Practice of the Securities and Exchange Commission ("Commission") [17 C.F.R. § 201.240(a)] submits this Offer of Settlement ("Offer") in anticipation of public administrative and cease-and-desist proceedings to be instituted against him by the Commission, pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), Sections 15(b), and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act").

II.

This Offer is submitted solely for the purpose of settling these proceedings, with the express understanding that it will not be used in any way in these or any other proceedings, unless the Offer is accepted by the Commission. If the Offer is not accepted by the Commission, the Offer is withdrawn without prejudice to Respondent and shall not become a part of the record in these or any other proceedings, except for the waiver expressed in Section V with respect to Rule 240(c)(5) of the Commission's Rules of Practice [17 C.F.R. § 201.240(c)(5)].

III.

On the basis of the foregoing, the Respondent hereby:

A.    Admits the jurisdiction of the Commission over him and over the matters set forth in the Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act, Sections 15(b) and 21C of the Exchange Act, and Section 9(b) of the Investment Company Act, Making Findings, and Imposing Remedial Sanctions and Cease-and-Desist Orders ("Order");

B.      Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission or in which the Commission is a party prior to a hearing pursuant to the Commission's Rules of Practice, 17 C.F.R. § 201.100 et seq., and without admitting or denying the findings contained in the Order, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, which are admitted, consents to the entry of an Order by the Commission containing the following findings[1] set forth below:

## Summary

These proceedings arise out of the 2009 pump-and-dump manipulation of the stock price of Blast Applications, Inc. ("Blast"). Thompson entered into an agreement with Jay Fung ("Fung") and others to promote Blast's stock. Fung agreed to use *PennyPic.com* ("*PennyPic*"), an electronic newsletter he controlled through his company, Pudong, LLC ("Pudong"), to promote Blast's stock. Thompson's company, OTC Solutions, LLC ("OTC Solutions") received 18 million free trading shares to promote Blast's stock in its electronic newsletters. Thompson, through OTC Solutions, sold the 18 million shares of stock for proceeds of over $556,000 while Thompson, Fung, and other promoters ran a successful campaign to promote Blast's stock. Fung and his company, Pudong, failed to disclose that Thompson and OTC Solutions received 18 million shares of Blast stock as compensation for promoting Blast or that Thompson planned to sell the shares during the promotion and divide the cash proceeds with other promoters that were coordinating a promotion of Blast stock, including Fung. Thompson and OTC Solutions failed to disclose the full amount of the shares they received as compensation for promoting Blast or that they were dumping the shares while promoting the stock. Thompson also engaged in matched trades to help support the price of Blast's stock as part of the promotion.

## Respondents

1.      **Thompson**, age 38, of Bethesda, Maryland, was a penny stock promoter and was the Managing Director and sole owner of OTC Solutions. Thompson held the Series 7, 63, and 65 licenses, but has not been associated with a registered broker-dealer since 2007. In 2012, the Commission filed a complaint against Thompson, Fung, OTC Solutions, Pudong and others in the United States District Court for the Southern District of Florida (the "Recycle Tech Litigation") alleging that Thompson, Fung, OTC Solutions, and Pudong participated in a "pump-and-dump" scheme by promoting the stock of Recycle Tech, Inc. In February 2014, without admitting or denying the allegations in the Commission's compliant, Thompson consented to the entry of a judgment against him in the Recycle Tech Litigation that enjoined him from violating Sections 5(a),

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

2

5(c), and 17 (a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The judgment also ordered Thompson to pay to the Commission $373,239.76 in disgorgement and prejudgment interest, for which he was jointly and severally liable with OTC Solutions, plus a civil penalty of $120,000.00. The judgment further barred Thompson from participating in an offering of penny stock.

2.  **Fung**, age 40, of Delray Beach, Florida, is a penny stock promoter who controlled Pudong. In February 2014, without admitting or denying the allegations in the Commission's compliant, Fung consented to the entry of a judgment against him in the Recycle Tech Litigation that enjoined him from violating Sections 5(a), 5(c), and 17 (a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The judgment also ordered Fung to pay to the Commission $487,455.36 in disgorgement and prejudgment interest, for which he was jointly and severally liable with Pudong, plus a civil penalty of $120,000.00. The judgment further barred Fung from participating in an offering of penny stock.

### Other Relevant Entities

3.  **Blast** is a Delaware corporation formerly known as Medivisor, Inc., with its principal executive offices in Plainview, New York. In July 2009, Medivisor changed its name to Blast Applications, Inc. In many of its press releases the company described itself as "a premier creator and developer of applications for iPhone, iPad, Facebook, Twitter, and Android." Blast's common stock was registered pursuant to Section 12(g) of the Exchange Act and is quoted on OTC Link (formerly the "Pink Sheets") under the symbol BLAP.

4.  **OTC Solutions** is a now defunct Maryland limited liability company located in Bethesda, Maryland. At the time of the events described herein, OTC Solutions published and distributed, via email and website postings, newsletters that promoted penny stocks, including *freepennyalerts.com, premierepennystocks.com, explicitpicks.com, oxofwallstreet.com, and explicitpennypicks.com.* The newsletters purported to offer unbiased recommendations on penny stocks that it identified as likely to increase in price based upon recent events, such as a new contract or product.

5.  **Pudong** is a now-defunct Florida limited liability company that was located in Boca Raton, Florida. Pudong distributed stock promotion newsletters, including *PennyPic.*

### Background

6.  Blast was originally incorporated as Medivisor, Inc., a medical communications company. On March 7, 2008, Medivisor filed a Form 10 for registration of securities under Section 12(g) of the Exchange Act, which it amended in April and July 2008 (collectively the "Form 10"). Its registration became effective on or about May 6, 2008. In the Form 10, Medivisor disclosed that its auditors expressed substantial doubt about the company's ability to continue as a going concern. Medivisor also reported that for the quarter ending March 31, 2008, it had an operating loss of $71,261 and its liabilities exceeded its assets by $98,021. In

3

July 2009, Medivisor changed its name to Blast Applications, Inc. and changed its business classification from health and allied services to web solutions and marketing. Thereafter, although it filed three Forms 8-K, Blast never filed any periodic reports pursuant to its reporting obligations under Section 13(a) of the Exchange Act. On November 12, 2009, Blast filed a Form 15 claiming it was eligible for voluntary deregistration based on Rule 12g-4(a)(1).

### Blast Transfers 18 Million Shares to OTC Solutions

7.      On or about February 15, 2008, when Blast was known as Medivisor, it entered into a consulting agreement (the "Medivisor Consulting Agreement") with a consultant (the "Medivisor Consultant") pursuant to which the Medivisor Consultant was to assist Medivisor by preparing "financial, operational and accounting reports and schedules as requested," referring the company to potential funding sources, and performing other tasks to be determined by the company. Under the Medivisor Consulting Agreement, Medivisor was obligated to pay the Medivisor Consultant a retainer fee of 500,000 shares of common stock plus an additional cash fee of $15,500. Medivisor further agreed to pay the Medivisor Consultant $240,000, payable in $10,000 monthly installments (plus expenses) during the 24-month term of the agreement, which was memorialized in a promissory note (the "Medivisor Note") convertible into shares at par value.

8.      Blast purportedly failed to make the required payments to the Medivisor Consultant. By letter dated October 14, 2009, the Medivisor Consultant notified Blast that it was in default of its obligations under the Medivisor Note for failure to pay the balance due. The letter stated that the remedy for the default would be the conversion of $10,000 of the principal due into "free trading" shares of Blast common stock at a conversion price of $.0004 per share. Pursuant to a Notice of Acceptance and Conversion dated October 14, 2009, Blast agreed to transfer 25 million purportedly free trading shares of Blast common stock to the Medivisor Consultant.

9.      As part of the groundwork for the eventual promotion of Blast's stock, OTC Solutions signed a consulting agreement dated November 11, 2009 (the "OTC Consulting Agreement") with the Medivisor Consultant, whereby OTC Solutions agreed to provide business advisory, shareholder information and public relations services to the Medivisor Consultant in exchange for 18 million free trading shares of Blast stock. The OTC Consulting Agreement stated that OTC would have the right to direct how the shares were to be issued. In a document dated the same day, the Medivisor Consultant instructed Blast and its transfer agent to issue 18 million shares of purportedly free trading Blast stock to OTC Solutions.

### The Promotion

10.      From October 26, 2009 through November 19, 2009, Blast issued several press releases announcing purportedly positive news about the company. From November 18 through November 20, 2009, Blast's stock was also touted in newsletters controlled by OTC Solutions and Pudong. Trading records also indicate that Thompson helped support the price of Blast's

4

stock as the promotion began by engaging in manipulative trading to create an attractive pre-promotion price chart.

11.     Thompson's newsletters began touting Blast's stock based on the company's press releases concerning purported exciting business developments.  For example, on November 18, 2009, one of Thompson's newsletters, *ExplicitPicks.com*, announced a "Blockbuster Pick Alert" on Blast.  The newsletter referred to Blast as a "hidden gem" priced at $.0153 that "could be ready to make a power move."  The newsletter referred to Blast's recent announcement that it had been accepted into the iPhone Developer Program to develop applications for sale through the Apple iTunes store and described Blast as "a premier creator and developer of applications for iPhone, Twitter and Facebook" that was entering "a market with off the charts potential."  Referring to recent jumps in the price of stocks of other applications developers, the newsletter stated "we believe [Blast] is flying under the radar" and that "it has the ability to shock micro-cap investors with serious percentage gains."

12.     Later the same day*, ExplicitPicks.com* issued a newsletter announcing "BLAP on a tear – Blast Apps coiled up and ready to blast off!"  The newsletter claimed that it had received e-mails from investors all over the world thanking it for its pick of Blast Applications and claimed that with the latest company news the stock could "potentially explode [from $0.0529 per share] towards $.10 or higher."  The newsletter continued: "BLAP has got some serious buzz with the stock closing at $0.0529, an unbelievable first day gain of over 245% from yesterday's close and closing just off the highs of the day.  Ladies and gentlemen BLAP traded over 294 million shares today, now that is some serious strength."  The newsletter added:

> BLAP is one of the CHEAPEST picks our team has decided to release a pick on!  Now investors see why we felt so comfortable with our pick on BLAP. Blast Applications had its BIGGEST volume day EVER today closing near the high of the day!  If that isn't a Bullish indicator we don't know what it [sic]!

> We are extremely confident that BLAP will continue its move north!! BLAP is sitting on a beautiful support level and we believe there are amazing gains to be made here. Traders flock to volume and strength and BLAP has both!!!

13.     Pudong's *PennyPic* also touted Blast's stock based on the company's press releases.  For example, on November 18, 2009, *Penny Pic* announced a "Special Alert" on Blast. *PennyPic* stated: "Give[n] the news BLAP recently announced, the company appears to be an undiscovered gold mine."  *PennyPic* claimed that Blast could be a "ground floor opportunity" that "could see 100% - 200% gains very quickly."  *PennyPic* described Blast as "a premier creator and developer of applications for iPhone, Twitter and Facebook" that could see gains very fast as they are now developing applications to be sold through the Apple iTunes App store!"  *PennyPic* further stated: "BLAP's first iPhone/iTouch application could make the company trade off the charts once it is released."

5

14.     The newsletters distributed by Thompson and Fung, through their companies, contained disclaimers.  Before the newsletters were disseminated, Thompson and one of the other promoters exchanged emails in which they discussed the manner in which they would purport to disclose and disclaim their compensation for the Blast promotion.

On November 17, 2009, one of the other promoters sent the following email to Thompson:

> I used some of your stuff in my newsletter. hope [sic] you don't mind :)
> Also, what should I put in the disclaimer for tomorrow AM?
> Expect to receive up to 500,000$ [sic] in cash from a Third Party?
> Let me know what you think.

Thompson's reply was "*No put 6 mill shares I don't want to disclaim 18 mill.*"  The other promoter replied: "*ok.*"  Thompson's reference to "18 mill" corresponded to his receipt of shares in that amount from the Medivisor Consultant to run the promotion.

15.     The next day, the same promoter sent Thompson the following email: "*Hi Anthony, In [sic] regards to BLAP stocks, please sell as you please on BLAP shares. I'll trust your judgment whatever you decide to do with the stocks in the upcoming days :) I'll try to connect with you as well during market hours.*"

Thompson replied: "*No problem man. I will try and get us as much as possible and whatever is made we split three ways evenly.  Talk tomorrow man.*" *[Id.]*

16.     A November 18, 2009 newsletter distributed by *Explicit Picks* contained the following disclaimer:

> "PLEASE NOTE WELL: the employees of Explicit Picks are not registered as Investment advisors in any jurisdiction whatsoever.  Never invest in any stock featured on our site or e-mails unless you can afford to lose your entire investment. Investing in penny stocks is highly speculative."

17.     The November 18, 2009 newsletter also contained a more comprehensive disclaimer that falsely stated that *ExplicitPicks* received only six million Blast shares as compensation for its "profile" of the company and falsely stated that it *may* sell its shares during the period in which it was performing such services. In reality, Thompson was actively selling the shares held by OTC Solutions into the promotion he had orchestrated.  This disclaimer also stated: "To view our complete disclaimer please visit our entire disclaimer page."

18.     The disclaimer on *Explicit Picks*' web site, stated, among other things, that *Explicit Picks* was not recommending or soliciting the purchase of any of the securities it profiled; its report was issued solely for informational purposes; and that investors should not rely solely on the information in its newsletters.  In addition, the web site disclaimer stated:

ExplicitPicks.com owners may or may not hold positions in the companies that are profiled or be compensated by the companies profiled and therefore have a conflict of interest. Such owners *may* liquidate any securities of such profiled companies when they deem [it] appropriate to do so. Such liquidation may have a negative impact on the securities being liquidated. Such owners will not advise as to when it [sic] decides to sell and does not and will not offer any opinion as to when others should sell; each investor must make that decision based on his or her judgment of the market. (Emphasis added)

19.     The web disclaimer falsely disclosed that *Explicit Picks* had received six million free trading shares from a third party for a one month profile rather than the 18 million shares in fact received by OTC Solutions and Thompson for coordinating the promotion.

20.     Pudong's November 18, 2009 *PennyPic* newsletter contained the following disclaimer:

Please be advised that Pennypic.com is often compensated for issuing press release [sic], profiles or opinions concerning particular companies. Its opinion is therefore not unbiased and you should consider this factor when evaluating Pennypic.com's statements regarding a company. Pennypic.com's officers and directors reserve the right to buy additional shares of the company discussed in this opinion and may profit in the event those shares rise in value. When Pennypic.com receives free trading shares as compensation for a profiled company, Pennypic.com may sell part or all of any such shares during the period in which Pennypic.com is performing such services. Pennypic.com will also disclose any compensation. Pennypic received six million free trading shares of Blast Application from a third party non affiliate for advertising.

21.     Contrary to the statements in the disclaimer, *PennyPic* never received any shares of Blast stock. The disclaimer failed to disclose that Fung, who controlled *PennyPic*, was one of three stock promoters engaged in a coordinated effort to tout Blast in exchange for 18 million shares of the company's stock. The *Pennypic* newsletter also failed to disclose that Fung, Thompson, and another promoter planned to sell the 18 million shares as they promoted Blast to generate the cash that would be paid to Fung for his role in the promotion.

### Thompson's Manipulative Matched Trades

22.     The "beautiful support level" described in the November 18, 2009 *Explicit Picks* newsletter was in part artificially generated by Thompson's trading. As the Blast promotion got underway, there was a substantial sale of Blast stock that put downward pressure on the stock price. To counter this, Thompson engaged in matched trades with an entity controlled by one of Thompson's business associates (the "Blast Trader").

7

23.     At approximately 1:07 p.m. on November 17, 2009, the price of Blast's stock was $0.025 per share. At 2:17 p.m., there was a sale of 50,000 shares at $0.0153. In an apparent effort to counteract this downward price movement, Thompson, through OTC Solutions, began trading Blast stock. At 3:44 p.m., Thompson sold a block of 25,000 shares at $0.017 per share. Two minutes later Thompson sold another 25,000 shares at $0.0153. The Blast Trader purchased 12,000 shares of this second 25,000 share block. At 3:48 p.m., OTC Solutions sold 50,000 shares to the Blast Trader at $0.0153. At 3:59 p.m., OTC Solutions sold another 78,000 shares to the Blast Trader at the same price. From 3:48 p.m. to 3:59 p.m. the only trades in Blast stock were between OTC Solutions and the Blast Trader. These matched trades provided support for Blast's stock price as the promotion got underway.

24.     The Blast promotion did not proceed smoothly. Large sell orders during the promotion threatened the profitability of the scheme to dump their shares. Thompson's reaction to the large dumping of Blast shares revealed the purpose of Blast "profiles" and Thompson's trading. On November 19, 2009, one of the promoters sent an email to Thompson stating: *"[H]ey guys, looks like the company is going crazy on the offer. Can you tell me how many shares we sold? I think we should go aggressive just to make sure we are covered. thx."* Thompson replied as follows: *"I tried calling you. They are pounding it and have been jumping our broker =ll [sic] day. Do you want to just get out all together? We have sold 6 mill tota= [sic] out of 18mill. Has been a joke with nite selling like crazy. What do you =ant [sic] to do?"* The other promoter replied: *"[K]ill the market man. Go crazy and lets [sic] sell everything if we have to. [G]reedy bastards dont [sic] understand that we created the market. . . ."*

### The Impact of the Promotion on Blast's Stock Price

25.     On November 18, 2009, the closing price of Blast's stock jumped to $0.0528 from $0.0153 the day before. Volume skyrocketed from 1,420,481 shares on November 17, 2009 to 29,405,456 on November 18, 2009. Five days after Thompson's promotional campaign ended, Blast's stock closed at $0.017 per share on trading volume of 720,736 shares. By November 27, 2009, trading volume was 657,213 shares and the closing price was $0.0165 per share.

26.     OTC Solutions sold 18 million shares of Blast stock between November 17, 2009 and November 24, 2009, generating proceeds of $556,126.68, which Thompson shared with Fung and another promoter who helped him promote Blast's stock through their own newsletters. Thompson share was approximately $185,375.56. Fung received $181,000.

27.     As a result of the conduct described above, Thompson and Fung willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibit fraudulent conduct in the offer or sale of securities and in connection with the purchase or sale of securities, and willfully violated Section 17(b) of Securities Act, which makes it unlawful for any person to publish any communication that describes a security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter or dealer, without fully disclosing the receipt of such consideration and the amount thereof.

8

## IV.

On the basis of the foregoing, Respondent hereby consents to the entry of an Order by the Commission imposing the following sanctions pursuant to Section 8A of the Securities Act, Sections 15(b) and 21C of the Exchange Act, and Section 9(b) of the Investment Company Act:

A.      Respondent Thompson shall cease and desist from committing or causing any violations and any future violations of Sections 17(a) and 17(b) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B.      Respondent Thompson be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and

> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter.

C.      Any reapplication for association by Respondent will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following: (a) any disgorgement ordered against Respondent, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission order.

D.      Respondent shall, within three business days of the entry of this Order, pay disgorgement of $185,375.56 and prejudgment interest of $24,746.62, for a total of $210,122.18, to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600. Payment must be made in one of the following ways:

> (1) Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

> (2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Thompson as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Thomas P. Smith, Jr., Assistant Regional Director, Division of Enforcement, Securities and Exchange Commission, Brookfield Place, 200 Vesey Street, Room 400, New York, N.Y. 10281-1022.

E.       Respondent shall, within three business days of the entry of this Order, pay a civil money penalty in the amount of $175,000 to the United States Treasury.  If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. 3717.

F.       Payment must be made in one of the following ways:

(1) Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Thompson as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Thomas P. Smith, Jr., Assistant Regional Director, Division of Enforcement, Securities and Exchange Commission, Brookfield Place, 200 Vesey Street, Room 400, New York, N.Y. 10281-1022.

G.    Such civil money penalty may be distributed pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended ("Fair Fund distribution"). Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, he shall not argue that he is entitled to, nor shall he benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

## V.

By submitting this Offer, Respondent hereby acknowledges his waiver of those rights specified in Rules 240(c)(4) and (5) [17 C.F.R. §201.240(c)(4) and (5)] of the Commission's Rules of Practice. Respondent also hereby waives service of the Order.

## VI.

Respondent understands and agrees to comply with the terms of 17 C.F.R § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of Respondent's agreement to comply with the terms of Section 202.5(e), Respondent: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any finding in the Order or creating the impression that the Order is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Respondent does not admit the findings of the Order, or that the Offer contains no admission of the findings, without also stating that Respondent does not deny the findings; and (iii) upon the filing of this Offer of Settlement, Respondent hereby withdraws any papers previously filed in this proceeding to the extent that they deny, directly or indirectly, any finding in the Order. If Respondent breaches this agreement, the Division of Enforcement may petition the Commission to vacate the Order. Nothing in this provision affects Respondent's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

11

## VII.

Consistent with the provisions of 17 C.F.R. § 202.5(f), Respondent waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.

## VIII.

Respondent hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Respondent to defend against this action. For these purposes, Respondent agrees that Respondent is not the prevailing party in this action since the parties have reached a good faith settlement.

## IX.

Respondent agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source including, but not limited to, payment made pursuant to any insurance policy, with regard to any penalty amounts that Respondent shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Respondent further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state or local tax for any penalty amounts that he shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

## X.

Respondent states that he has read and understands the foregoing Offer, that this Offer is made voluntarily, and that no promises, offers, threats, or inducements of any kind or nature whatsoever have been made by the Commission or any member, officer, employee, agent, or representative of the Commission in consideration of this Offer or otherwise to induce him to submit to this Offer.

30 Day of _____May_____, 2014

_____
Anthony J. Thompson, Jr.

**STATE OF MARYLAND** }

} SS:

**COUNTY OF MONTGOMERY** }

The foregoing instrument was acknowledged before me this 3 day of ___May___, 2014, by Anthony J. Thompson, Jr. who ___is personally known to me or ___who has produced a Maryland driver's license as identification and who did take an oath.

_____
Notary Public
State of Maryland
Commission Number      :
Commission Expiration   :

13

# EXHIBIT 32



**U.S. Securities and Exchange Commission**

**brb@clydesnow.com**

| | |
|---|---|
| **Received:** | Jul 16, 2014 10:27 AM |
| **Expires:** | Oct 14, 2014 10:27 AM |
| **From:** | pizzanip@sec.gov |
| **To:** | brb@clydesnow.com |
| **Cc:** | |
| **Subject:** | FW: smail Blast -Thompson offer of settlement |

Brent,

You told us that Mr. Thompson would be willing to help us with this investigation.  Will Anthony Thompson provide us with documents showing that Eric Van Nguyen received proceeds from the Blast promotion?

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147


-----Original Message-----
From: Pizzani, Peter A.
Sent: Wednesday, July 16, 2014 10:44 AM
To: 'brb@clydesnow.com'
Subject: RE: smail Blast -Thompson offer of settlement

Will do.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147


-----Original Message-----
From: brb@clydesnow.com [mailto:brb@clydesnow.com]
Sent: Wednesday, July 16, 2014 10:44 AM
To: Pizzani, Peter A.
Subject: RE: smail Blast -Thompson offer of settlement

Thanks.  I understand that you can't provide any specific information.  I am hearing from other offices in the Commission about approval of settlements in other matters and I thought I might just inquire.  Let me know if you need any additional information.

Thanks,

Brent

--- Originally sent by pizzanip@sec.gov on Jul 16, 2014 8:40 AM --- I do not have anything specific I can share with you.  It is being moved along.  As you know, things were delayed because we were waiting for the other offer.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division

| New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: brb@clydesnow.com [mailto:brb@clydesnow.com]
Sent: Wednesday, July 16, 2014 10:29 AM
To: Pizzani, Peter A.
Subject: RE: smail Blast -Thompson offer of settlement

Peter:

I left you a voice message yesterday so I assume you are out or busy.  I am just checking in to see
if you have any idea when this might get in the queue to be approved by the Commission. My client
in anxious to finalize the settlement with the Commission and put this matter behind him.

Thanks,

Brent

--- Originally sent by pizzanip@sec.gov on Jun 6, 2014 9:23 AM --- Brent,

I have attached the revised offer of settlement containing the change to paragraph 14 and a copy of
the draft order.  Please send us the signed offer as soon as you can.

Thank you.


Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division
| New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: brb@clydesnow.com [mailto:brb@clydesnow.com]
Sent: Wednesday, June 04, 2014 6:20 PM
To: Pizzani, Peter A.
Subject: RE: smail Blast -Thompson offer of settlement

Peter:

The change is fine.  I just received via Fedex the signed original from Mr. Thompson.  Please email
me a new page with the changes to paragraph 14 and I will send it back to you as part of the
executed Offer of Settlement, since Mr. Thompson authorized the change already.

Regards,

Brent

--- Originally sent by pizzanip@sec.gov on May 30, 2014 4:40 PM --- Brent,

I writing to let know that we have made a minor change in the language of the offers and order at
the request of Fung's attorney.  We revised paragraph 14 as follows:


14.       The newsletters distributed by Thompson and Fung, through their companies, contained
disclaimers.  Before the newsletters were disseminated, Thompson and one of the other promoters

exchanged emails in which they discussed the manner in which they would purport to disclose and disclaim their compensation for the Blast promotion.

On November 17, 2009, one of the other promoters sent the following email to Thompson:

I used some of your stuff in my newsletter. hope [sic] you don't mind :)

Also, what should I put in the disclaimer for tomorrow AM?

Expect to receive up to 500,000$ [sic] in cash from a Third Party?

Let me know what you think.

Thompson's reply was "No put 6 mill shares I don't want to disclaim 18 mill." The other promoter replied: "ok." Thompson's reference to "18 mill" corresponded to his receipt of shares in that amount from the Medivisor Consultant to run the promotion.

Please get back to us as soon as you can concerning the revised offer. Thank you.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

-----------------------------------------------------------------
This message was secured by ZixCorp(R).

-----------------------------------------------------------------
This message was secured by ZixCorp(R).
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

-----------------------------------------------------------
This message was secured by ZixCorp(R).

-----------------------------------------------------------
This message was secured by ZixCorp(R).
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

-----------------------------------------------------------
This message was secured by ZixCorp(R).

-----------------------------------------------------------
This message was secured by ZixCorp(R).
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

-----------------------------------------------------------
This message was secured by ZixCorp(R).

secured by ZixCorp



**U.S. Securities and Exchange Commission**

brb@clydesnow.com

| | |
|---|---|
| **Received:** | Jul 16, 2014 10:51 AM |
| **Expires:** | Oct 14, 2014 10:51 AM |
| **From:** | pizzanip@sec.gov |
| **To:** | brb@clydesnow.com |
| **Cc:** | |
| **Subject:** | FW: smail Blast -Thompson offer of settlement |

Clarification. We have wire transfers. What I am looking for is anything else that would confirm that those transfers were related to the Blast promotion.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: Pizzani, Peter A.
Sent: Wednesday, July 16, 2014 12:27 PM
To: 'Brent R. Baker (brb@clydesnow.com)'
Subject: FW: smail Blast -Thompson offer of settlement

Brent,

You told us that Mr. Thompson would be willing to help us with this investigation. Will Anthony Thompson provide us with documents showing that Eric Van Nguyen received proceeds from the Blast promotion?

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: Pizzani, Peter A.
Sent: Wednesday, July 16, 2014 10:44 AM
To: 'brb@clydesnow.com'
Subject: RE: smail Blast -Thompson offer of settlement

Will do.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: brb@clydesnow.com [mailto:brb@clydesnow.com]
Sent: Wednesday, July 16, 2014 10:44 AM
To: Pizzani, Peter A.
Subject: RE: smail Blast -Thompson offer of settlement

Thanks. I understand that you can't provide any specific information. I am hearing from other offices in the Commission about approval of settlements in other matters and I thought I might just inquire. Let me know if you need any additional information.

Thanks,

Brent

--- Originally sent by pizzanip@sec.gov on Jul 16, 2014 8:40 AM --- I do not have anything specific I can share with you. It is being moved along. As you know, things were delayed because we were waiting for the other offer.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: brb@clydesnow.com [mailto:brb@clydesnow.com]
Sent: Wednesday, July 16, 2014 10:29 AM
To: Pizzani, Peter A.
Subject: RE: smail Blast -Thompson offer of settlement

Peter:

I left you a voice message yesterday so I assume you are out or busy. I am just checking in to see if you have any idea when this might get in the queue to be approved by the Commission. My client in anxious to finalize the settlement with the Commission and put this matter behind him.

Thanks,

Brent

--- Originally sent by pizzanip@sec.gov on Jun 6, 2014 9:23 AM --- Brent,

I have attached the revised offer of settlement containing the change to paragraph 14 and a copy of the draft order. Please send us the signed offer as soon as you can.

Thank you.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

-----Original Message-----
From: brb@clydesnow.com [mailto:brb@clydesnow.com]
Sent: Wednesday, June 04, 2014 6:20 PM
To: Pizzani, Peter A.
Subject: RE: smail Blast -Thompson offer of settlement

Peter:

The change is fine. I just received via Fedex the signed original from Mr. Thompson. Please email me a new page with the changes to paragraph 14 and I will send it back to you as part of the executed Offer of Settlement, since Mr. Thompson authorized the change already.

Regards,

Brent

--- Originally sent by pizzanip@sec.gov on May 30, 2014 4:40 PM --- Brent,

I writing to let know that we have made a minor change in the language of the offers and order at the request of Fung's attorney. We revised paragraph 14 as follows:


14.      The newsletters distributed by Thompson and Fung, through their companies, contained disclaimers. Before the newsletters were disseminated, Thompson and one of the other promoters exchanged emails in which they discussed the manner in which they would purport to disclose and disclaim their compensation for the Blast promotion.


On November 17, 2009, one of the other promoters sent the following email to Thompson:


I used some of your stuff in my newsletter. hope [sic] you don't mind :)

Also, what should I put in the disclaimer for tomorrow AM?

Expect to receive up to 500,000$ [sic] in cash from a Third Party?

Let me know what you think.


Thompson's reply was "No put 6 mill shares I don't want to disclaim 18 mill." The other promoter replied: "ok." Thompson's reference to "18 mill" corresponded to his receipt of shares in that amount from the Medivisor Consultant to run the promotion.

Please get back to us as soon as you can concerning the revised offer. Thank you.

Peter Pizzani | Senior Attorney | U.S. Securities and Exchange Commission | Enforcement Division | New York Regional Office | 200 Vesey Street, New York, NY 10281-1022 | direct 212.336.0147

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.


-----------------------------------------------------------------------
This message was secured by ZixCorp(R).

------------------------------------------------------------------
This message was secured by ZixCorp(R).
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities
and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain
confidential and privileged information. If you are not the intended recipient, please do not read,
distribute, or take action in reliance upon the message. If you have received this message in error,
please notify the sender immediately by return e-mail and promptly delete this message and its
attachments from your computer system. Be advised that no privileges are waived by the
transmission of this message.


------------------------------------------------------------------
This message was secured by ZixCorp(R).



------------------------------------------------------------------
This message was secured by ZixCorp(R).
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities
and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain
confidential and privileged information. If you are not the intended recipient, please do not read,
distribute, or take action in reliance upon the message. If you have received this message in error,
please notify the sender immediately by return e-mail and promptly delete this message and its
attachments from your computer system. Be advised that no privileges are waived by the
transmission of this message.



------------------------------------------------------------------
This message was secured by ZixCorp(R).



------------------------------------------------------------------
This message was secured by ZixCorp(R).
Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities
and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain
confidential and privileged information. If you are not the intended recipient, please do not read,
distribute, or take action in reliance upon the message. If you have received this message in error,
please notify the sender immediately by return e-mail and promptly delete this message and its
attachments from your computer system. Be advised that no privileges are waived by the
transmission of this message.

---------------------------------------------------------------------
This message was secured by ZixCorp(R).

Secured by ZixCorp

# EXHIBIT 33



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
3 WORLD FINANCIAL CENTER
NEW YORK, NEW YORK 10281-1022

PETER A. PIZZANI
TEL. (212) 336-0147
FAX (212) 336-1324

September 17, 2012

**BY E-Mail and UPS**
Anthony Thompson
c/o Brent Baker
Clyde Snow & Sessions
One Utah Center, 13th Floor
Salt Lake City, UT 84111-2216

     *Re:   In re Blast Applications, Inc. (NY-8264)*

Dear Mr. Baker:

     I have enclosed an investigative subpoena issued to your client, Anthony Thompson, in the above referenced investigation. The subpoena requires your client to produce certain documents to the Securities and Exchange Commission (the "Commission") at the Commission's New York Regional Office at 3 World Financial Center, Suite 400, New York, New York 10281, by 5:00 p.m. on Tuesday, October 2, 2012. If you are not authorized to accept service on behalf of Mr. Thompson please let me know as soon as possible.

     I have also enclosed a copy of SEC Form 1662, which provides important information to individuals who are required to produce information pursuant to a Commission subpoena. Form 1662 contains, among other things, a list of the routine uses of information provided to the Commission.

     The purpose of this investigation is to determine whether there have been violations of the federal securities laws. This investigation is a confidential fact-finding inquiry. Neither this investigation, nor the issuance of this subpoena, means that the Commission or its staff have concluded that any person or entity has broken the law, nor does it mean that the Commission or its staff have a negative opinion of any person, entity or security.

     Please read the instructions in the subpoena attachment carefully. If your client does not wish to produce original documents in response to the subpoena, you may send photocopies of the originals. The Commission cannot reimburse him for the copying costs. If the documents are voluminous, the staff would prefer that you produce the documents in electronic format in accordance with the enclosed data delivery standards.

If you choose to send copies, the originals must be preserved in the condition they were in when you received the subpoena. The copies must be identical to the originals, including even faint marks or print. The staff will accept copies for now, but might require your client to produce the originals later.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Please send your response to me at the above address and indicate in a cover letter that the documents are being supplied in response to a subpoena issued in *In re Blast Applications, Inc. (NY-8264)*. Please call me at 212-336-0147 if you have any questions. Thank you for your anticipated cooperation.

Very truly yours,

Peter A. Pizzani
Senior Counsel
Enforcement Division

Encl. Subpoena
Form 1662
SEC Data Delivery Standards



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In re Blast Applications, Inc. (NY-8264).

To:     Anthony Thompson
        c/o Brent Baker
        Clyde Snow & Sessions
        One Utah Center, 13th Floor
        Salt Lake City, UT 84111-2216

**YOU MUST PRODUCE** everything specified in the attachment to this subpoena to officers of the Securities and Exchange Commission on or before 5:00 p.m. on Tuesday, October 2, 2012 at the New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
        Failure to comply may subject you to a fine and/or imprisonment.

By: _____            Date: September 17, 2012
    Peter Pizzani
    Division of Enforcement

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If claim is made for witness fee or mileage, this subpoena should accompany voucher.

**Attachment**

## I.    DEFINITIONS AND INSTRUCTIONS

**A.**    The word **"document"** includes all writings and other tangible forms of expression in your possession or custody or subject to your control, whether drafts or finished versions, originals, or copies, including annotated copies, however created, produced or stored (manually, mechanically, digitally, electronically, or otherwise), including, but not limited to, books, papers, files, notes, account statements, opinion letters, correspondence, e-mail and instant messages, lists, agendas, correspondence, charts, confirmations, memoranda, analyses, reports, computer tapes, computer discs, computer software, computer print-outs, tape recordings, telegrams, telexes, telecopies, facsimile copies, telephone logs, calendars, datebooks, minutes, bank records, records of payments, and other devices for storing, recording or creating information.

**B.**    **"Concerning"** means relating to, referring to, describing, mentioning, memorializing, reflecting, evidencing, pertaining to, or involving.

**C.**    **"Communication"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**D.**    **"You"** and **"your"** refers to Anthony Thompson and all entities controlled by him.

**E.**    **All/each.** The words "all" and "each" both mean "all and each."

**F.**    **And/or.** The words "and", "or", and "and/or", shall be read both conjunctively and disjunctively.

**G.**    **Names.** The full or abbreviated name of any person or entity means that person or entity. It also means, where applicable, the officers, directors, employees, agents, partners, corporate parents, subsidiaries, and affiliates of that person or entity.

**H.**    **Number and gender.** The use of the singular form of any word includes the plural, and vice versa. The use of any gender includes the male, the female, and the neuter.

**I.**    The phrase **"possession or control"** means:

        (i)    actual possession of a document or other item;

(ii)     that a person or entity under your control has actual possession of such document or other item; or

(iii)    that you or a person or entity under your control has the ability to obtain actual possession of such document or other item or a copy of such document or other item from any other person or entity.

**J.     All documents are to be produced as you have kept them** with any identifying labels, file markings or similar identifying features or shall be organized and labeled to correspond to the appropriate request herein. If there are no documents responsive to any particular category, please so state in writing. You should enclose a list with the documents that are produced stating which paragraph(s) in the document request each item produced responds to.

**K.     This subpoena does not require the production of original documents and/or materials.** You may produce copies of the documents and/or materials in response to this subpoena. However, you must retain the original documents and produce them at the request of the Commission staff. If you send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she might number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. **If you send us originals, please do not add any identifying notations.**

**L.     If copies of the original documents and/or materials are provided, they must be produced in one of the following formats:** (i) copied in the identical size of the original; (ii) copied on letter-sized (8 ½" by 11") paper; or (iii) copied in electronic format in conformity with the enclosed SEC Data Delivery Standards.

**M.     If an objection is made to producing any document or any other tangible thing, or any portion thereof, or to disclosing any information contained therein, on the basis of any privilege,** identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked. Include in the objection, unless divulging such information would cause disclosure of the allegedly privileged information, (i) the type of document, e.g. letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

**N.     If any document responding to all or any part of any request for documents is not currently available,** include a statement to that effect and furnish whatever documents are available. Include in your statement when such document or documents were most recently in your possession or subject to you control and what disposition was made of them, and identify each person currently in possession or control of such documents. If any responsive document has been destroyed, describe the circumstances under which the document was destroyed and, if applicable, identify each person who directed that the document be destroyed, the person(s) who destroyed the document, and state the reason(s) the document was destroyed.

**O.     Preservation and Non-Destruction of Documents.** *No document or materials covered by this subpoena, including any document claimed as privileged or otherwise not produced, should be destroyed, disposed of, deleted, erased, altered, modified, or otherwise changed from the form and format they are in at the time of receipt of this subpoena.*

**P.     Delivery of Documents to Commission Staff.** The documents and materials produced in response to this subpoena must be delivered to the Commission staff on or before the date and time and at the place shown on the subpoena. Please deliver the documents provided pursuant to this subpoena to the following address:

> Peter Pizzani
> U.S. Securities and Exchange Commission
> 3 World Financial Center, Suite 400
> New York, New York 10281-1022

**Q.     Authentication of Business Records.** If you are producing business records, please provide a declaration, in the form attached to this document, certifying that the documents produced pursuant to this subpoena are records of your regularly conducted business activity.

Please indicate in a cover letter that these documents are being supplied in response to a subpoena issued in the following investigation:

**In re Blast Applications, Inc. (NY-8264)**

**II.     DOCUMENTS TO BE PRODUCED**

Produce the following documents in your possession or control:

1.      All documents concerning the following entities:

(a) Red Branch Techs Inc.     (Ticker: RBTI)

(b) Blue Gem Enterprises     (Ticker: BGEM)

(c) Wind Works Power Corp. (Ticker: WWPW)

(d) Mass Hysteria Entertainment Company, Inc. (Ticker: MHYS)

This request includes, without limitation, all emails, instant messages, promotional materials, email solicitations, newsletters, subscriber alerts, trading records, contracts, due diligence materials and other documents concerning the issuers.

2.    Documents sufficient to identify every stock (by name, symbol and date) for which you provided any form of promotional, consulting or investor relations services from January 1, 2008 to the present.

3.    Documents sufficient to identify the assets and business operations of Gardner Creek Capital.

DECLARATION OF _____ CERTIFYING RECORDS OF
REGULARLY CONDUCTED BUSINESS ACTIVITY

    I, the undersigned, _____, pursuant to 28 U.S.C. § 1746, declare

that I am employed by (Name of entity) _____ As (Title/job description; for

example "custodian of records") and by reason of my position am authorized and

qualified to make this declaration.

    I further certify that the documents submitted herewith and stamped with bates

numbers _____ to _____ are true copies of records that were: made

at or near the time of the occurrence of the matters set forth therein, by, or from

information transmitted by, a person with knowledge of those matters; kept in the course

of regularly conducted business activity; and made by the regularly conducted business

activity as a regular practice.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on: _____

    By: _____ (Sign and print name and title)

# EXHIBIT 34



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
3 WORLD FINANCIAL CENTER
NEW YORK, NEW YORK 10281-1022

PETER A. PIZZANI
TEL. (212) 336-0147
FAX (212) 336-1324

August 7, 2013

**BY E-MAIL**
Anthony Thompson
c/o Maranda E. Fritz, Esq.
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017

>    *Re:    In re Blast Applications, Inc. (NY-8264)*

Dear Ms. Fritz:

In accordance with our conversations, have enclosed a revised investigative subpoena issued to your client, Anthony Thompson, in the above referenced investigation. This subpoena, which replaces the subpoena dated July 23, 2013, requires your client to produce certain documents to the Securities and Exchange Commission (the "Commission") at ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, by 5:00 p.m. on **Thursday, August 29, 2013**.

I have also enclosed a copy of SEC Form 1662, which provides important information to individuals who are required to produce information pursuant to a Commission subpoena. Form 1662 contains, among other things, a list of the routine uses of information provided to the Commission.

The purpose of this investigation is to determine whether there have been violations of the federal securities laws. This investigation is a non-public fact-finding inquiry. Neither this investigation, nor the issuance of this subpoena, means that the Commission or its staff have concluded that any person or entity has broken the law, nor does it mean that the Commission or its staff have a negative opinion of any person, entity or security.

Please read the instructions in the subpoena attachment carefully. If your client does not wish to produce original documents in response to the subpoena, you may send photocopies of the originals. The Commission cannot reimburse him for the copying costs. If the documents are voluminous, the staff would prefer that you produce the documents in electronic format in accordance with the enclosed data delivery standards. **Small electronic productions (under 10MB in size) may be e-mailed to: ENF-CPU@sec.gov**

If you choose to send copies, the originals must be preserved in the condition they were in when you received the subpoena. The copies must be identical to the originals, including even faint marks or print. The staff will accept copies for now, but might require your client to produce the originals later.

**PLEASE INCLUDE A COPY OF THIS LETTER WITH ANY DOCUMENT PRODUCTION.**

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Please send your response to me at the above address and indicate in a cover letter that the documents are being supplied in response to a subpoena issued in *In re Blast Applications, Inc. (NY-8264)*. Please call me at 212-336-0147 if you have any questions. Thank you for your anticipated cooperation.

Very truly yours,

Peter A. Pizzani
Senior Counsel
Enforcement Division

Encl. Subpoena
Form 1662
SEC Data Delivery Standards



### SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

#### In re Blast Applications, Inc. (NY-8264)

To:    Anthony Thompson
c/o Maranda E. Fritz, Esq.
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017

**YOU MUST PRODUCE** everything specified in the attachment to this subpoena to officers of the Securities and Exchange Commission on or before 5:00 p.m. on Thursday, August 29, 2013 at ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:    _Peter Pizzani_                Date: August 7, 2013
Peter Pizzani
Division of Enforcement

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If claim is made for witness fee or mileage, this subpoena should accompany voucher.

**Attachment to the August 7, 2013 Subpoena to Anthony Thompson**

## I.    DEFINITIONS AND INSTRUCTIONS

**A.**    The word **"document"** includes all writings and other tangible forms of expression in your possession or custody or subject to your control, whether drafts or finished versions, originals, or copies, including annotated copies, however created, produced or stored (manually, mechanically, digitally, electronically, or otherwise), including, but not limited to, books, papers, files, notes, account statements, opinion letters, correspondence, e-mail and instant messages, lists, agendas, correspondence, charts, confirmations, memoranda, analyses, reports, computer tapes, computer discs, computer software, computer print-outs, tape recordings, telegrams, telexes, telecopies, facsimile copies, telephone logs, calendars, datebooks, minutes, bank records, records of payments, and other devices for storing, recording or creating information.

**B.**    **"Concerning"** means relating to, referring to, describing, mentioning, memorializing, reflecting, evidencing, pertaining to, or involving.

**C.**    **"Communication"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**D.**    **"You"** and **"your"** refers to Anthony Thompson.

**E.**    **All/each.** The words "all" and "each" both mean "all and each."

**F.**    **And/or.** The words "and", "or", and "and/or", shall be read both conjunctively and disjunctively.

**G.**    **Names.** The full or abbreviated name of any person or entity means that person or entity. It also means, where applicable, the officers, directors, employees, agents, partners, corporate parents, subsidiaries, and affiliates of that person or entity.

**H.**    **Number and gender.** The use of the singular form of any word includes the plural, and vice versa. The use of any gender includes the male, the female, and the neuter.

**I.**    **The phrase "possession or control"** means:

        (i)    actual possession of a document or other item;

        (ii)    that a person or entity under your control has actual possession of such document or other item; or

       (iii) that you or a person or entity under your control has the ability to obtain actual possession of such document or other item or a copy of such document or other item from any other person or entity.

**J.** **All documents are to be produced as you have kept them** with any identifying labels, file markings or similar identifying features or shall be organized and labeled to correspond to the appropriate request herein. If there are no documents responsive to any particular category, please so state in writing. You should enclose a list with the documents that are produced stating which paragraph(s) in the document request each item produced responds to.

**K.** **This subpoena does not require the production of original documents and/or materials.** You may produce copies of the documents and/or materials in response to this subpoena. However, you must retain the original documents and produce them at the request of the Commission staff. If you send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she might number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. **If you send us originals, please do not add any identifying notations.**

**L.** **If copies of the original documents and/or materials are provided, they must be produced in one of the following formats:** (i) copied in the identical size of the original; (ii) copied on letter-sized (8 ½" by 11") paper; or (iii) copied in electronic format in conformity with the enclosed SEC Data Delivery Standards.

**M.** **If an objection is made to producing any document or any other tangible thing, or any portion thereof, or to disclosing any information contained therein, on the basis of any privilege,** identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked. Include in the objection, unless divulging such information would cause disclosure of the allegedly privileged information, (i) the type of document, e.g. letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

**N.** **If any document responding to all or any part of any request for documents is not currently available,** include a statement to that effect and furnish whatever documents are available. Include in your statement when such document or documents were most recently in your possession or subject to you control and what disposition was

made of them, and identify each person currently in possession or control of such documents. If any responsive document has been destroyed, describe the circumstances under which the document was destroyed and, if applicable, identify each person who directed that the document be destroyed, the person(s) who destroyed the document, and state the reason(s) the document was destroyed.

**O.     Preservation and Non-Destruction of Documents.** *No document or materials covered by this subpoena, including any document claimed as privileged or otherwise not produced, should be destroyed, disposed of, deleted, erased, altered, modified, or otherwise changed from the form and format they are in at the time of receipt of this subpoena.*

**P.     Delivery of Documents to Commission Staff.** The documents and materials produced in response to this subpoena must be delivered to the Commission staff on or before the date and time and at the place shown on the subpoena. Please deliver the documents provided pursuant to this subpoena to the following address:

> ENF-CPU
> U.S. Securities and Exchange Commission
> 100 F St., N.E., Mailstop 5973
> Washington, DC 20549-5973

**Small electronic productions (under 10MB in size) may be e-mailed to: ENF-CPU@sec.gov**

**Q.     Authentication of Business Records.** If you are producing business records, please provide a declaration, in the form attached to this document, certifying that the documents produced pursuant to this subpoena are records of your regularly conducted business activity.

Please indicate in a cover letter that these documents are being supplied in response to a subpoena issued in the following investigation:

**In re Blast Applications, Inc. (NY-8264)**

**II.     DOCUMENTS TO BE PRODUCED**

Produce the following documents in your possession or subject to your control:

1.     All documents concerning every account maintained by you or in which you had a beneficial interest or that was subject to your control at Gibraltar Global Securities, Inc. ("Gibraltar"), from January 1, 2009 through December 31, 2011 ("Relevant Period"), including account statements, wire transfer records, trade confirmations, and correspondence.

2.      All documents concerning Smart Holdings, Inc. ("Smart Holdings"), including without limitation, all communications with any person or entity during the Relevant Period concerning Smart Holdings, documents concerning trading in the securities of Smart Holdings during the Relevant Period, documents concerning the purchase of an interest in Smart Holdings, contracts, documents concerning the promotion of Smart Holdings or its stock, documents concerning trading in Smart Holdings stock, and documents concerning all forms of compensation you received related to goods and services you provided concerning Smart Holdings during the Relevant Period.

3.      All documents concerning Lyric Jeans, Inc. ("Lyric"), including, without limitation, contracts, all communications with any person or entity during the Relevant Period concerning Lyric, documents concerning the promotion of Lyric and/or its stock, documents concerning trading in Lyric stock, and documents concerning all forms of compensation you received related to goods and services you provided concerning Lyric during the Relevant Period.

4.      All documents concerning Fresh Harvest Products, Inc. ("Fresh Harvest"), including, without limitation, contracts, all communications with any person or entity during the Relevant Period concerning Fresh Harvest, documents concerning the promotion of Fresh Harvest and/or its stock, documents concerning trading in Fresh Harvest stock, and documents concerning all forms of compensation you received related to goods and services you provided concerning Fresh Harvest during the Relevant Period.

5.      All documents concerning Dynamic Response Group, Inc. ("DRG"), including, without limitation, contracts, all communications with any person or entity during the Relevant Period concerning DRG, documents concerning the promotion of DRG and/or its stock, documents concerning trading in DRG stock, and documents concerning all forms of compensation you received related to goods and services you provided concerning DRG during the Relevant Period.

6.      All documents concerning Blue Gem Enterprise ("Blue Gem") not previously produced by you in this investigation, including, without limitation, contracts, all communications with any person or entity during the Relevant Period concerning Blue Gem, documents concerning the promotion of Blue Gem and/or its stock, documents concerning trading in Blue Gem stock, and documents concerning all forms of compensation you received related to goods and services you provided concerning Blue Gem during the Relevant Period.

7.      All documents concerning agreements and/or communications during the Relevant Period with the following individuals and/or any entity you know to have been controlled by the following individuals that you have not previously produced to the staff in this investigation:

Ken Oxsalida

Kevin Sepe

Allan Sepe

Scott Gelbard

Joseph Dervali

Antonio and/or Anthony Dervali

Eric Van Nguyen

Jay Fung

Tuyen Tran

Joseph Meuse

Ronny Halperin

Joshua Halperin

Luz Rodriguez

Francisco Del

Joseph Babiak

D. Paul Cohen

Warren Davis

John Babikian

Candido Luzzi

John Antonucci

Francisco "Frank" Franco

Dean Petkanas

Peter Nicosia

8.      All documents concerning agreements and/or communications during the Relevant Period with the following entities and/or any officer, director, partner, member or agent of the following entities that have not previously been produced to the staff in this investigation:

Assurance Group Direct, Inc.

Belmont Partners, LLC

OZ Consulting

O2 Consulting

Queensway Holdings, Ltd.

Regent International Group

JWB Capital, LLC

Golden Dragon Media, Inc.

Dual Star Media

Pudong, LLC

Best Fortune Marketing

Title Beverage Distribution, Inc.

Electric Beverage Company, Inc.

Charter Consulting Corp.

Dynamic Response Group

Grass Roots Research and Distribution

Gibraltar Global Securities, Inc.

Ronny J. Halperin, PA

JPA Capital

Nova Capital Markets

Triple Crown Express

Golden Gate Capital Partners

Quest Capital Markets, Inc.

Fresh Harvest Products, Inc.

Gardner Creek Capital

9.      All communications between you and any person or entity during the Relevant Period concerning the promotion of the securities of any company that have not previously been produced to the staff in this investigation.

10.     All documents distributed by you to any person or entity during the Relevant Period concerning any company with publicly traded securities (the "Public Company Documents"), that have not previously been produced to the staff in this investigation, including without limitation, Blast, Lyric Jeans, Smart Holdings, Blue Gem, Fresh Harvest, and Dynamic Response Group.

11.     All documents concerning the Public Company Documents, including without limitation, all communications, contracts, and prior drafts.

12.     All documents concerning all forms of compensation you received in connection with the creation and/or distribution of the Public Company Documents.

13.     Documents identifying the individuals and/or entities that were sent the Public Company documents, including without limitation, subscriber lists.