UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ANTHONY J. THOMPSON, JR., JAY FUNG, and ERIC VAN NGUYEN,<br><br>                    Defendants,<br><br>          and<br><br>JOHN BABIKIAN and KENDALL THOMPSON,<br><br>                    Relief Defendants,<br><br>NEW YORK COUNTY DISTRICT ATTORNEY,<br><br>                    Intervenor. | Case No.: 14-cv-9126 (ALC) |

**DECLARATION OF ANTHONY THOMPSON IN OPPOSITION
TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Anthony J. Thompson, Jr. pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I submit this Declaration to provide information to the Court concerning amounts that I received in relation to the Blue Gem transaction, and my current financial circumstances.

2. The stock promotional campaigns that were conducted by Microcapster, and then by OTC Solutions, required the outlay of substantial capital. There were costs associated with

the creation and the upkeep of the website. We also paid employees who performed services including researching transactions and preparing the content for the newsletters that were disseminated.

3. The most substantial expense, totaling many millions of dollars, was the development and the maintenance of the list of subscribers for the newsletter. There were constant expenses associated with the placement of internet ads and other internet search costs, and the cost hosting the website and disseminating the actual newsletters.

4. Specifically in relation to Blue Gem, I have reviewed the amounts that were received and disbursed and confirmed that I received a total of $200,000.00.

5. All other amounts received from the sale of stock of BGEM were disbursed to other entities or individuals in connection with the business of Microcapster, or to OTC Solutions for expenses related the BGEM promotion. For example, Microcapster disbursed a total of $355,000.00 to other individuals who engaged in related promotions. Another $50,000 was paid to Justin Failla for marketing and ad-related services. A total of $225,000 was transferred to the co-owner of the company pursuant to the company's obligations. Another $125,000 was paid to OTC Solutions and a review of its records confirms that those funds were disbursed for the costs of internet advertising incurred during the period of the promotion of Blue Gem.

6. The amount that was disbursed to me is the total of $200,000.00 that was transferred into the account of my wife and I at PNC Bank.

7. Specifically in relation to Lyric Jeans, I have reviewed the amounts that were received and disbursed and deny that I "earned" $660,578.96 from the sales of Lyric because the

bulk of the funds received form the promotional campaign was spent on cost associated with the promotional campaign.

8. I deny that I received shares of Smart Holdings. I admit that I was involved in the dissemination of newsletters that disclosed cash compensation. I deny that he "earned" $525,000 from sales of stock because that amount was received by OTC Solutions for promotional campaigns were then primarily directed to payment of the costs associated with the promotion.

9. I deny that I received stock of Mass Hysteria, but admit that I was involved with the dissemination of promotional newsletters, and deny that I "earned at least" $564,412.00 from sales of stock.

10. I deny that I obtained the stated amounts as a result of any improper schemes, and aver that stock and proceeds of sales of stock were conducted by the companies, Microcapster or OTC Solutions. I confirm that the bulk of the proceeds of sales of stock were used to pay the costs associated with the promotional campaign, and that I personally received only those amounts that were paid to me by the company.

11. In terms of my ability to pay any fines or penalties, I literally have no money and no assets at this point. Over the course of the last five years, since the Indictment in 2014, I have had no ability to earn any significant income. At the same time, I have had to deal with years of litigation. As the Court is aware, I was sued by two different offices of the SEC, in Florida and in New York, in relation to the transactions that I did that involved Kevin Sepe. My wife then sued for divorce and aggressively tried to take away my joint custody of our children. She also sued my father and I in relation to the management of the family trusts, and was ultimately able to gain control of the trusts and the remaining amounts that I had earned when I was still working.

12. Because she gained control of the trusts, and was able to prevent the payment of disgorgement in relation to the criminal case, I was then sentenced to a term in jail.

13. I have nothing left. I have no bank accounts, assets, or property. When I am released from jail, I will resume my efforts to obtain employment, earn a living, and provide for my children, but it will be a struggle for me and for my family. I am fortunate that I still have family and friends who have provided me with help and support, and offered me employment but I will not have any ability to pay any penalties to the SEC.

I declare under penalty of perjury that the foregoing is true and accurate.

Executed on: March 13, 2019        _Anthony Thompson by MEF_
                                   Anthony Thompson