UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,
                       Plaintiff,

   -against-

ANTHONY J. THOMPSON, Jr., JAY FUNG, and
ERIC VAN NGUYEN,

                             Defendants,
   -and-

JOHN BABIKIAN and KENDALL THOMPSON
                       Relief Defendants.

NEW YORK COUNTY DISTRICT ATTORNEY,
                       Intervenor
------------------------------------------------------------------x

14 Civ. 9126 (ALC)

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT AGAINST DEFENDANT ANTHONY J. THOMPSON, JR.</u>**

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

I.  THOMPSON'S PREVIOUSLY REJECTED ARGUMENTS
    DO NOT PRESENT ANY OBSTACLE TO THE SEC'S MOTION ............................... 2

    1. Thompson's Claimed "Defenses" Are No Basis For Denying
       The SEC's Motion .............................................................................................. 2

    2. Thompson's Reliance On Two "Defenses" Has Already Been Rejected,
       and Cannot Be Relitigated In the Context of The SEC's Motion. ..................... 2

II. COLLATERAL ESTOPPEL APPLIES TO THE FIVE ISSUERS IN THIS CASE .......... 4

III. DISGORGEMENT AND PENALTIES ARE WARRANTED ........................................ 6

    A. The SEC's Request for Disgorgement Should Be Granted .............................. 6

    B. Substantial Penalties Are Warranted ................................................................ 8

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*Hamlen v. Gateway Energy Servs. Corp.* 2018 WL 1568761 (S.D.N.Y. Mar. 29, 2018) ............... 3

*Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*,
   2016 WL 4083386 (E.D.N.Y. July 30, 2016) ............................................................................. 3

*Honeycutt v. U.S.*, 137 S.Ct. 1626 (2017) ..................................................................................... 8

*Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ...................................................................... 3

*Kokesh v. SEC*, 135 S. Ct. 1635 (2017) ......................................................................................... 8

*Melito v. American Eagle Outfitters*, 2016 WL 6584482 (S.D.N.Y. Nov. 7, 2016) ...................... 3

*Peoples v. United States*, 403 F.3d 844 (7th Cir. 2005) ................................................................ 3

*SEC v. Ahmed*, 343 F. Supp. 3d 16 (D. Conn. 2018) ..................................................................... 8

*SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006) ............................................................................ 8

*SEC v. Elliott*, 2011 WL 3586454 (S.D.N.Y. Aug. 11, 2011) ....................................................... 6

*SEC v. Hansen*, 2017 WL 1232716 (S.D.N.Y. Mar. 31, 2017) ................................................. 6, 7

*SEC v. Inorganic Recycling Corp.*, 2002 WL 1968341 (S.D.N.Y. Aug. 23, 2002) ..................... 10

*SEC v. JT Wallenbrock*, 440 F.3d 1109 (9th Cir. 2006) ................................................................ 7

*SEC v. Juno Mother Earth Asset Mgmt.*, 2014 WL 1325912 (S.D.N.Y. Mar. 31, 2014) ............... 6

*SEC v. Kane*, 2003 WL 1741293 (S.D.N.Y. Apr. 1, 2003) ......................................................... 10

*SEC v. Madsen*, 2018 WL 5023945 (S.D.N.Y. Oct. 17, 2018) ................................................... 10

*SEC v. Metter*, 706 Fed. Appx. 699 (2d Cir. 2017) ....................................................................... 8

*SEC v. Palmisano*, 135 F.3d 860 (2d Cir. 1998) ........................................................................... 8

*SEC v. Rajaratnam*, __F.3d. __, 2019 WL 1029257 (2d Cir. Mar. 3, 2019) ............................... 9

*SEC v. Taber*, 2013 WL 6334375 (S.D.N.Y. Dec. 4, 2013) ....................................................... 10

*SEC v. Thompson*, 238 F. Supp.3d 575 (S.D.N.Y. 2017) .......................................................... 3, 4

*SEC v. Universal Exp., Inc.*, 646 F. Supp.2d 552 (S.D.N.Y. 2009) ........................................... 6, 7

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002) ............................................................ 3

## Statutes

28 U.S.C. 2462 ................................................................................................................................ 8

Martin Act (N.Y. Gen. Bus. Law §§ 352-353) ............................................................................... 5

NY Penal Law § 190.65(1) ............................................................................................................. 5

In the February 15, 2019 Memorandum of Law in Support of the Securities and Exchange Commission's ("SEC") Motion for Partial Summary Judgment ("SEC Mem."), the SEC argued that the charges for which Thompson[1] was convicted in the Criminal Action provided the basis for summary judgment on the basis of collateral estoppel for the majority of the claims asserted against Thompson. In response, Thompson largely ignores the SEC's argument and instead, oddly, reasserts arguments that not only have nothing to do with the SEC's motion but which have already been rejected by Judge Forrest. Because the elements of collateral estoppel are satisfied, and Thompson has failed to rebut them, judgment in the SEC's favor is warranted.

## **ARGUMENT**

There is only one issue at stake in this motion: whether or not Thompson's guilty convictions on the Second and Twelfth Counts of the Indictment (Pizzani Decl. Exhibit A) provide a basis for collateral estoppel in favor of the SEC, and mandate a finding of liability against him. *See* SEC Mem. 3, 9-13.

Yet rather than attempt to rebut the arguments made in the SEC's moving brief, Thompson spends the vast majority of his Opposing Memorandum of Law ("Opp.Mem.") trying to obtain a second bite at an already devoured apple. Thompson focuses his mis-aimed fire at two arguments that have previously been rejected by Judge Forrest, contending that these arguments present fact questions that prevent entry of summary judgment for the SEC. Opp.Mem. 16-20. Thompson also misconstrues the indisputable record to argue, if only in passing, that the SEC is only entitled to judgment relating to Blue Gem. Opp.Mem. 20-21.

---

[1] This Reply Memorandum of Law utilizes the same abbreviations as set out in the original SEC Mem., and references to Exhibits are to those submitted along with the SEC's motion papers.

Finally, Thompson asserts that the SEC is entitled to a lower amount of disgorgement and penalty than requested. Opp.Mem. 21-25. Not one of these arguments holds up under scrutiny.

## I. THOMPSON'S PREVIOUSLY REJECTED ARGUMENTS DO NOT PRESENT ANY OBSTACLE TO THE SEC'S MOTION

Thompson asserts there are two fact issues in dispute that prevent the SEC from obtaining summary judgment based on the collateral effect of his convictions: (i) whether his settlement of another enforcement action brought by another SEC office (involving an issuer that is not one of the five identified in the case at bar), bars this case (Opp.Mem. 2-4, 7-9, 16-21); and (ii) whether the SEC improperly rejected a settlement of the case at bar (Opp.Mem. 9-14. 20). These two issues, raised originally in a motion to dismiss before Judge Forrest, are asserted to constitute fact defenses to the SEC's motion for summary judgment.

### 1. Thompson's Claimed "Defenses" Are No Basis For Denying The SEC's Motion

Leaving aside for the moment the fact that Judge Forrest rejected the so-called defenses, the simple fact remains that these arguments are beside the point. As set out previously (SEC Mem. 6-8), collateral estoppel on the grounds of a prior conviction requires satisfaction of four elements. The SEC has satisfied those elements. Thompson has ignored these elements, ignored the law of collateral estoppel, and has simply interposed an irrelevant attempt at distraction. Because Thompson makes no attempt to rebut the SEC's showing that it has satisfied the elements of a collateral estoppel claim, judgment should be entered in favor of the SEC.

### 2. Thompson's Reliance On Two "Defenses" Has Already Been Rejected, and Cannot Be Relitigated In the Context of The SEC's Motion.

Even if the two issues identified by Thompson could conceivably be relevant to a motion for collateral estoppel, they have already been decided adversely to Thompson, and cannot now be relitigated, under the law of the case doctrine. "The law of the case doctrine commands that

2

'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)(quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). The law of the case doctrine applies regardless of the judge making the ruling, *Hamlen v. Gateway Energy Servs. Corp.* 2018 WL 1568761 (S.D.N.Y. Mar. 29, 2018), provided the parties had a full and fair opportunity to litigate the initial decision. *Melito v. American Eagle Outfitters*, 2016 WL 6584482 *2 (S.D.N.Y. Nov. 7, 2016).[2]

Even if the claimed "defenses" of *res judicata* and a prior settlement were at all pertinent, the fact remains that these issues have already been decided adversely to Thompson. Thompson had previously sought to dismiss this action, claiming that it was either barred under the doctrine of *res judicata*, or that the SEC had impermissibly refused to settle it on Thompson's terms. Judge Forrest previously rejected both those claims when raised by Thompson. *SEC v. Thompson*, 238 F. Supp.3d 575 (S.D.N.Y. 2017).

First, while Judge Forrest concluded that the first two elements of the *res judicata* test – a final adjudication on the merits and the same plaintiff – were satisfied, she also found the third element, that the claims asserted in this action were or could have been asserted in the prior Florida Action, was not. Specifically, Judge Forrest held that "the claims asserted by the SEC in this case were not, and could not have been, raised in the Florida Action because the instant action does not involve the same 'claim' or 'nucleus of operative fact' as the allegations in that

---

[2] The law of the case rule "blocks new theories as well as old ones" so that "the parties marshal all of their facts and arguments so that a dispute may be resolved in one pass, and to conserve judicial resources." *Peoples v. United States*, 403 F.3d 844, 846 (7th Cir. 2005). *Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*, No. 15 Civ. 5887 (ADS), 2016 WL 4083386, at *6 (E.D.N.Y. July 30, 2016) (absent "manifest injustice . . . courts generally refuse to consider new arguments made on reconsideration that could have been made in the prior proceedings") (collecting cases).

3

suit." *Id.* at 592.[3] There is no open fact issue that could possibly warrant a reversal of that decision, and Thompson adduces no new evidence or legal theory in support thereof.[4]

Nor is there a legitimate fact dispute as to whether or not the SEC ever agreed to recommend a settlement of this matter. Judge Forrest never said that there were triable issues of fact; only that Thompson failed to present evidence regarding whether the only person with the actual authority to present a recommendation to the Commission to accept a proposed settlement, the then Director of the Division of Enforcement, gave such approval to proceed with recommending a settlement, thus resolving this purported fact issue. 238 F.Supp.3d at 594. Even if somehow this was at all relevant to the SEC's motion, Thompson has presented nothing that would create an issue of fact on this question. To the contrary, Thompson's papers prove the opposite, as they show that the Director of Enforcement advised Thompson's counsel that he had never approved proceeding with a settlement. *See* the Brent Baker Declaration attached as Exhibit 1 to the March 13, 2019 Declaration of Maranda Fritz, at ¶ 36. (Docket Entry 128-1).

## II. COLLATERAL ESTOPPEL APPLIES TO THE FIVE ISSUERS IN THIS CASE

It is only after spending twenty pages on extraneous matters does Thompson then turn to

---

[3] Judge Forrest rejected Thompson's argument that the fact that there was some discovery about the five issuers at stake in the case at bar in the Florida Action somehow created an identity of issues, holding that "Thompson's contention that overlapping discovery in this case and the Florida Action justifies the application of *res judicata* is also incorrect. In the Florida Action, the SEC sought discovery as to issuers other than Recycle Tech for the limited purpose of establishing that Thompson's violations were continuous an[d] ongoing, a requirement to impose the sought injunctive relief. (*See* Baker Decl., Ex. 14 at 54:21–55:5; *see also id.* at 56:11–57:12.) In ordering such discovery to proceed, Judge O'Sullivan specifically noted that the requested documents did not 'involve the exact claim in this lawsuit'. (*Id.* at 57:13–22.) It would be inappropriate to invoke *res judicata* to bar this action based exclusively on discovery admitted for purposes of fashioning relief, but not establishing liability, in the prior action."

[4] Thompson argues that Judge Forrest's decision should be reconsidered because it was predicated on the purportedly mistaken conclusion that Kevin Sepe, who allegedly was one of two defendants who orchestrated the Recycle Tech pump-and-dump scheme, was not involved in some of the promotions that are the subject of this action. Thompson's insinuation that Sepe's role in some of the promotions in the case at bar is something that has now been confirmed in discovery is utterly baseless, as this is not a new fact that was unknown or uncertain at the time of Judge Forrest's ruling, and Sepe's role was certainly known to Thompson all along. Judge Forrest was certainly aware of Sepe's role in some of the promotions in this case, as Thompson made many of the same arguments about Sepe's role in his motion to dismiss. *See* Docket Entry 43 at 9 & n8.

the question of what might be precluded on the basis of his conviction, and he spends less than one page on that issue. Opp.Mem. 20-21. And in that page, Thompson mischaracterizes the charges of which he was convicted, claiming that Thompson's conviction only related to two Counts of the Indictment, Twelve and Forty-six (relating to the Blue Gem[5] and Recycle Tech issuers). (Thompson concedes liability relating to the Blue Gem issuer.) Thompson argues that other than with relation to the Martin Act violations pertaining to Blue Gem and Recycle Tech, "[t]here was no mention of or reference to other transactions in relation to the plea; those issues were not litigated or determined in the criminal case, and the plaintiff is not entitled to judgment in relation to those transactions." Opp.Mem. 21. This is simply untrue.[6]

What Thompson conveniently omits from his narrative is that he *also* entered a guilty plea to Count Two of the Indictment. That Count included each and every issuer from the Criminal Action. It defined a scheme to defraud and an "ongoing course of conduct" ranging from "April 3, 2009 to on or about June 1, 2012" in violation of NY Penal Law § 190.65(1)." (Exhibit A, 2). This time period includes every one of the issuers. For example, the Indictment at the outset defined the issuers relating to the "scheme constituting a systemic ongoing course of conduct" from "April 3, 2009 to on or about June 1, 2012" to include, among others, each of the five issuers in the case at bar (plus several others). The issuers covered by Count 2 of the Indictment include all the issuers discussed in the Complaint; the time period covered by Count 2 of the Indictment covers the time period of the fraud alleged in the Complaint. And, as the SEC Mem. makes clear, collateral estoppel is appropriate on the basis of the guilty plea to Count 2 of the Indictment.

---

[5] Thompson concedes that, at the least, he is collaterally estopped relating to the Blue Gem issuer. This concession also should resolve Thompson's defenses of *res judicata* and that the SEC reneged on a settlement.
[6] While Thompson's allocution mainly referred to Counts 12 and 46, he undeniably also plead guilty to Count 2 and was sentenced for all three Counts. *See* Pizzani Decl., Ex. E, at 2:25-3:3, 24:24-25:1.

## III. DISGORGEMENT AND PENALTIES ARE WARRANTED

### A. The SEC's Request for Disgorgement Should Be Granted

Thompson's Memorandum of Law ignores the SEC's arguments with respect to the disgorgement owed relating to Blast, Mass Hysteria, Lyric Jeans, or Smart Holdings.[7] He only contests the SEC's disgorgement claim relating to Blue Gem, which the SEC contended was $485,366.00. SEC Mem. 16; Vitale Decl. ¶¶ 9-11 and Exs. 18-24. This figure is a reasonable approximation of Thompson's gains, and he should be ordered to disgorge this amount.

Thompson does not contest that he originally obtained over $1.1 million from the sale of Blue Gem stock, (DeBarri Decl. ¶ 5); he disagrees with the SEC as to what amounts are properly deducted from this figure to obtain the disgorgement. The parties agree that it was proper to deduct payments of $219,000, $130,000, $225,000 and $50,000 (see Vitale Decl. ¶ 10; Thompson Decl. ¶ 5), as these amounts were neither retained by Thompson nor remained under his control. But Thompson additionally claims that $125,000 paid to OTC Solutions, an entity which Thompson owned and controlled, should also be deducted as this amount was used to pay "various transaction costs" – essentially overhead. (Opp. Mem. 22; Thompson Decl. ¶¶ 4-6.) Thus, he claims he only obtained the benefit of $200,000 from the Blue Gem promotion, which was wired to another bank account he controlled. This must be rejected.

First, Thompson's math does not add up. Even if the additional $125,000 paid to an entity Thompson owned and controlled was legitimately deducted, and it should not be, that would

---

[7] While Thompson asserts in his Declaration [Docket Entry 129] that he did not obtain all the sums set out by the SEC relating to the other issuers (Thompson Decl. ¶¶ 7-10) he has not met his burden of contesting the government's calculations. See, e.g., SEC v. Juno Mother Earth Asset Mgmt., 2014 WL 1325912 at *2 (S.D.N.Y. Mar. 31, 2014); SEC v. Elliott, 2011 WL 3586454, *11 (S.D.N.Y. Aug. 11, 2011). The burden is on the defendant to show that it received less than the amount claimed, and any risk of uncertainty has to be borne by the wrongdoer. SEC v. Hansen, 2017 WL 1232716, *3 ((S.D.N.Y. Mar. 31, 2017); SEC v. Universal Exp., Inc., 646 F. Supp.2d 552, 563 (S.D.N.Y. 2009). In its moving papers the SEC set out a detailed analysis of banking records, with substantial exhibits documenting each transfer and supporting the amounts claimed for disgorgement. Thompson has failed to set out any evidence whatsoever to counter this mass of evidence.

6

leave $360,366, not $200,000. Second, to the extent Thompson seeks to deduct what is essentially overhead, case law holds that such deductions should be denied. Thompson concedes that all these costs were incurred in the course of conducting illegal activity, for which he pled guilty. Multiple courts in this jurisdiction have held that general business expenses cannot be deducted. *SEC v. Universal Exp., Inc.* 646 F. Supp. 552, 564 (S.D.N.Y. 2009) (wrongdoers cannot deduct from disgorgement business expenses in the nature of overhead). *See also SEC v. Hansen*, 2017 WL 1232716, *3. Where, as in the case at bar, the "business enterprise" of promoting shares in Blue Gem was an admitted criminal enterprise, it would be unfair to allow Thompson to deduct the costs of a business that is in itself fraudulent. As the Ninth Circuit has held, if the "entire business enterprise and related expenses were not legitimate at all," then "it would be unjust to permit the defendants to offset against the investor dollars they received the expenses of running the very business they created to defraud those investors into giving the defendants the money in the first place." *SEC v. JT Wallenbrock*, 440 F.3d 1109, 1114, 111 (9th Cir. 2006).

Nor does Thompson present any record evidence – just mere assertions – to justify these claimed deductions. Since the SEC has presented substantial documentary evidence of the amount Thompson obtained as a result of the fraud (*see* Vitale Decl. and Exhibits thereto) Thompson's failure to rebut that evidence fails to sustain the burden incumbent upon him.[8]

Nor is there merit to the insinuation regarding the viability of any disgorgement remedy. (Opp.Mem. 22.) Controlling circuit precedent holds that "'disgorgement' is a well-established

---

[8] While the DeBarri Declaration (Docket Entry 130) purports to provide some support for the claimed deduction, it fails for two reasons. First, the documents it references fail to establish that these purported expenses relate to Blue Gem. Secondly, for the reasons set out above, overhead expenses cannot be deducted from disgorgement. If the Court believes that there is some remaining factual issue regarding the appropriate amount of disgorgement relating to Blue Gem, the SEC respectfully suggest that it enter a judgment of liability and set a hearing for a later date to determine the amount thereof.

7

remedy in the Second Circuit, particularly in securities enforcement actions," *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006), and that "Congress has expressly endorsed [disgorgement]," *SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir. 1998). Defendant implies that this precedent is invalid in light of the Supreme Court's holding in *Kokesh v. SEC*, 135 S. Ct. 1635 (2017), that claims for disgorgement are subject to the statute of limitations in 28 U.S.C. 2462. But *Kokesh* expressly instructed that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement." 137 S. Ct. at 1642, n.3. Every court to consider the question has taken the Supreme Court at its word and has held that "nothing in *Kokesh* disturbed Second Circuit precedent that disgorgement is a proper equitable remedy." *SEC v. Ahmed*, 343 F. Supp. 3d 16, 27 (D. Conn. 2018); *see also SEC v. Metter*, 706 Fed. Appx. 699, 702 (2d Cir. 2017) (discussing *Kokesh*'s implication for Eighth Amendment challenge to disgorgement award, but affirming disgorgement and holding that courts have "broad discretion" in ordering the remedy).[9]

### B. Substantial Penalties Are Warranted

When Thompson was attempting to garner sympathy with the sentencing court, he admitted the scope of his wrongdoing: "I've caused harm to people who invested in the companies that I brought them and sever[e] pain and heartache to my loved ones. . . . I understand and I want your Honor to understand that I know what I did was wrong and I've seen the pain that I've caused so many people." Pizzani Decl., Ex. E at 22:13-19. The sentencing Court recognized the tremendous harm caused by Thompson. *See* SEC Mem. 19. Now, in a

---

[9] Nor is there any merit to the hint that *Honeycutt v. U.S.*, 137 S.Ct. 1626 (2017) limits the disgorgement available here. Indeed, the Second Circuit rejected that argument, in the case of *SEC v. Metter*, 706 Fed.Appx. 699, 2017 WL 3708084 at n. 2 (2d Cir. 2017). There, the Second circuit noted the inapplicability of *Honeycutt*, not only on the grounds that Honeycutt applied to the criminal forfeiture of the proceeds of controlled substance offenses, but also because the defendant in *Honeycutt* was a mere employee, as opposed to the defendant in *Metter* who, like Thompson, had control over the fraudulent enterprise. *Metter*, 706 Fed.Appx. at 702.

different context, Thompson seeks to avoid having to pay penalties for his wrongdoing, minimizing it instead.

Thompson makes no serious effort to distinguish the cases cited by the SEC, or the arguments mustered in favor of significant penalties. Instead, he interposes three defenses: (i) that he already paid a significant penalty in another case; (ii) that because he did not pay the forfeiture contemplated in his Plea Agreement he went to prison; and (iii) that he is impecunious, and that ultimately, when he is released from prison, he will have to support his children. None of these claims militates against the Court's imposition of substantial penalties.

First, that Thompson paid a penalty in another case, involving an issuer not at issue in the case at bar, is irrelevant. The mere fact that Thompson is a serial malefactor who has been prosecuted and penalized in multiple jurisdictions does not operate as the equivalent of a "get-out-of-jail-free" card. If that were the case, then the worst wrongdoers would get a benefit from the fact that they committed multiple frauds in different jurisdictions.

Second, the fact that he went to jail because he violated the conditions of his criminal plea cannot excuse him from paying a penalty here. This issue was just addressed, and rejected, by the Second Circuit in the case of *SEC v. Rajaratnam*, __F.3d. __, 2019 WL 1029257 (2d Cir. Mar. 3, 2019). There, like here, the defendant argued that the significant punishment he received in a parallel criminal case (Rajaratnam was ordered to forfeit $53.8 million, pay an additional $10 million in criminal penalties, and sentenced to 11 years in prison) should have been taken into account when his penalty in the SEC action was assessed. The Second Circuit disagreed, and upheld the imposition of the maximum civil penalty. *Id.*, 2019 WL 1029257 at *8. The same result should apply here.

Third, that Thompson claims, without back-up,[10] that he is now too poor to pay a penalty, is no basis for not imposing one. As Courts in this district have held, "claims of poverty cannot defeat the imposition of a disgorgement order or civil penalty. . . . to withhold the remedy of disgorgement or penalty simply because a swindler claims that she has already spent all the loot and cannot pay would not serve the purposes of the securities laws." *SEC v. Inorganic Recycling Corp.*, 2002 WL 1968341, *4 (S.D.N.Y. Aug. 23, 2002); *see also SEC v. Kane*, 2003 WL 1741293, *4 (S.D.N.Y. Apr. 1, 2003) ("a defendant's claims of poverty cannot defeat the imposition of a civil penalty by a court."); *SEC v. Taber*, 2013 WL 6334375, *2 (S.D.N.Y. Dec. 4, 2013) (claims of inability to pay do not prevent imposition of disgorgement or penalty.)

## CONCLUSION

For the reasons set forth above, and in the SEC's moving papers, Thompson's convictions warrant the entry of judgment in favor of the SEC on the basis of collateral estoppel for the violations set forth above. It is respectfully submitted that the Court should grant the SEC's application, and order that Thompson pay disgorgement plus prejudgment interest. Finally, a civil penalty should be imposed.

Dated: New York, New York
March 22, 2019

SECURITIES AND EXCHANGE COMMISSION

By: _____
Howard A. Fischer, Senior Trial Counsel
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0589 (Fischer)
FischerH@SEC.gov
Thomas P. Smith Jr. (SmithTh@sec.gov)
Peter A. Pizzani Jr. (PizzaniP@sec.gov)

---

[10] The bare assertion that one is unable to pay a penalty cannot justify a reduction. *SEC v. Madsen*, 2018 WL 5023945, *5 (S.D.N.Y. Oct. 17, 2018).