```
J18PSECC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

             Plaintiff,

     v.                                 14 CV 9126 (ALC)(HBP)

ANTHONY J. THOMPSON, JR., ET AL.,

             Defendants.

------------------------------x

                                New York, N.Y.
                                January 8, 2019
                                11:27 a.m.

Before:

            HON. ANDREW L. CARTER, JR.,

                         District Judge

                  APPEARANCES

SECURITIES AND EXCHANGE COMMISSION
    Attorneys for Plaintiff
BY: HOWARD A. FISCHER


THOMPSON HINE LLP
    Attorneys for Defendant Anthony J. Thompson, Jr.
BY: MARANDA E. FRITZ


SERCARZ & RIOPELLE, LLP
    Attorneys for Relief Defendant Kendall Thompson
BY: ROLAND G. RIOPELLE

1 (In open court)

2 (Case called)

3 MR. FISCHER: For the plaintiff, Howard Fischer, for
4 Securities and Exchange Commission.

5 MS. FRITZ: Maranda Fritz for Mr. Thompson. Good
6 morning, your Honor.

7 THE COURT: Good morning.

8 MR. RIOPELLE: And Roland Riopelle of Sercarz and
9 Riopelle for relief defendant Kendall Thompson. Good morning,
10 your Honor.

11 THE COURT: Good morning. We're here for a status
12 conference. My understanding is that there was a possibility
13 of a settlement but that fell through; so we need to go ahead
14 and set a schedule. Or let me find out if counsel have any
15 other thoughts about how to proceed here?

16 MR. FISCHER: Your Honor, I think it makes sense to
17 set just a cutoff for discovery of June 30th. We had a
18 substantial number of depositions that had previously been
19 scheduled when the Court entered a stay for the settlement
20 discussions that went nowhere.

21 I had blocked out, and my staff had blocked out, times
22 during the end of the year for those depositions. Since we are
23 going forward now and don't have a settlement, we are going to
24 have to rearrange things and rearrange staff for those things;
25 so we'd ask for a discovery cutoff as June 30th, as well as

1   dates for motions for summary judgement to follow that.

2           THE COURT:  Okay.  Defense counsel?

3           MS. FRITZ:  Your Honor, I'd like to just bring you a
4   little more up to speed in terms of what happened.  This is the
5   case that has followed on two other cases, the SEC proceeding
6   in Florida and a New York criminal proceeding.

7           My client had been ordered to make a payment -- or not
8   had been ordered, had agreed in the New York criminal case to
9   make a payment and was not able to do it because he didn't have
10  the ability to do it.  Based on that, on Friday of last week,
11  the New York State court sentenced my client to jail.  My
12  client's now, obviously, less able than ever to offer any
13  monetary sort of amount in settlement.

14          This case is unusual because, given the fact that
15  there was a predecessor case in Florida, that monetary issue is
16  really the only issue that exists here.  All injunctive relief
17  has already been obtained.  And so I do understand,
18  notwithstanding the fact that my client is now going to jail
19  for not having the ability to pay a fine, I understand that we
20  are going to continue to litigate this case.

21          My client does not have the ability to pay a fine.  He
22  doesn't have the ability to pay me, and so going forward, I
23  will do everything I can do to defend the case, given the
24  resources that I have.  I do believe, and I mentioned this
25  before, that I have a substantial summary judgement motion that

1  I think is fully supported by the discovery that's occurred to
2  date.
3          And so the only thing I would add to what Mr. Fischer
4  said is, I would like to go ahead and submit that perhaps
5  before the end of discovery, perhaps within the next month or
6  so; so that that issue can be considered by the Court.  It
7  would be dispositive of the case.
8          THE COURT:  How long was your client sentenced to?
9          MS. FRITZ:  He was sentenced to a year.
10         THE COURT:  Okay.  And let me find out from the other
11 defense counsel, anything that you wish to add?
12         MR. RIOPELLE:  No, your Honor.
13         THE COURT:  Which depositions are outstanding?
14         MR. FISCHER:  We have -- we had two that had
15 previously been scheduled, Mr. Fung and Mr. Halprin --
16 actually, three -- and Mr. Grodnick.  Those have to be
17 rescheduled.  There are, by my list, a total of 11 depositions.
18 Mr. Fung is, I believe, at this point, in a halfway house in
19 California; so that has to be arranged through, I think, the
20 Bureau of Prisons.  Mr. Thompson, presumably, is going to soon
21 be enjoying the custody of a state confinement, and we'd have
22 to arrange for his deposition at the end of the process, going
23 through whatever mechanisms are needed to get a deposition of
24 someone in state custody.
25         There are some other issues.  One of the defenses

1  that's been asserted has been an advice-of-counsel defense.
2  When we sought to get discovery of one of the counsel, who is
3  alleged to be the prime advisors, they have essentially refused
4  to give us that discovery or to make the person available.  We
5  probably will need to do -- engage in motion practice to get
6  that discovery, which may complicate things.
7              MS. FRITZ:  Your Honor, if I could just point out, it
8  is true that my client consulted with not one, not two but
9  three different law firms in the course of conducting his
10 business.  Mr. Fischer has had the opportunity now both in --
11 or the SEC, in this case and in the last case, to depose those
12 individuals.  For example, two of the attorneys have already
13 been deposed.  There was another individual, who lives in Utah,
14 who was not directly involved, I guess I would say, in terms of
15 that advice with respect to transactional advice.
16             And so I would certainly propose that, at this point,
17 it's becoming duplicative.  The individuals that have already
18 been deposed can fully testify regarding the information that
19 the Salt Lake City attorney would provide.  All of it is borne
20 out in documents and testimony that has already occurred and,
21 obviously, I'm extremely concerned about the extent to which
22 whether Mr. Fischer has the resources to fly to California and
23 Utah.  So, obviously, I won't; so I'm going to be doing my best
24 to sort of keep up here.
25             THE COURT:  All right.  Let's do this.  Let's have a

1  brief off-the-record conversation. Again, I know we have had
2  some settlement discussions before. Let me just -- is counsel
3  okay with that? Let's go off the record and talk again about
4  what the end game is here. Is that okay with everyone?
5              MR. FISCHER: Fine with us, your Honor.
6              MS. FRITZ: That's fine, your Honor. Thank you.
7              THE COURT: Okay. Let's go off the record. Oh, I'm
8  sorry.
9              MR. RIOPELLE: I figured I'd stand up, in case you
10 wanted to talk to me, Judge.
11             THE COURT: Oh, I thought you were nodding your head.
12             MR. RIOPELLE: One suggestion I would have --
13             THE COURT: Hold on. Are we on the record now?
14             MR. RIOPELLE: No, no. I'm off the record.
15             THE COURT: I just wanted to make sure we were all off
16 the record.
17             MR. RIOPELLE: Yes.
18             THE COURT: Go ahead.
19             (Discussion off the record)
20             THE COURT: Okay. We're back on the record. I had an
21 off-the-record conversation with counsel about potentially
22 settling this matter and other issues regarding efficiencies in
23 this case.
24             So here's what we'll do. I'll allow the plaintiff to
25 make a partial summary judgement motion regarding one issuer,

1     the issuer named Blast, and I'll give the defendants an

2     opportunity to respond to that motion, and we'll see where we

3     are.

4              We will stay discovery pending resolution of this

5     partial summary judgement motion.  So let's have the plaintiffs

6     file their motion -- can you file this motion in three weeks?

7              MR. FISCHER:  I would ask for slightly more time, and

8     the only reason is that one of the people at the New York

9     office, who is incepted at this point; so I'm handling a much

10    larger portion of obligations without support staff at this

11    point.  I would suggest -- today is January 8th -- maybe four

12    weeks from today, or the Friday of four weeks from today.

13             THE COURT:  All right.  That's fine.  What day is

14    that, Tara?

15             THE DEPUTY CLERK:  February 8th.

16             MR. FISCHER:  Is that February 8th?

17             THE DEPUTY CLERK:  Yes.

18             THE COURT:  Okay.  February 8th for the plaintiff's

19    motion.  We'll give the defendants three weeks to respond.

20             MS. FRITZ:  Great.

21             THE COURT:  Which takes us to the -- that is a leap

22    year; so what is that?

23             MR. FISCHER:  I was going to say February 29th, but

24    apparently it's March 1st.

25             THE DEPUTY CLERK:  It is.  It's March 1st.

1  THE COURT:  So that will be March 1st.  Any reply
2  should be filed by March the 8th, if there's a reply.  So the
3  motion is February the 8th; response, March 1st, and the reply
4  on March 8th, if there's a reply.  All right.
5  Again, we'll stay discovery.
6  Anything else we need to deal with today?
7  MR. FISCHER:  I don't believe so, your Honor.
8  MS. FRITZ:  No.  Thank you very much, your Honor.
9  MR. RIOPELLE:  Not from us.  Thank you very much.
10  THE COURT:  Okay.  We're adjourned.
11  (Adjourned)