Case 1:14-cv-09126-ALC   Document 136   Filed 09/27/19   Page 1 of 17

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/27/2019

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
    SECURITIES AND EXCHANGE            :
    COMMISSION,                        :
                                       :
                          Plaintiff,   :    14-cv-09126 (ALC)
                                       :
         -against-                     :    OPINION & ORDER
                                       :
                                       :
    ANTHONY J. THOMPSON, ET AL.,       :
                                       :
                          Defendants.  :
-----------------------------------------------------------x
```

ANDREW L. CARTER, JR., United States District Judge:

## SYLLABUS

The SEC brings a civil enforcement action against Anthony Thompson, stemming from a September 2014 criminal indictment in New York Supreme Court, involving similar conduct. Since Thompson pleaded guilty to several counts of the indictment, he is prohibited from challenging, in this civil action, anything covered by his guilty plea in the criminal case. Thompson pleaded guilty to conduct related to specific entities; therefore, he is only estopped from challenging conduct concerning those specific entities.

## PROCEDURAL HISTORY

Plaintiff, the Securities and Exchange Commission (hereinafter, the "SEC" or "Plaintiff"), alleges that Defendant Anthony Thompson[1] (hereinafter, "Defendant" or "Mr. Thompson") violated Section 10(b) and 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") as well as Section 17(a) and Section 17(b) of the Securities Act of 1933 ("Securities Act") by way of five illegal penny stock "pump-and-dump" schemes. The SEC

---

[1] Jay Fung and Eric Van Nguyen are also named Defendants in this case. However, the disposition of this Motion does not pertain to them.

initiated this case on the heels of the criminal prosecution of Mr. Thompson in Florida (the "Florida Action").

The procedural history of this case is long and circuitous. The SEC filed their original Complaint on November 17, 2014. ECF No. 1. On January 23, 2015, Judge Katherine B. Forrest stayed the action to allow for the parallel criminal proceedings to run their course in state court. ECF No. 20.

Following the stay, Mr. Thompson filed a Motion to Dismiss on August 15, 2016. ECF Nos. 42-44. Upon receiving Mr. Thompson's Motion to Dismiss, Judge Forrest noted that Mr. Thompson cited to the evidentiary record in his supporting brief. ECF No. 47. Accordingly, Judge Forrest converted the Motion to Dismiss into a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d).[2] *Id.* The SEC opposed Mr. Thompson's Motion on October 20, 2016. ECF No. 53. After a brief delay, Mr. Thompson replied to Plaintiff's Opposition on January 27, 2017. ECF No. 58. On March 2, 2017, Judge Forrest issued an Opinion and Order denying Mr. Thompson's Motion for Summary Judgment. ECF No. 64 ("Forrest Opinion").

Following the issuance of her Opinion, Plaintiff submitted a Status Update on October 30, 2017. ECF No. 75. In the Status Update, the Parties indicated that Mr. Thompson entered into a plea agreement thus resolving the criminal charges against him. *Id.* In light of Mr. Thompson's plea agreement, Judge Forrest scheduled a Status Conference to discuss discovery,

---

[2] Defendant's first Motion for Summary Judgment sought to dismiss the action on three grounds: (1) Defendant claimed that the current action was barred in its entirety by the Florida Action under principles of res judicata; (2) Defendant argued that the SEC should be obligated to settle the charges against him under principles of New York contract law or promissory estoppel; and (3) Defendant alleged that the SEC failed to allege securities laws violations against him as a matter of law. *See* Forrest Opinion pp. 1-2.

2

among other things. ECF Nos. 76-77. On December 11, 2017, Mr. Thompson answered the Complaint. ECF No. 80. The Parties then proceeded with discovery under the guidance of Judge Forrest.

On September 20, 2018, this case was reassigned to the undersigned. *See* ECF. This Court scheduled a Status Conference for October 5, 2018. ECF No. 108. After an additional Status Conference, held on January 8, 2019, this Court set forth a briefing schedule for Plaintiff's pending Motion for Partial Summary Judgment. ECF No. 115. Following an extension of time, Plaintiff filed a Motion for Partial Summary Judgment, along with supporting documents, on February 15, 2019. ECF Nos. 119-123. Mr. Thompson opposed Plaintiff's Motion on March 13, 2019. ECF Nos. 127-130. The SEC replied on March 22, 2019.

Plaintiff's Motion is deemed fully briefed. After careful consideration, Plaintiff's Motion for Partial Summary Judgment is hereby **GRANTED**, in part, and **DENIED**, in part.

## BACKGROUND[3]

Although the Court assumes familiarity with the facts in this case, a summary is helpful for the disposition of this Motion. Further, although Plaintiff's Rule 56.1 Motion and Defendant's Response and Counterstatement of Material Facts in Dispute are almost exclusively comprised of just that – disputed facts – the Parties are generally in agreement regarding the facts relevant to the pending narrowly-focused motion.

In its Complaint, the SEC paints an intricate picture of a series of securities law violations relating to five penny stock issuers. *See* Complaint, ECF No. 1 ("Compl."). The SEC alleges that

---

[3] For a more detailed recitation of the factual background in this case, see Judge Forrest's Opinion dated March 2, 2017. ECF No. 64.

Mr. Thompson, among others, sought to pump up the stock value of Blast Applications, Inc. ("Blast"), Smart Holdings, Inc. ("Smart Holdings"), Blue Gem Enterprise, Inc. ("Blue Gem"), Lyric Jeans, Inc. ("Lyric"), and Mass Hysteria Entertainment Company, Inc. ("Mass Hysteria") so they could then dump their shares on unsuspecting investors. *Id.*

Although disputed, Plaintiff alleges that each pump-and-dump scheme employed four common components.[4] Pl. 56.1 ¶¶ 21-26. First, Mr. Thompson acquired a significant amount of the shares of the issuer. *Id.* ¶ 22. Second, Mr. Thompson distributed misleading information through the controlled entities aimed at increasing demand for the various issuers. *Id.* ¶¶ 23-24. Third, Mr. Thompson made misrepresentations in the materials disseminated. *Id.* ¶ 25. Fourth, and to complete the scheme, Mr. Thompson sold his shares at the artificially elevated price leading to a crash in value. *Id.* ¶ 26. Plaintiff's Complaint contains similar allegations for Blast, Blue Gem, Lyric, Smart Holdings, and Mass Hysteria, claiming that Mr. Thompson obtained "at least $2,374,873.61" via the alleged schemes. *Id.* ¶¶ 28-43.

The SEC's Complaint stems from Mr. Thompson's September 2014 indictment in the case entitled *People of New York v. Thompson*, Indictment No. 3853-201412-CR-127 (hereinafter, the "Indictment" or "Criminal Action"). Pl.'s Rule 56.1 Supp. Mot. ¶ 1, ECF No. 123 ("Pl. 56.1"); Resp. Pl.'s 56.1 ¶ 1, ECF No. 131 ("Resp. 56.1"). Much like the instant Complaint, the Indictment charged Mr. Thompson "with numerous violations of state criminal law with respect to nine penny stock issuers, including the five issuers identified in the SEC

---

[4] Mr. Thompson denies that the transactions in which he participated were part of a common scheme and disputes the alleged monetary gains. Resp. 56.1 ¶¶ 8-18.

4

Action – Blast, Blue Gem, Mass Hysteria, Lyric and Smart Holdings ..." Pl. 56.1 ¶ 2; Resp. 56.1 ¶ 1; Compl. ¶ 1.

While the Indictment asserted eighty-five charges against Mr. Thompson, only two are relevant to these proceedings. Pl. 56.1 ¶ 3; Resp. 56.1 ¶ 1. The Second Count of the Indictment charged Mr. Thompson with engaging in a "scheme to defraud" in the first degree – a violation of Penal Law § 190.65(1)(a). Pl. 56.1 ¶ 6; Resp. 56.1 ¶ 1. Count Two reads as follows:

> "The defendant[] Anthony Thompson ..., in the County of New York and elsewhere, during the period from on or about April 3, 2009 to on or about June 1, 2012, engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud 10 or more persons and to obtain property from 10 or more persons by false and fraudulent pretenses, representations and promises, and so obtained property from one or more such persons."

Pizzani Decl. Ex A p. 2, ECF No. 120 ("Indictment").

Count Twelve of the Indictment charged Mr. Thompson with securities fraud – a violation of General Business Law § 352-c(5). It reads:

> "The defendant[] Anthony Thompson, ... in the County of New York and elsewhere, during the period from on or about July 1, 2009 to on or about February 28, 2010, intentionally engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud 10 or more persons and to obtain property from 10 or more persons by false and fraudulent pretenses, representations, and promises and so obtained property from one or more such persons while engaged in inducing and promoting the issuance, distribution, exchange, sale, negotiation and purchase of securities, to wit, the stock of Blue Gem Enterprise, Inc. (BGEM)."

Indictment pp. 8-9.

It is undisputed that, on or around September 27, 2017, Mr. Thompson entered into a written plea agreement ("Plea Agreement"). Pl. 56.1 ¶ 8; Resp. 56.1 ¶ 2; *see* Pizzani Decl. Ex C

5

("Plea"). Mr. Thompson pleaded guilty to Count Two, Count Twelve, and Count Forty-Six[5] of the Indictment. Pl. 56.1 ¶ 9; Resp. ¶ 2; Plea. The Plea Agreement states:

> "The Defendant agrees to plead guilty under New York County Indictment Number 3853/2014 to: Scheme to Defraud in the First Degree, under count 2 of the Indictment, a class E felony, in violation of Penal Law § 190.65(1)(); violation of General Business Law § 352-c(5), under count 12 of the Indictment, a class E felony; and violation of General Business Law §352-c(5), under count 46 of the Indictment, a class E felony."

Plea. p. 1. At an appearance in front of The Honorable Ellen Biben, Mr. Thompson affirmed his acceptance of the Plea Agreement via allocution. Pizzani Decl. Ex D ("Plea Hr'g"). In his own words, Mr. Thompson stated:

> "During the period from April 2009, and continuing through 2012, I participated in transactions with Kevin Sethgy (sic, phonetic spellings) that he and others related to Stock and Recycle Tech and Blue Gem Enterprises. Specifically, I agreed to conduct promotional complaints relating to stock of those companies, and I engaged in newsletter promotions that resulted in increases in volume of trading and the price of those stocks and did this as a part of the scheme intended to defraud ten or more investors, and I participated in transactions in order to obtain property and did obtain property as a result of those transactions."

Plea Hr'g 8:1-12. Assistant United States Attorney, Brian Kudon, requested clarification that the transactions did, in fact, occur in New York County and elsewhere, which Mr. Thompson confirmed. *Id.* 8:13-15. The Court then asked if any further allocution was necessary, to which Mr. Kudon replied, "I think we're good, your Honor," and "No, your Honor." *Id.* 8:16-19. Justice Biben also inquired as to whether the Plea Agreement was acceptable to the People, to

---

[5] Count Forty-Six states that Mr. Thompson, "in the County of New York and elsewhere, during the period from on or about January 1, 2019 to on or about April 1, 2010, intentionally engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud 10 or more persons and to obtain property from 10 or more persons by false and fraudulent pretenses, representations, and promises and so obtained property from one or more such persons while engaged in inducing and promoting the issuance, distribution, exchange, sale, negotiation and purchase of securities, to wit, the stock of Recycle Tech, Inc. (RCYT)." Indictment p. 31.

which Mr. Kudon replied, "It is, your Honor." *Id.* 8:20-21. Shortly thereafter, on January 4, 2019, the court sentenced Mr. Thompson to one year in jail on each of the three counts, to run concurrent with each other. Pl. 56.1 ¶¶ 12-14; Resp. Pl. ¶ 4.

The Parties do not dispute the applicability of the Plea Agreement to Count Twelve and Count Forty-Six of the Indictment – the Counts involving Blue Gem and Recycle Tech, respectively. Pl. 56.1 ¶ 9; Resp. 56.1 ¶ 2. However, the Parties do dispute the breadth and application of Count Two, with the SEC alleging that Count Two relates to "the entirety of the scheme involving all nine issuers." Pl. 56.1 ¶ 6. Mr. Thompson, on the other hand, claims that Count Two applies "to only two of the transactions that were referenced in the Indictment: Recycle Tech and Blue Gem." Resp. 56.1 ¶ 1. Mr. Thompson posits that "at no time did he plead guilty to or admit any wrongdoing in relation to any other transaction including Lyric Jeans, Mass Hysteria, Smart Holdings or Blast Applications." Resp. 56.1 ¶ 4.

This contested issue stems from Mr. Thompsons vigorous denial of any alleged violation of federal securities laws as they apply to any penny stock entity other than Blue Gem and Recycle Tech. Resp. 56.1 ¶ 5.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "Where the

moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

## DISCUSSION

Plaintiff moves for summary judgment on one concise issue. Plaintiff claims that "Thompson's conviction on the basis of his plea provides the legal basis, under the doctrine of collateral estoppel, for summary judgment" pertaining to two Counts: first, Count Two, the scheme to defraud under New York Penal Law § 190.65(1)(5); and second, Count Twelve, the

violation of the New York Martin Act, General Business Law § 352-c(5). Pl. Mem. Supp. Mot. p. 5, ECF No. 122 ("Pl. Mem.").

## I. Collateral Estoppel

"Under the doctrine of collateral estoppel, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *U.S. v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) (citing *Schiro v. Farley*, 510 U.S. 222, 232 (1994)) (internal quotations omitted). The principles of collateral estoppel dictate that a judgment in a prior proceeding bars a party, and those similarly situated, from relitigating an issue if four prerequisites have been satisfied:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999).

Courts are generally in agreement that "a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the United States in subsequent civil proceedings as to those matters determined by judgment in the criminal case."[6] *Securities and Exchange Commission v. Afriyie*, 2018 WL 6991097, at *4 (S.D.N.Y. Nov. 26, 2018); *see U.S. S.E.C. v. Monarch Funding Corp.*, 1996 WL 348209, at *4 (S.D.N.Y. June 24, 1996) ("Whether established at plea allocution or at trial, all facts material to the conviction bind the criminal

---

[6] "The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in the subsequent civil case." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986).

defendant in later civil litigation."). As long as a "conviction by guilty plea establishes the requisite elements of securities fraud," a defendant in a civil action is estopped from challenging their liability under Section 10(b) and Rule 10(b)-5 of the Exchange Act and Section 17(a) of the Securities Act. *S.E.C. v. Glantz*, 2009 WL 3335340, at *4 (S.D.N.Y. Oct. 13, 2009). It is the burden of the party asserting collateral estoppel based on a guilty plea to show "precisely which facts the plea establishes." *Goodridge v. Harvey Group Inc.*, 728 F.Supp. 275, 279 (S.D.N.Y. 1990). "Where there is a plea allocution, as in this case, the court must examine the plea allocution" in determining whether collateral estoppel applies. *S.E.C. v. 800america.com, Inc.*, 2006 WL 3422670, at *3 (S.D.N.Y. Nov. 28, 2006); *see S.E.C. v. Namer*, 2004 WL 2199471, at *4 (S.D.N.Y. Sept. 30, 2004); *S.E.C. v. Tee to Green Golf Parks, Inc.*, 2011 WL 147862, at *8 (S.D.N.Y. Jan. 18, 2011).

### a. The Issues in the Underlying Criminal Action and the Instant Civil Action are Identical

#### i. Scheme to Defraud

It is undisputed that Mr. Thompson pleaded guilty to Count Two of the indictment – a scheme to defraud in the first degree. Pl. 56.1 ¶ 8; Resp. 56.1 ¶ 2. A scheme to defraud is committed by a person who:

> "engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent presences, representations, or promises, and so obtains property from one or more of such persons."

N.Y. Penal Law § 190.65(1)(a); *see Hayes v. Lee*, 2015 WL 5943677, at *40, n.9 (S.D.N.Y. Oct. 13, 2015). Plaintiff argues that the elements necessary to sustain a conviction for a scheme to

10

defraud "are legally and factually similar enough" to the elements necessary to the charges brought by Plaintiff for collateral estoppel to apply. Pl. Mem. p. 8.

Plaintiff's Complaint alleges that Mr. Thompson violated Section 10(b) and Rule 10b-5 of the Exchange Act. *See* Compl. In order to establish a violation of Section 10(b) and Rule 10b-5, the SEC must demonstrate the following four elements: that the defendant "(1) in the offer or sale, or in connection with the purchase or sale, (2) of securities, (3) made untrue statements of material fact or omitted disclosure of material fact, (4) with scienter."[7] *Glantz*, 2009 WL 3335340, at *4 (quoting *SEC v. Opulentica, LLC*, 479 F.Supp.2d 319, 327 (S.D.N.Y. 2007)); *see SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quoting *SEC v. Pentagon Capital Management PLC*, 725 F.3d 279, 285 (2d Cir. 2013) (Section 10(b) and Rule 10b-5 are violated if a defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.")).

Plaintiff's Complaint also alleges that Mr. Thompson violated Section 17(a) of the Securities Act. *See* Compl. "The courts of this District have noted, for collateral estoppel purposes, the overlap between claims under [S]ection 17(a) and those under [S]ection 10(b) and Rule 10b-5." *Namer*, 2004 WL 2199471, at *3; *see S.E.C. v. Shehyn*, 2010 WL 3290977, at *5 (S.D.N.Y. Aug. 9, 2010) (quoting *Monarch Funding*, 192 F.3d at 308 ("The Court of Appeals has held that essentially the same elements are required under Section 17(a) (1)-(3) as under Section 10(b) and Rule 10b-5 in connection with the offer or sale of a security.")). Under Section

---

[7] "A false statement is made with the requisite scienter if it was made with the intent to deceive, manipulate, or defraud." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quoting *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012)) (internal quotations omitted).

17(a)(1), the SEC must allege that Mr. Thomson "directly or indirectly used any device, scheme, or artifice to defraud in the offer or sale of securities." *SEC v. Sayid*, 2018 WL 357320, at *3 (S.D.N.Y. Jan. 10, 2018).

As noted, Mr. Thompson pleaded guilty to violations of Penal Law § 1990.65(1)(a) thus conceding that he (1) engaged in a scheme constituting a systematic ongoing course of conduct, (2) intended to defraud ten or more persons to obtain or to obtain property from ten or more persons, (3) by false or fraudulent pretenses, representations, or promises, and (4) and so obtained property for one or more such persons. Pl. 56.1 ¶ 8; Resp. 56.1 ¶ 2. These elements are identical to those required for violations of Section 10(b) and 10b-5 of the Exchange Act as well as Section 17(a) of the Securities Act. *See Glantz*, 2009 WL 3335340, at *4; *Namer*, 2004 WL 2199471, at *3.

### ii. Martin Act Violation

It is also undisputed that Mr. Thompson pled guilty to Count Twelve of the Indictment – securities fraud in violation of General Business Law § 352-c(5). Pl. 56.1 ¶ 9; Resp. 56.1 ¶ 2. Under General Business Law § 352-c(5), also known as the Martin Act:

> "Any person, partnership, corporation, company, trust or association, or any agent or employee thereof who intentionally engages in any scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons while engaged in inducing or promoting the issuance, distribution, exchange, sale, negotiation or purchase of any securities or commodities, as defined in this article, shall be guilty of a class E felony."

N.Y. Gen. Bus. Law § 352-c(5). As illustrated above, the elements of a Martin Act violation are essentially the same as those pertaining to a scheme to defraud. As part and parcel of his guilty

12

plea, Mr. Thompson admitted to (1) intentionally engaging in a scheme constituting a systematic ongoing course of conduct, (2) with intent to defraud ten or more persons and to obtain property from ten or more persons, (3) by false and fraudulent pretenses, representations, and promise, and (4) and so obtained property from one or more such persons while engaged in inducing and promoting the issuance, distribution, exchange, sale, negotiation and purchase of securities, to wit, the stock of Blue Gem. *See* Pl. 56.1 ¶ 7; Resp. 56.1 ¶ 2. Once again, these elements are identical to those required by Section 10(b) and 10b-5 of the Exchange Act as well as Section 17(a) of the Securities Act. *See Glantz*, 2009 WL 3335340, at *4; *Namer*, 2004 WL 2199471, at *3.

### b. Plaintiff has Satisfied the Remaining Elements of Collateral Estoppel

As the Court has demonstrated, the issues presented in the Underlying Action and the instant case are identical, as both involve securities fraud violations and the necessary elements are sufficiently similar. *Monarch Funding*, 192 F.3d at 308. Furthermore, Defendant does not dispute that he had a full and fair opportunity to litigate the Criminal Action. *See Thablo*, 171 F.3d at 109. Mr. Thompson elected to plead guilty, and his guilty plea to a scheme to defraud as well as violations of the Martin Act was necessary to support the final judgment. *Id.* Mr. Thompson cannot deny these facts in the instant civil action. As such, his guilty plea to Count Two and Count Twelve of the indictment establishes his violation of Section 10(b) and Rule 10b-5 of the Exchange Act as well as Section 17(a) of the Securities Act.

### II. Mr. Thompson's Plea Allocution

While Mr. Thompson is collaterally estopped from relitigating the alleged security violations outlined above, he is only precluded from doing so in accordance with the violations

13

he pleaded guilty to. The Court now turns to Mr. Thompson's allocution to determine the extent to which Mr. Thompson is collaterally estopped. *See* Plea Hr'g.

As stated, on September 27, 2017, Mr. Thompson entered a plea of guilty to Count Two, Count Twelve, and Count Forty-Six, "in full satisfaction of the indictment." *Id.* 3:1-4. The court proceeded to ask Mr. Thompson questions, to which he gave answers. *See* Plea Hr'g. When asked for his allocution, Mr. Thompson stated the following:

> "During the period from April 2009, and continuing through 2012, I participated in transactions with Kevin Sethgy (sic, phonetic spellings) that he and others related to Stock and Recycle Tech and Blue Gem Enterprises. Specifically, I agreed to conduct promotional complaints relating to stock of those companies, and I engaged in newsletter promotions that resulted in increases in volume of trading and the price of those stocks and did this as a part of the scheme intended to defraud ten or more investors, and I participated in transactions in order to obtain property and did obtain property as a result of those transactions."

Plea Hr'g 8:1-12. Following Mr. Thompson's statement, the court asked if any further allocation was necessary, to which the Government stated, "no." *Id.* 8:16-19. The court also queried whether the Plea Agreement was acceptable to the people. *Id.* 8:20-21. The Government stated that it was. *Id.*

Mr. Thompson's plea allocution fails to specify which entities, aside from Recycle Tech and Blue Gem, any false statements or schemes to defraud pertain to. *See Goodridge*, 728 F.Supp. at 281 (stating that a plea allocution failed to specify which tax tables were falsified); *Gordon v. Sonar Capital Management LLC*, 116 F.Supp.3d 360, 366 (S.D.N.Y. 2015) ("[T]he criminal information to which Freeman pleaded guilty [as well as his plea allocution] set forth only general allegations that Freeman engaged in insider trading during the period of about 2006-2010 ... [and] it does not provide sufficient detail for the Court to determine whether the conduct

14

that Freeman admitted pertained to Sigma."). The plea allocution does not establish the requisite elements of securities fraud as to the other four entities contemplated by Plaintiff in this case: Blast, Smart Holdings, Lyric, and Mass Hysteria. *See* Compl. ¶ 1. Thus, the SEC has failed to demonstrate the precise facts which the plea establishes, and thus are unable to demonstrate the absence of any genuine issue of material fact relating to the scope of the plea agreement entered into by Mr. Thompson. *See Goodridge*, 728 F.Supp. at 279; *Gallo*, 22 F.3d at 1223.

### III.   DISGORGEMENT & FEES

Plaintiff also seeks disgorgement in the amount of $2,374,873.61 as well as $150,000 in penalties per violation of federal securities law. Pl. Mem. pp. 14-20.

"The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *S.E.C. v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996)). The primary purpose of an order of disgorgement is to deprive wrongdoers of their ill-gotten gains. *S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997). Disgorgement is an equitable remedy, and a court need only determine a "reasonable approximation" of profits gained from securities law violations in rendering such an award. *See S.E.C. v. Wyly*, 56 F.Supp.3d 394, 403 (S.D.N.Y. 2014).

In addition to disgorgement, the Securities Act and the Exchange Act "authorize imposition of civil financial penalties." *S.E.C. v. World Information Technology, Inc.*, 590 F.Supp.2d 574, 578 (S.D.N.Y. 2008). Once again, courts have discretion in determining whether the imposition of fees or penalties is necessary in any particular case. *See S.E.C. v. Berkey*, 374

F.Supp.3d 355, 359-60 (S.D.N.Y. 2019) (quoting *S.E.C. v. Amerindo Inv. Advisors Inc.*, 2014 WL 2112032, at *12 (S.D.N.Y. May 6, 2014)).

Upon review, the Court finds the imposition of disgorgement and penalties to be premature at this stage in the litigation. As stated, questions remain as to the extent of Defendant's involvement with four entities named in the Complaint: Blast, Smart Holdings, Lyric, and Mass Hysteria. *See* Compl. ¶ 1. The answers to those questions will impact the amount of disgorgement or the tier of penalties imposed by the Court, if any.[8] As such, a ruling on disgorgement and fees is not appropriate at this time.

## CONCLUSION

In sum, Defendant's criminal guilty plea and conviction establishes that Defendant violated Section 17(a) of the Securities Act and Section 10(b) and 10b-5 of the Exchange Act in regards to two penny stock companies: Blue Gem Enterprise, Inc. and Recycle Tech. As such, Defendant is collaterally estopped from relitigating those issues, and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**, in part. Defendant is not collaterally estopped from litigating those issues not previously determined. As such, Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to all entities other than Blue Gem Enterprises, Inc., and Recycle Tech.

---

[8] Regarding disgorgement, the Court must consider the total amount by which Mr. Thompson was unjustly enriched. *See Contorinis*, 743 F.3d at 301. Regarding fees, the Court must weigh, "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Berkey*, 374 F.Supp.3d at 360.

In terms of disgorgement and fees, at this time, the Court finds it improper and premature to order disgorgement or impose penalties. As such, Plaintiff's request for disgorgement and fees is **DENIED**, without prejudice.

**SO ORDERED.**

Dated: September 27, 2019
      New York, New York

                                              **ANDREW L. CARTER, JR.**
                                              **United States District Judge**